United States District Court
for the
Southern District of Florida

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, Plaintiffs,<br><br>v.<br><br>Health and Wellness Services, Inc. and others, Defendants. | Civil Action No. 18-23125-Civ-Scola |

### **Omnibus Order Denying Motions to Dismiss**

      State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (together, "State Farm") have sued three healthcare clinics—Health & Wellness Services, Inc., Medical Wellness Services, Inc., and Pain Relief Clinic of Homestead, Corp. (collectively the "Clinics")—and nine individuals associated with the clinics: Beatriz Muse; her brother, Lazaro Muse; her husband, Noel Santos (collectively the "Muse Family"); and six doctors—Drs. Hugo Goldstraj, Manuel Franco, Angel Carrasco, Jorge Rafael Coll, Jesus Lorite, and Jose Gomez-Cortes. According to State Farm, the Muse Family orchestrated a scheme to defraud State Farm through the unlawful operation of the Clinics. In effecting their scheme, the Defendants, together, fraudulently obtained insurance payments from State Farm in excess of $4.7 million dollars. State Farm's complaint includes ten counts: three counts of fraud; three counts under the Florida Deceptive and Unfair Trade Practices Act; three counts of unjust enrichment; and one request for declaratory relief. Each Defendant faces at least one count of fraud, one count under FDUTPA, and one count of unjust enrichment. State Farm's request for declaratory relief is lodged only against the Clinics.

      Three of the Defendants—Health & Wellness and Drs. Coll and Lorites—seek dismissal of the complaint on a number of bases (ECF Nos. 34, 42, 65). In varying degrees, their motions overlap. All three of these Defendants complain State Farm has not complied with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and has therefore failed to properly allege its fraud claims. All three also contend the complaint is a shotgun pleading, submitting, among other things, that State Farm has impermissibly lumped all the Defendants together, making it impossible for them to discern what wrongful conduct they are actually being accused of. Drs. Lorites and Coll both maintain that State Farm's unjust enrichment claims fail, though for slightly different reasons. Dr. Coll and Health & Wellness together insist that FDUTPA is inapplicable, again for different reasons. Separately, Dr. Lorites also says the complaint should be dismissed because the allegations do not set forth an

actual violation of Florida's criminal statute regarding insurance fraud; the Defendants do not owe State Farm any duty to disclose and therefore State Farm cannot establish fraud; and the four-year statute of limitations has expired, barring the claims against him. Dr. Coll raises several issues himself as well. He complains State Farm impermissibly aggregates claims to manufacture federal diversity jurisdiction; the economic-loss rule bars State Farm's fraud claim; State Farm fails to join indispensable parties; and State Farm's demand for fees should be struck. For the following reasons, the Court **denies** all three motions (**ECF Nos. 34, 42, 65**).

1. **Background**[1]

This action arises out of an alleged insurance fraud scheme operating in Miami-Dade County, involving three healthcare clinics—Health & Wellness, Medical Wellness, and Pain Relief—and the purported owners and directors of these facilities—the Muse Family and Drs. Goldstraj, Franco, Carrasco, Coll, Lorites, and Gomez-Cortes. State Farm says that between 2007 and 2016, the Defendants acted in concert to defraud State Farm by submitting fraudulent Personal Injury Protection claims and collecting money to which they were not lawfully entitled.

The fraud scheme involved (1) making false representations to the Florida Agency for Health Care Administration to obtain healthcare clinic licenses; (2) employing medical directors who wholly failed to perform their duties and instead actively participated in the fraud scheme; and (3) treating patients in a predetermined, rote manner that was not based on each patient's actual needs, but which instead was designed to maximize insurance billings. The clinics submitted false, materially misleading, and fraudulent bills and supporting documentation to State Farm for services which were either not medically necessary or indicated, or in some cases, which were not even actually rendered.

Through its complaint, State Farm seeks to hold the Defendants liable for the amounts State Farm paid the clinics based on the fraudulent bills. State Farm's claims are based on fraud, unjust enrichment, and violations of FDUTPA. State Farm also asks for a declaratory judgment regarding bills the clinics have submitted but which have not yet been paid.

---

[1] The Court accepts the complaint's allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

Where a cause of action sounds in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against

spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

### 3. Discussion

#### A. State Farm has properly alleged fraud against Drs. Lorites and Coll and Health & Wellness.

All three Defendants insist State Farm has not met the heightened pleading standard applicable to fraud claims. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as "[m]alice, intent, [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). To meet this standard, courts generally require a plaintiff to identify "(1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendant[] gains by the alleged fraud." *Id.* The Court finds that, with respect to the three moving Defendants, State Farm has satisfied these requirements.

#### (1) Dr. Lorites

State Farm's allegations against Dr. Lorites meet Rule 9(b)'s particularity requirements. To begin with, State Farm alleges that, under Dr. Lorites's supervision of Pain Relief, forms and medical records were submitted to State Farm misrepresenting that the treatment patients received was medically necessary and lawfully rendered, when, in fact, it was not. (Am. Compl. at ¶¶ 5–8, 87, 171, 191, 233–34.) State Farm also alleges Dr. Lorites failed to comply

with his statutory responsibility, as a medical director, of conducting systematic reviews of Pain Relief's records to ensure its billings were not fraudulent. (*Id.* at ¶¶ 5–8, 22, 44, 87, 171, 191, 233–34.) State Farm also identifies dozens of specific claims in which Dr. Lorites, among others, "knowingly made false and fraudulent statements of material facts . . . by submitting, or causing to be submitted, hundreds of bills and supporting documentation that contained false and fraudulent representations of material fact related to the treatment of [State Farm's] insureds." (*Id.* at ¶ 233.) As State Farm alleges, it was misled by these misrepresentations into believing that the treatment rendered and billed for by Pain Relief was lawfully rendered and that the clinic was properly licensed, as indicated in records signed by Dr. Lorites. (*Id.* at ¶ 240.) As a result of these misrepresentations, State Farm was induced into paying Pain Relief, where Dr. Lorites was the medical director from 2010 through 2013, over $500,000 that it should not have paid. (*Id.* at ¶ 238.)

Dr. Lorites's arguments are flawed and, at times, verging on unintelligible in the context of this case.[2] His first objection regarding State Farm's fraud claims is that all of the references to him in the complaint are conclusory, with no allegations that he himself was involved in the scheme "other than through [his] ownership interest in the entity Defendants." (Dr. Lorites's Mot. at 11.) For starters, there are no allegations that Dr. Lorites has an ownership interest in any of the entity Defendants here anyway. But, in any event, as set forth above, the complaint is full of detailed, non-conclusory allegations, lodged specifically against Dr. Lorites. And thus Dr. Lorites insistence that it would be "plainly impossible" for State Farm to specifically allege his involvement in the schemes set forth in the complaint (Dr. Lorites's Mot. at 12) is baseless. Dr. Lorites also complains that State Farm impermissibly pleads facts that "are internally conflicting making it impossible for the Court to assume that they are all true." (*Id.* at 12.) Dr. Lorites does not provide any examples of what he is talking about and the Court is at a loss as to what he is referring. Lastly, Dr. Lorites claims State Farm's fraud claims fail because he did not owe State Farm a duty to disclose anything. State Farm's claims are not premised on a failure of disclosure; rather, they are based on affirmative misrepresentations, falsifications, and the submission of sham insurance claims. In sum, Dr. Lorites's arguments regarding State Farm's fraud claims are groundless.

---

[2] This may be because, as State Farm points out, "[p]ortions of the [m]otion were copied wholesale . . . from another case that involved entirely different allegations and issues." (Pl.'s Resp. to Dr. Lorites's Mot., ECF No. 41, 2–3.)

### (2) Dr. Coll

Dr. Coll submits that State Farm's fraud claim against him fails because the complaint does not allege that Dr. Coll himself submitted any fraudulent claims. This is not an accurate characterization of State Farm's allegations.

State Farm pointedly alleges that the medical directors for the Muse Clinics, including Dr. Coll, "signed the vast majority of bills that the Muse Clinics submitted to [State Farm] thereby creating the appearance that they either supervised or performed the treatment rendered and falsely certified that the treatment performed was medically indicated and necessary for the health of the patient." (Am. Compl. at ¶¶ 5, 8.) State Farm also alleges that the Medical Wellness Defendants, again, including Dr. Coll, "knowingly made false and fraudulent statements of material fact to State Farm . . . by submitting, or causing to be submitted, hundreds of bills and supporting documentation that contained false and fraudulent representations . . . related to the treatment of insureds." (*Id.* at ¶ 224.) State Farm references hundreds of specific claims submitted by Medical Wellness which were fraudulent. (*Id.*; Exs. 44, 45, ECF Nos. 6-45, 6-46.) State Farm also alleges the Medical Wellness Defendants, again, including Dr. Coll, all "purposefully concealed their actions from State Farm" by filing misleading documents, making it seem like the clinic was in compliance with state regulations, "and inducing [State Farm] to believe that Medical Wellness provided medically necessary treatment to insureds" and that "such . . . bills were compensable under the Florida No-Fault Law." (*Id.* at ¶ 231.) In all, State Farm has sufficiently alleged Dr. Coll's participation in the alleged fraud scheme.

Dr. Coll also contends the economic-loss rule bars State Farm's claims. Coll's argument is a nonstarter. As described recently by the Eleventh Circuit, the "economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1030 (11th Cir. 2017) (quoting *Tiara Condominium Assoc., Inc. v. Marsh & McLennan Companies*, 110 So.3d 399, 401 (Fla. 2013)). As the Eleventh Circuit explained, "[t]he rule was designed to prevent the application of tort remedies to traditional contract law damages." *Glob. Quest, LLC*, 849 F.3d at 1030. In Florida, however, as set forth by the Florida Supreme Court, "the economic loss rule applies only in the products liability context." *Tiara Condominium*, 110 So.3d at 407. Thus, the economic-loss rule cannot, in any event, be applied to bar State Farm's fraud claims that relate to any purported contracts between the parties. Instead, as made clear in *Tiara Condominium*, whether a plaintiff's claim sounding in tort is foreclosed by the parties' agreement must be resolved by the application of "fundamental contractual

principles."[3] *Id.* at 405 (quotation omitted). In any event, "a contract provision . . . cannot preclude a fraud claim, unless the contract expressly states that it is incontestable on the ground of fraud." *Glob. Quest*, 849 F.3d at 1028. Dr. Coll does not even describe the contract provision that would bar this particular claim, never mind a provision that "expressly states that it is incontestable on the ground of fraud." Thus, even if there was privity between State Farm and Dr. Coll, which is not alleged anywhere in the complaint, State Farm's fraud claim would not be barred.

### (3) Health & Wellness

Health & Wellness's arguments regarding Rule 9(b)'s particularity requirements are similarly lacking in merit. To begin with, Health & Wellness centers its position on the following allegations it claims are from State Farm's complaint:

- The defendants "individually, or by and through their agents or representatives, intentionally and knowingly made false and fraudulent statement of material fact to State Farm." (Health & Wellness's Mot. at 6 (purportedly quoting the amended complaint).)
- "[D]efendants, individually or by and through their agents or representatives, actively misrepresented, acquiesced or ratified misrepresentation." (*Id.* (same).)
- "[D]efendants, individually, or by and through their agents or representatives, made, acquiesced to, or ratified the above-described misrepresentations to induce State Farm to rely on them." (*Id.* (same).)

None of this language, however, actually appears in the complaint. Furthermore, State Farm's allegations satisfy, in any event, Rule 9(b)'s heightened pleading standard with respect to Health & Wellness. State Farm alleges the Muse Family implemented a predetermined treatment plan at Health & Wellness which resulted in hundreds of patients receiving nearly identical, non-individualized, medically unnecessary treatment. (Am. Compl. at ¶¶ 76–77, 98–132.) State Farm also alleges the Clinics, including Health & Wellness, "submitted false, materially misleading, and/or fraudulent bills and supporting records to [State Farm] for services which were not medically necessary, and in some instances, were never actually rendered." (*Id.* at ¶¶ 3, 215 (specifically listing, in exhibits 42 and 43, hundreds of allegedly sham

---

[3] Dr. Coll does not ever argue that contract principles foreclose State Farm's fraud claims. He simply cites to a case that predates *Global Quest* and *Tiara Condominium* and gives short shrift to any actual analysis of the issue. (Dr. Coll's Mot. at 9 (citing *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1288–89 (M.D. Fla. 2009).

claims submitted to State Farm from Health & Wellness); 216 (identifying particular misrepresentations).) As set out in the complaint, in reliance on those specifically identified claims and the misrepresentations therein, State Farm paid Health & Wellness over $2 million. (*Id.* at ¶¶ 97, 220.) In sum, State Farm's allegations are adequate, at this pleading stage, to establish Health & Wellness's involvement with the alleged fraudulent activity with sufficient particularity.

### B. State Farm's complaint is not a shotgun pleading.

Intertwined with their Rule 9(b) arguments, all three moving Defendants also complain that State Farm's complaint is a shotgun pleading. Specifically, they submit the complaint improperly lumps all the Defendants in the case together, preventing each of them from discerning which claims specifically implicate their involvement. As addressed above, the Defendants mischaracterize State Farm's allegations: although State Farm groups various subsets of the Defendants together in lodging each count, each Defendant is specifically identified and the complained of conduct is pointedly attributed to each Defendant. None of the Defendants should be confused about the wrongful conduct State Farm is accusing them of. Alleging multiple defendants are liable for the conduct alleged in each count here is not fatal to State Farm's complaint. Instead, the Court finds "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Here, State Farm has alleged specific facts concerning particular Defendants as well as conduct which implicates multiple Defendants: State Farm has not improperly lumped the Defendants together. This case is clearly distinguishable from those cited to by the Defendants. *See J.V. by K.V. v. Duval County Sch. Bd.*, 3:16-CV-1009-J-34MCR, 2017 WL 4226590, at *2 (M.D. Fla. Sept. 22, 2017) (striking complaint where the plaintiff took a "kitchen sink approach to setting out factual allegations," made "broad and conclusory legal statements regarding those allegations in the substantive counts," and was "inconsistent in how he name[d] and identifie[d] the various defendants"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing shotgun pleading that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants"); *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 2:11-CV-707-FTM-29, 2013 WL 5596795, at *1 (M.D. Fla. Oct. 11, 2013), *aff'd in part, dismissed in part*, 578 Fed. App'x 959 (11th Cir. 2014) (noting the plaintiffs' shotgun complaint "indiscriminately lump[ed] defendants together" and failed to "to clearly and concisely state the circumstances, occurrences and events which support each . . . claim[]"); *Lane*

*v. Capital Acquisitions & Mgmt. Co.*, 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (Marra, J.) (dismissing complaint where the allegations "fail[ed] to differentiate among the defendants, alleging instead violations by a collective 'defendant,'" and "lumping all the defendants togetherr in each claim and providing no factual basis to distinguish their conduct"), *judgment entered*, 569 F. Supp. 2d 1268 (S.D. Fla. 2008) (Marra, J.), and *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 Fed. App'x 675 (11th Cir. 2009).

Further, "all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme." *United States v. Gonzalez*, 404 Fed. App'x 403, 405 (11th Cir. 2010). "Indeed, a complaint need only provide sufficiently detailed descriptions of the misrepresentations made by other defendants with whom the defendant is affiliated so as to allege that there is adequate evidence to connect him to the scheme." *State Farm Mut. Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995, at *6 (S.D. Fla. Mar. 30, 2017) (Marra, J.) (quoting *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-CV-2547, 1997 WL 728084, at *3 (M.D. Fla. Oct. 23, 1977) (quotation marks and alterations omitted). A plaintiff properly pleads a cause of action against multiple defendants in one count when "the allegations against both Defendants raise the same claims and relate to the same occurrences." *Woodburn v. State of Florida Dept. of Children & Family Services*, 859 F. Supp. 2d 1305, 1310 (S.D. Fla. 2012) (Scola, J.). Based on the allegations set forth in the complaint, the Defendants should be readily able to discern what conduct State Farm seeks to hold them liable for.

### C. Drs. Lorites and Coll's unjust enrichment arguments are unavailing.

Drs. Lorites and Coll both urge the Court to dismiss State Farm's unjust enrichment claims. Dr. Lorites maintains State Farm's unjust enrichment claim is really just a "wrongful enrichment" claim and is therefore more appropriately addressed through State Farm's other claims. Dr. Coll, on the other hand, argues State Farm's unjust enrichment claim against him fails because there is no allegation that Dr. Coll himself ever received any payment from State Farm. The Court is not persuaded by either position.

To begin with, Dr. Lorites again seems to present arguments based on facts that have no bearing on this case. He complains that "State Farm predicates it[s] [u]njust [e]nrichment claim on the submission of 'inflated' medical bills." (Dr. Lorites's Mot. at 14.) But the claims here have nothing to do with 'inflated' medical bills. Rather, here, State Farm complains about the Defendants' submitting bills for medically unnecessary treatment or treatment that was performed unlawfully.

But even if Dr. Lorites's argument was actually directed to the facts in this case, the Court does not find his distinction between a wrongful enrichment and an unjust enrichment compelling. "As other courts have recognized, . . . 'no Florida court has ever made this distinction.'" *State Farm Mut. Ins. Co. v. Performance Orthopaedics & Neurosurgery,* LLC, No. 1:17-cv-20028, ECF No. 223, at 26 – 27 (S.D. Fla. Nov. 15, 2017) (Moore, J.) (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab Inc.*, No. 6:10-CV-1103-ORL-31, 2011 WL 6338496, at *6 (M.D. Fla. Dec. 19, 2011), *aff'd sub nom. State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013) and citing *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1329 (M.D. Fla. 2017) for the proposition that "there is no distinction between unjust enrichment and wrongful enrichment under Florida law.")

Dr. Coll's argument fares no better. He argues State Farm's unjust enrichment claim fails because he did not receive a "direct benefit" from State Farm. Dr. Coll's position is directly controverted by State Farm's allegations. In its amended complaint, State Farm explicitly states that its "payments to Medical Wellness were distributed to the Muse Family[] and the Medical Wellness Medical Directors, who used Medical Wellness as a pass-through entity to profit off of Insureds' No-Fault Benefits." (Am. Compl. at ¶ 283.) As Dr. Coll "claimed to be the medical director at Medical Wellness," State Farm properly alleges he received a direct benefit from State Farm's payments to Medical Wellness. *See Solidda Group, S.A. v. Sharp Elecs. Corp.*, 12-21411-CIV, 2014 WL 12513613, at *3 (S.D. Fla. Mar. 6, 2014) (Dimitrouleas, J.) (noting that the "conferred benefit" need not have "been transmitted directly from the plaintiff to the defendant without traveling through any third-party intermediary" and distinguishing *Extraordinary Title Services, LLC v. Florida Power & Light Co.,* 1 So. 3d 400 (Fla. 3d DCA 2009) (cited by Dr. Coll)); *Brown*, 2017 WL 1291995, at *7 ("When defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly.").

Dr. Coll also argues State Farm's unjust enrichment claim fails because the benefits State Farm paid were contractual and submitted for the benefit of its policyholders. This line of reasoning also misses the mark. Part of Dr. Coll's reasoning here seems to be that the amounts State Farm paid Medical Wellness were properly paid based on a contract between the parties and therefore cannot be the basis for an unjust enrichment claim. (Dr. Coll's Mot. at 19 (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. 5th DCA 2007) for the proposition that "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust

enrichment fails.").) Dr. Coll has not pointed to any allegations in the complaint that would support this theory. Additionally, Dr. Coll's related argument that State Farm lacks standing because the payments were made on behalf of State Farm policyholders is also unavailing. This theory is simply contrary to settled law in the Eleventh Circuit. *See, e.g., Silver Star*, 739 F.3d at 584 (holding "State Farm was entitled to seek a judicial remedy," including unjust enrichment, "to recover the amount it paid," improperly, to an unlicensed health clinic on behalf of its policyholders); *State Farm Mutual Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, 1:14-CV-20625-KMM, 2014 WL 11910630, at *4 (S.D. Fla. Sept. 15, 2014) (Moore, J.) (finding "State Farm has standing to bring their claims against Defendant[]" healthcare providers for payments it made on behalf of its injured policyholders). Dr. Coll cites no law supporting his position and his conclusory argument on this point fails.

### D. FDUTPA is applicable to State Farm's allegations against Dr. Coll and Health & Wellness.

Dr. Coll urges the Court to dismiss State Farm's FDUTPA claim against him for two reasons. First, he says, State Farm cannot bring a FDUTPA claim because it is not a "consumer" as defined by the statute. Second, Dr. Coll argues, FDUTPA is inapplicable because there is no "trade or commerce" between State Farm and Dr. Coll. Dr. Coll's arguments are flawed.

To begin with, State Farm is not required to be a "consumer" to allege a FDUTPA claim. That is, "FDUTPA claims are not limited to consumers." *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2018 WL 1535719, at *5 (M.D. Fla. Mar. 29, 2018). In fact, amendments to section 501.211(2) in 2001, "indicate[] that the [Florida] legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). State Farm properly pleads the elements of a FDUTPA violation against Dr. Coll: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. (Am. Compl. at ¶¶ 252–62.) Dr. Coll's argument to the contrary is not persuasive.

Next, the definition of "trade or commerce" encompasses the provision of healthcare services. Under FDUTPA, "trade or commerce" includes "providing [or] offering . . . any good or service." Fla. Stat. § 501.203(8). "[T]he definition of 'trade or commerce' is quite broad." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008) (Lenard, J.). Further, the provisions of FDUTPA are to be "construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the

conduct of any trade or commerce." Fla. Stat. § 501.202. Courts in this district have not hesitated to permit FDUTPA claims in this context to go forward. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1325 (S.D. Fla. 2017) (Moore, J.) (finding that a healthcare provider's "creation of . . . inflated bill[s] . . . involves commerce") (collecting cases, *e.g., State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (Moore, J.) ("Fraudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA.")). Again, the Court rejects Dr. Coll's contention that the conduct at issue here does not implicate FDUTPA.[4]

Health & Wellness argues that, under Florida Statutes section 501.212(4)(a), State Farm, as an insurer, is precluded from pursuing a FDUTPA claim. While it is indeed true that "FDUTPA does not apply to any person or activity regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission," *Carles Constr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 09-CV-23645, 2013 WL 12061474, at *1 (S.D. Fla. Feb. 11, 2013) (Hoeveler, J.) (citing Fla. Stat. § 501.212(4)(a)), courts within the Eleventh Circuit have repeatedly rejected this argument in the context presented here. Simply put, because the conduct of which State Farm complains in this case is "not a type regulated by the Office of Insurance Regulation, the exemption of Fla. Stat. § 501.212(4)(a) does not apply." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 723 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014). Certainly, to find otherwise, one would have to disregard "State Farm's status [here] as [a] plaintiff alleging a violation of the FDUTPA against various medical providers . . . based on the defendants' participation in an allegedly fraudulent billing scheme." *State Farm Mut. Auto. Ins. Co. v. Kugler*, 11-80051, 2011 WL 4389915, at *12 (S.D. Fla. Sept. 21, 2011) (Hurley, J.). There can be no doubt that "[t]hese defendants and fraudulent billing activities are not regulated by the Office of Insurance regulation, and therefore, the FDUTPA potentially applies to the conduct described in State Farm's complaint." *Id*. The Court thus rejects Health & Wellness's contention otherwise.

### E. Dr. Lorites's arguments directed at Florida's criminal statute regarding insurance fraud are misplaced.

---

[4] The Court also denies Dr. Coll's request to strike State Farm's request for fees. His request is based on his contentions that State Farm's FDUTPA claims fail because State Farm is not a "consumer" and the implicated conduct does involve "trade or commerce." Because the Court finds both arguments meritless, it also denies Dr. Coll's request to strike State Farm's fee request on the same basis.

State Farm alleges that violations of Florida Statutes section 817.234(1)—a criminal statute dealing with insurance fraud—serve as predicates supporting its FDUTPA claims, including the FDUTPA claim against Dr. Coll. Section 817.234 "explicitly prohibits preparing . . . any written statement that is intended to be presented to any insurer in connection with any claim for payment . . . pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact material to that claim." *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1303 (S.D. Fla. 2018) (Moore, J.) (citing Fla. Stat. § 817.234(1)(a)(2)). Dr. Lorites does not dispute that a violation of section 817.234 is a *per se* violation of FDUTPA. *See, e.g.*, *Performance Orthapaedics*, 315 F. Supp. 3d at 1307 ("[Florida's] Insurance Fraud Statute may also serve as a predicate offense under the FDUTPA.") State Farm, in its complaint, pointedly alleges Dr. Lorites was an integral part of the complained of fraud, including his involvement, as a medical director, in the submission of false and misleading bills and records—in direct violation of section 817.234.

As an aside, the Court notes that much of Dr. Lorites's argument on this point, once again, appears to address an unrelated case. In his motion here, Dr. Lorites references bills submitted to an entity called "Metropolitan" that were purported to be inflated (Dr. Lorites's Mot. at 10) and claims submitted by attorneys "in an adversarial context during presuit negotiations" (*id.* at 9). None of these facts are at issue in this case rendering Dr. Lorites's arguments wholly inapplicable to this case.

**F. The four-year statute of limitations does not bar the claims against Dr. Lorites.**

Dr. Lorites also maintains State Farm's complaint should be dismissed because it is barred by the statute of limitations. As Dr. Lorites points out, the complaint alleges his tenure at Pain Relief spanned from June 2010 to April 2013. Therefore, he argues, the four-year state of limitations that he maintains applies under Florida Statute section 95.11(3)(j) has long since run as to any of the claims that implicate his involvement. Dr. Lorites's argument is misplaced.

As State Farm points out, it specifically alleges in its complaint that, until just prior to initiating this action, State Farm was unaware of the facts supporting its case and the Defendants actively concealed their misconduct. Because State Farm sufficiently alleges delayed discovery, fraudulent concealment, and equitable tolling, dismissal at this stage of the litigation, based on the applicable statute of limitations, would be improper. *See, e.g., Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 292 (11th Cir. 1988) (reversing dismissal because the complaint "did not conclusively show that the [plaintiffs]

knew or should have known of the" basis for their claim within the limitations period); *Razor Capital, LLC v. CMAX Fin. LLC*, 17-80388-CIV, 2017 WL 3481761, at *5 (S.D. Fla. Aug. 14, 2017) (Marra, J.) ("Whether or not fraudulent concealment is sufficient to toll the statute of limitations is a question of fact."). Because the running of any applicable statute of limitations is not apparent on the face of the complaint, the Court denies Dr. Lorites's motion to dismiss on this basis as well.

### G. State Farm properly pleads diversity jurisdiction.

Dr. Coll insists "[t]he Plaintiffs have improperly joined all twelve Defendants in this action in an attempt to manufacture federal court jurisdiction." (Dr. Coll's Mot. at 4.) According to Dr. Coll, "[u]nless EACH Plaintiff can satisfy the amount in controversy element of diversity jurisdiction with respect to EACH Defendant, the Plaintiffs['] complaint must be dismissed." (*Id.* (capitalization in original).) Dr. Coll's argument is a nonstarter.

"[W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement," 28 U.S.C. § 1367 "authorize[s] supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005). Thus, so long as one of the State Farm plaintiffs establishes more than the threshold $75,000-in-controversy amount as to Dr. Coll, the jurisdictional requirement is met.

To begin with, State Farm claims Dr. Coll is jointly liable for payments made specifically to Medical Wellness, where he served as the medical director, treated patients, or oversaw their treatment, signed records and bills, and played an integral role in the purported fraud scheme. Plaintiff State Farm Mutual alleges Medical Wellness billed it almost $2 million and that it paid Medical Wellness nearly $1 million. (Am. Compl. Exs. 44, 45.) Plaintiff State Farm Fire alleges Medical Wellness billed it more than $350,000 and that it paid Medical Wellness more than $150,000. (*Id.*) Where defendants are alleged to be jointly liable, damages are appropriately aggregated against multiple defendants. *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1368 (S.D. Fla. 2014) (Altonaga, J.) (finding the plaintiff had satisfied the amount-in-controversy threshold by pleading joint liability against a clinic, its owner, its medical director, and a staffing company because it did "not appear beyond a legal certainty that [the staffing company] can avoid joint and several liability for its participation in the scheme as alleged"); *State Farm Mut. Auto. Ins. Co. v. Advance Med. Associates & Forme Rehab, Inc.*, 1:17-CV-21737-UU, 2017 WL 5953295, at *4 (S.D. Fla. Aug. 17, 2017) (Ungaro, J.) ("Plaintiffs

can aggregate their claims against Defendants if Plaintiffs plausibly allege that Defendants might be "jointly liable."). Dr. Coll has left State Farm's many joint-liability allegations (Am. Compl. at ¶¶ 3, 5, 230, 260, 286) unrebutted. As such, his claim that the Court lacks jurisdiction over this case is without merit.[5]

### H. Dr. Coll's argument that State Farm's complaint should be dismissed for its failure to join indispensable parties misses the mark.

Dr. Coll also submits State Farm's complaint should be dismissed because it fails to join indispensable parties: namely, the treating doctors and massage therapists at the clinics who provided or signed off on the alleged predetermined treatment. Although Dr. Coll details the vital roles these entities played in facilitating the alleged fraud scheme, he neglects to ever explain why these parties are necessary to this action under the provisions of Federal Rule of Civil Procedure 19.

Under Rule 19, joinder is required only when either (1) the court cannot accord complete relief among existing parties; or (2) the absent party claims an interest in the subject of the action and disposing of the action in that party's absence may impair that party's ability to protect its interest or leave an existing party subject to a substantial risk of incurring double or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). The party seeking dismissal under Rule 19 bears the burden of demonstrating which factors under the rule support dismissal. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011). Dr. Coll's motion, however, is devoid of any analysis, never mind persuasive analysis, as to why the treating doctors and massage therapists have a protectable interest in the litigation, why complete relief is impossible without them, how the doctors and therapists' interests would be impaired, or why Dr. Coll, or any of the other Defendants, would be subject to a substantial risk of double or inconsistent obligations. Dr. Coll has fallen far short of meeting his burden under Rule 19.

### I. Dr. Coll's contentions regarding fees are meritless

Lastly, Dr. Coll, within his motion to dismiss, also seeks attorneys' fees under Florida statute sections 627.428 and 501.2105. Both requests are

---

[5] The Court denies Dr. Coll's alternative request to sever each Plaintiff's claims against each Defendant in this case. State Farm alleges multiple questions of law and fact that are common to all Defendants and both Plaintiffs. The claims set forth all arise out of the same transactions or occurrences, including allegations that the Muse Family owns and operates all three of the named clinics; that each clinic is engaged in a common scheme to submit unlawful claims to both Plaintiffs for no-fault benefits; and that the claims submitted are not compensable. Dr. Coll's severance request is wholly meritless.

premature. As such, Dr. Coll's fee request is denied without prejudice to his re-raising the issue should he become entitled to a fee award at the conclusion of this litigation.

### 4. Conclusion

In sum, the Court **denies** Drs. Lorites and Coll and Health & Wellness's motions to dismiss (**ECF Nos. 34, 42, 65**) in their entireties. The Court orders these three Defendants to respond to the amended complaint on or before **June 18, 2019**.

**Done and ordered**, at Miami, Florida, on June 10, 2018.

Robert N. Scola, Jr.
United States District Judge