**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:18-cv-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE and CASUALTY
COMPANY
        Plaintiff,

vs.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE,
HUGO GOLDSTRAJ, MANUEL FRANCO,
MEDICAL WELLNESS SERVICES, INC., NOEL
SANTOS, ANGEL CARRASCO, JORGE RAFAEL
COLL, PAIN RELIEF CLINIC OF HOMESTEAD,
CORP., JESUS LORITES and JOSE GOMEZ-
CORTES,

        Defendants.
_____/

**DEFENDANTS, MEDICAL WELLNESS SERVICES, INC., NOEL SANTOS, LAZARO MUSE AND BEATRIZ MUSE'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, FOR SUMMARY JDUGMENT AS TO CERTAIN UNDISPUTED MATTERS RELEVANT TO CERTAIN ELEMENTS IN THE COUNTS OF THE AMENDED COMPLAINT**

Defendants, **MEDICAL WELLNESS SERVICES, INC., NOEL SANTOS**, **LAZARO MUSE** and **BEATRIZ MUSE,** pursuant to Rule 56 of the Federal Rules of Civil Procedure, file their motion for summary judgment against State Farm Automobile Insurance Company and State Farm Fire & Casualty or alternatively, Motion for Partial Summary Judgment as to Certain Undisputed Matters Relevant to one or more of the Claims in the Amended Complaint and state as follows:

1

## A. THE PARTIES

1. Plaintiff State Farm Mutual ("SF") is an Illinois domestic property and casualty insurer incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois. State Farm Mutual is licensed to engage in business in the State of Florida as a foreign corporation and is doing business in Miami-Dade County, Florida.

2. Plaintiff State Farm Fire ("SF") is an Illinois corporation with its principal place of business in Bloomington, Illinois. State Farm Fire is licensed to engage in business in the State of Florida as a foreign corporation and is doing business in Miami-Dade County, Florida.

3. Defendant Health & Wellness ("H&W") is an active Florida corporation with its principal place of business at 2140 W. Flagler Street, Suite 202-203, Miami Florida 33135. Health & Wellness was incorporated on June 26, 2007 by Beatriz Muse.

4. Defendant Beatriz Muse ("Beatriz") is a citizen of Florida and resides in Miami-Dade County, Florida.

5. Defendant Lazaro Muse ("Lazaro") is a citizen of Florida and resides in Miami-Dade County, Florida. Lazaro is Beatriz' brother.

6. Defendant Dr. Hugo Goldstraj, M.D. ("Dr. Goldstraj") is a citizen of Florida and resides in Miami-Dade County, Florida.

7. Defendant Dr. Manuel Franco, M.D. ("Dr. Franco") is a citizen of Florida and resides in Miami-Dade County, Florida.

8. Defendant Medical Wellness Services, Inc. ("MW") is a dissolved Florida corporation whose principal place of business was at 3850 SW 87th Ave, Suite 207, Miami, Florida 33165.

9. Defendant Noel Santos ("Noel") is a citizen of Florida and resides in Miami-Dade County, Florida.

10. Defendant Angel Carrasco, M.D. ("Dr. Carrasco") is a citizen of Florida and is believed to reside in Miami-Dade County, Florida.

11. Defendant Jorge Rafael Coll, M.D. ("Dr. Coll") is a citizen of Florida and is believed to reside in Miami-Dade County, Florida.

12. Defendant Pain Relief Clinic of Homestead Corp. ("Pain Relief") is an active Florida corporation with its principal place of business at 26051 South Dixie Highway, Naranja, Florida 33032.

13. Defendant Jesus Lorites, M.D. ("Dr. Lorites") is a citizen of Florida and is believed to reside in Miami-Dade County, Florida.

14. Defendant Jose Gomez-Cortes, M.D. ("Dr. Cortes") is a citizen of Florida and is believed to reside in Miami-Dade County, Florida. Dr. Lorites is a licensed physician who has been the medical director at Pain Relief from April 1, 2013 to the present.

## B. THE AMENDED COMPLAINT

**Count I** of the Amended Complaint charges common law fraud against Beatriz and Lazaro; **Count II** of the Amended Complaint charges common law fraud against MW, Beatriz, Lazaro and Noel; **Count III** of the Amended Complaint charges common law fraud against Beatriz and Lazaro; **Count IV** of the Amended Complaint charges a violation of the Florida Deceptive and Unfair Practices Act[1] against Beatriz and Lazaro; **Count V** of the Amended Complaint charges a violation of Florida Deceptive and Unfair Practices Act against MW, Beatriz, Lazaro and Noel; **Count VI** of the Amended Complaint charges a violation of Florida Deceptive and Unfair

---

[1] The headers to Counts IV though VI improperly identify these counts as the "Florida Deceptive and Unfair Practices Act". To be precise, the statute is titled "Florida Deceptive and Unfair Trade Practices Act".

Practices Act against Beatriz and Lazaro; **Count VII** of the Amended Complaint charged unjust enrichment against Beatriz and Lazaro; **Count VIII** of the Amended Complaint charges unjust enrichment against MW, Beatriz, Lazaro and Noel; **Count IX** of the Amended Complaint charges unjust enrichment against Beatriz and Lazaro; and **Count X** seeks declaratory relief against all three medical clinics.

## C.  SUMMARY JUDGMENT STANDARD

The standard for summary judgment is set forth in *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). In short, if there is no genuine issue of material fact on a particular issue (or count), the court can enter judgment as a matter of law.

## D. DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT AS TO ALL COUNTS IN THE AMENDED COMPLAINT

### i).  COUNTS I, II and III (COMMON LAW FRAUD)

The Amended Complaint falls woefully short of the particularized pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. More pointedly however, there is a total absence of fraud allegations as against the individual defendants, Lazaro, Beatriz and Noel. In evaluating a motion to dismiss which reasoning should apply for summary judgment purposes here, Chief U.S. District Court Judge Michael Moore recently dismissed an amended complaint filed by the same Plaintiffs in this case for those very reasons. *State Farm Mut. Auto Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC,* 278 F.Supp.3d 1307 (September 25, 2017). In the *Performance* case, there were allegations of fraud against the individual defendants but they were *conclusory*. Here, there are *zero* allegations of what knowingly fraudulent statements were made by any of the individual Defendants to SF.

Not only do SF's common law fraud counts fail to meet the heightened requisite pleading requirements, the evidence in the case fails to support SF's ability to prove those counts against Defendants Lazaro, Beatriz, Noel and MW because there is no record evidence showing that any of those Defendants made any statement(s) whatsoever to SF and which were knowingly false when made. As for MW which *was* in privity with SF, SF has failed to plead, present or record evidence as to what knowingly false statement(s) was/were made by MW to SF, when, where or how. Without such a statement, there can be no fraud. The record evidence is *further* attenuated with regards to the individuals, Lazaro, Beatriz and Noel – as they had *no* direct contact with SF, *ever*. Moreover, SF has utterly failed to allege the materiality of any such knowingly false statement; SF has equally failed to allege and present record evidence of *actual reliance* by SF on any *particular statement* made by any of the Defendants. As such, all of the counts alleging common law fraud against the individual Defendants and MW - should be dismissed by summary judgement.

### ii). COUNTS IV, V AND VII FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

As a matter of law, Counts IV through VI of the Amended Complaint must be dismissed because the FDUPTA "relationship" does not exist between Lazaro, Beatriz, Noel and MW and SF. A claim under FDTUPA can be brought by a private citizen who is the victim of deceptive practices against a manufacturer or seller. SF was neither. Indeed, the amended complaint does not even track the requisite FDUTPA allegations to denominate who was the consumer and what were the direct transactions between the individually named Defendants and SF because there clearly are none here. As a matter of law, there is no such consumer relationship between SF and Lazaro, Beatriz, Noel and/or MW.

Florida Statute §501.203 defines the following:

(7) "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination.

(8) "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The court in *Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)* held that FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." FDUTPA broadly defines the term "consumer" to include: individuals; children; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity; or any other group or combination. Fla. Stat. § 501.203(7). *While consumer is broadly defined by the act, the protection afforded to consumers is qualified by the requirement that the consumer must suffer the injury while participating in either trade or commerce.* Neither Noel, Beatriz or Lazaro were involved in a trade or commerce with SF.

The court in *In re Maxxim Medical Group* held that "FDUTPA has no application to entities complaining of tortious conduct which is not the result of a consumer transaction." *In re Maxxim Medical Group, Inc., 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010).* Likewise, neither Noel, Beatriz or Lazaro engaged in a commercial transaction with SF. FDUTPA defines "trade or commerce" to include: advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. Fla. Stat. § 501.203(8).

Courts have not been consistent when interpreting who may bring a claim under FDUPTA. For example, some courts have held that FDUPTA only extends to persons who were deceived when buying or selling goods or services. *See, e.g.*, *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348-50 (S.D. Fla. 2009) (holding a plaintiff did not have standing to sue a company that posted inappropriate photos of her without her consent because the plaintiff was not engaged in a market transaction). By contrast, some courts have held that FDUPTA extends to any person injured by a deceptive act or unfair practice, regardless of whether goods or services were bought or sold. *See, e.g.*, *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1145-47 (M.D. Fla. 2007).

What is clear, is that in order to bring an action against an individual, as opposed to a corporation, "a plaintiff must allege that the individual was a direct participant in the dealings."*Aboujaoude v. Poinciana Development Company II*, 509 F. Supp. 2d 1266, 1267 (S.D. Fla. 2007). Also, the court in *KC Leisure* stressed the importance of "having actual knowledge of the violations" in order to be considered a direct participant. *KC Leisure, Inc. v. Haber*, 922 So. 2d 1069, 1073 (Fla. 5th DCA 2008).

Theoretically, SF could have pleaded around this impediment with a conspiracy or aiding and abetting claim but they failed to do so. It is absolutely clear that statutes of this nature are narrowly construed. Counts IV though VI should be dismissed by summary judgment. Alternatively and at the very least, summary judgment should be granted as to individuals, Lazaro, Beatriz and Noel as clearly they were never in any privity whatsoever with SF.

iii). **COUNT X (DECLARATORY JUDGMENT)**

The last count of the amended complaint seeks declaratory judgment. The Florida Supreme Court has held that an insurer may pursue a declaratory action which requires a determination of the existence or non-existence of fact where the insurers obligations under an insurance policy

depends. Here, however, the Plaintiffs have failed to establish that any of the Defendants in fact are owed nothing for services even accepting all of the allegations in the amended complaint as true. See, *Higgins v. State Farm Fire & Casualty Co.,* 894 So.2d 5, 12 (Fla. 2004) and *State Farm Mut. Auto Ins. Co. v. Performance Orthopaedic*, *& Neurosurgery, LLC,* 278 F.Supp.3d 1307 (September 25, 2017).

### E. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO CERTAIN UNDISPUTED MATTERS

**(i) Lazaro Muse**

**Point 1: It is undisputed that Lazaro Muse owned any of the three medical clinics.**

Lazaro testified under oath that he never had any actual or de facto ownership in any of the clinics at issue – MW, H&W or Pain Relief. Indeed, even SF could not in good faith allege, much less now prove - that Lazaro was a "silent" or "phantom" owner of H&W, MW and PR (See, Amended Complaint ¶14). "...Mr. Muse is Beatriz Muse's brother and is *believed* to be one of the true owners of H&W, MW and PR".

There is no record evidence that Lazaro ever owned any of these clinics either legally or beneficially. The "closest" that SF came to creating a fact dispute on that was through the testimony of Anet Perez, an AHCA consultant, who speculated that Lazaro might have been the owner of one or more the clinics. But, on cross-examination, Ms. Perez conceded that she did not really know one way or the other. (Anet Perez Depo. p. 141-43). While there is testimony that Lazaro was seen at H&W on a few occasions, the mere presence of a person at a business is a far cry from having ownership interest in it.

SF relies on another point to try and establish an "ownership link" between Lazaro *and H&W* simply because "Mr. Muse formerly co-owned, with Noel Ruiz, the building that housed both First Care Solution Inc. and Health & Wellness, located at 2128 W Flagler Street in Miami, Florida". (Amended Complaint ¶14). It is axiomatic that owning a building with a lease to a tenant

8

who runs a business therein does not make the building's landlord the owner of his tenant's business.

Based on the foregoing, the Court should enter *final* summary judgment in favor of Lazaro as there is no genuine issue of fact that he was not a nominee, secret or silent owner in *any* of the three medical clinics. If the Court grants summary judgment on this point, Lazaro must be dismissed from the Amended Complaint in toto.

**(ii) Beatriz Muse**

**Point 2: There is no factual dispute that while Beatriz owned and operated H&W (from June 26, 2007 until she sold it to Marcelo Velasquez in 2013), she believed that its then medical director - Dr. Hugo Goldstraj – was compliant with his statutory requirements as medical director.**

Beatriz has testified under oath that while she owned and operated H&W, she believed that its medical director – Dr. Goldstraj - was performing all of his duties in a compliant manner. (Beatriz Muse Depo. p. 146; 13-25). There is no testimony (or record evidence) to refute such belief. The closest that SF comes to creating a fact dispute on this point is by reference to some "cherry-picked" deposition testimony of Dr. Goldstraj in a 2013 PIP lawsuit taken totally out of context (Exhibit 16 to the Amended Complaint - consisting of a one-page excerpt of the deposition), suggestive that he was acting subpar to his legal obligations as medical director at H&W. But that is not precisely what he said in his deposition. First, he described his *overall responsibilities* at H&W (Exhibit 16 to the Amended Complaint - p. 35 of the deposition excerpt). Then the questioning turned to his review of H&W's *billings*. He testified that the billing at H&W was being done *correctly* (Exhibit 16 to the Amended Complaint –p. 36 of the deposition excerpt). He was then asked whether H&W's billing coincided with the therapy notes and his answer was "**yes,** but I was not extremely careful with it". (Exhibit 16 to the Amended Complaint – p. 37 of the

9

excerpt). When deposed about that deposition testimony, he was clear about what he said earlier, that he was not *negligent*. He merely meant that he could have done as the medical director at H&W. Dr. Goldtraj was quite clear that he met those obligations – at the very least – at an acceptable, legal standard. (Dr. Goldstraj Depo. pp. 269-70).

Last, there is no dispute that a clinic owner – here Beatriz - could not interfere with the medical director, medical treater's exercise of medical judgment or medical director duties. (Beatriz Muse Depo. p. 215, 2-6). No fact witness has testified that Dr. Goldstraj failed to meet his medical director duties while employed at H&W, or that if he did, that Beatriz was aware of it. (Dr. Goldstraj Depo. pp. 269-70).

Based on the foregoing, summary judgment should be entered on this issue in favor of Beatriz.

**Point 3: There is no evidence that Beatriz was aware of Dr. Goldstraj's criminal conduct in and unrelated matter/clinic before she sold H&W.**

While SF presents evidence that Dr. Goldstraj was charged in state court with 4 felony counts of false and fraudulent insurance claims under Case No. F12-024039G in 2012 and that he pled "guilty" to such counts (Comp Ex. 19), there is no evidence that Beatriz was aware of that until *after the fact*. Current knowledge of Dr. Goldstraj's *prior* charged conduct does not now somehow create retroactive imputed knowledge upon Beatriz to the earlier relevant time period as SF seems to argue.

Moreover, in his deposition *in this case*, Dr. Goldstraj denied guilt and stated that he merely pled became it guaranteed him no prison time and he did not have faith in the criminal justice system to warrant a trial. (Dr. Goldstraj Depo. pp. 299-300).

Based on the foregoing, summary judgment on this issue should be granted in favor of Beatriz.

**Noel Santos**

**Point 4: There is no factual dispute that while Noel owned and operated MW (from June 22, 2009 to present, that he believed that its medical directors – Dr. Carrasco (from 2009 –2013) and Dr. Coll (from 2013 to present) were compliant with their statutory requirements as medical directors.**

Based upon a separate filing, Drs. Carrasco's and Coll's self-serving affidavits - which came as a part of their "plea deals" – should be stricken. But even if not stricken, the affidavits fall short of implicating Noel in their conduct, whether sloppy (negligent) or intentional (fraud). Moreover the affidavits from Drs. Carrasco and Coll counter their denials in their respective answer and affirmative defenses to the Amended Complaint. As stated in section 2 above, it is undisputed that a clinic owner – here Noel - cannot interfere with the independent medical judgment of the medical director and or the treating physician at a medical clinic.

Based on the foregoing, even validating the "perjured" affidavits of Drs. Carrasco and Coll, summary judgment should be entered on this issue in favor of Noel.

**Beatriz, Noel and MW**

**Point 5: Beatriz, Noel and MW did not and could not diagnose any patient or select the POTs; and they were not involved in performing any of the modalities on any of the patients.**

It is undisputed that neither Beatriz, Noel or MW were involved in diagnosing or treating any of the patients – Beatriz at H&W and Noel at MW – at *any* point in time. As clinic owners, they cannot be vicariously liable for any purported fraud alleged against any of the medical directors at those clinics, or even now, admitted by Drs. Carrasco and Coll. Vicarious liability does not apply to fraud. Since Beatriz and Noel have both denied knowledge of any fraud or any knowledge that any medical director was non-compliant in meeting his/their statutory

responsibilities as there is no evidence they were aware of any fraud, they cannot be responsible for any fraud that *might* have been committed by any of the medical directors at H&W or MW.

**Point 6: MW was in full compliance with Florida law.**

The evidence is undisputed that:

- MW was a duly incorporated entity in the state of Florida (Amended Complaint ¶s 12).
- MW hired licensed physicians to act as their medical directors. (Noel Santos Deposition p. 120).
- MW obtained proper AHCA licenses for their operations. (Id.).
- MW's patients were diagnosed, then treated and the billings were accurate. (Noel Santos Deposition p. 121)

Based upon the foregoing, final summary judgment should be entered in favor of Noel and MW on this issue.

**Point 7: Similarity of diagnosis and treatment at the medical clinic is not indicative of fraud but is rather the result of similarity of injuries from motor vehicle accidents for which the clinics provided similarly, but medically necessary treatment to their patients.**

SF is of the misguided belief that similar accidents must result in dissimilar injuries to the occupants of motor vehicles or there is fraud lurking somewhere, ignoring simple reason and common sense. It is straightforward that all motor vehicle accidents result in the transmission of energy through the human body and, depending on the amount of energy upon impact, the injuries may vary. However, here, the accidents were not high impact resulting in common, if not similar, injuries albeit based on certain factors with different degrees of pain, and of course, with different speeds of recovery based on a variety of human factors such as age, overall health, pre-existing injury, just to name a few. SF's own corporate representative acknowledged as much in his

deposition. (Deposition of SF Corp. Rep. Stephen Bright. pp. 142-46). With the deepest respect to SF, its positon on this point is just silly.

If ten (10) people go to various, shadeless Miami beaches on the same sunny mid-summer day morning, wear no sunscreen, and have pretty much the same amount of sun exposure for several hours under 90 degree temperatures, they will *all* suffer from sunburn, but not third degree burns. Most of these sunbathers will have the typical (and identical) subjective complaints of sunburn pain, they will also have clinically notable similarities, (redness, hot skin, skin tenderness to the touch and minor inflammation). Does the fact that all sunbathers have the same (or very similar) symptoms and that none of the sunbathers had a third degree burn, mean that CVS is committing fraud in selling the same CVS brand aloe to its customers?  Most of these sunbathers will feel better after using the aloe - as recommended by the manufacturer - for one or two days. An occasional sunbather may extend the use to a third day. Must we conclude that because all 10 sunbathers applied the same treatment and stopped using the aloe after a couple of days that CVS was committing fraud? SF's narrow, if not *blinded* view of the world's reality – not to mention Newton's law of physics -  is nonsensical theorizing, not a colorable claim for fraud.

Likewise, SF sees fraud merely because a high percentage of patients at H&W and MW received x-rays and similar POTs. All of the doctors who testified in this case, including defense expert – Dr. Nicholas Suite -  however, explained that they would fall below the standard of care if they failed to take an x-ray looking for fractures or broken bones following a motor vehicle accident and before diagnosing the nature and degree of the injury and prescribing treatment. (Dr. Suite Depo. p. 183-84; Dr. Goldstraj Depo. p. 71-72; Dr. Rubenstein Depo. p. 111-12).  Thus, this argument fails. And, just like aloe is a common staple, recommended treatment for sunburn pain, an x-ray must be performed to protect the doctor – and the clinic- from a subsequent medical

malpractice claim where the POT could later aggregate a fractured or broken bone unknown because no x-ray was performed.

SF posits that the "comparative analysis" for each clinic shows a correlation of treatment plans and frequency with similar final impairment ratings attached to the Amended Complaint as Exhibits 9, 22 and 33. However, upon careful analysis of those spread sheets, this argument boomerangs right back against SF. First, as between the 3 clinics, there is a significant disparity of these supposed "similarities". Separate, individually and within *each* clinic, there is no clear pattern as alleged by SF. But, even if one sees some pattern, we go back to the sunburn analogy, and say, "so what?"

**Point 8: Occasional, clerical and administrative mistakes amongst thousands of entries and forms are insufficient to establish a claim for fraud against MW.**

It is easy to play Monday morning quarterback and find a few clerical errors here and there and yell "fraud!" None of the "blanks" noted by SF in any of the forms, records, notes or reports are sufficient to establish a claim for fraud. As such, summary judgment on this issue should be granted.

**Point 9: The "Guide" at H&W to document patient condition and progress is insufficient to establish a claim for fraud against Noel, Beatriz and MW.**

There is simply nothing wrong with a corporation – here a medical clinic – using a guide to help its employees uniformly describe the language that should be used in the course and scope of a business. There is good reason for the establishment of guidelines, one example of which is to ensure that when different people are referring to the same condition, they are giving it a uniform title. This avoids later differences in interpretation, confusion or dispute over what was being identified. Summary judgment on this issue should be granted for Noel, Beatriz and MW.

**Point 10: The fact that the Medical Directors worked a multiple clinics is insufficient to establish a claim for fraud against Noel, Beatriz and MW.**

While SF alleges that the medical directors at H&W and MW all worked at more than one clinic, unfortunately for SF, it is an undisputed fact that there is no law, or AHCA rule that limits a medical director's ability to work at any number of clinics. So long as the medical director is able to meet his/her obligations at the respective clinics there is no limit as to the number of clinics he/she can work at. None of the medical directors in this case have testified that they were so overloaded with work at the time that they knew – and more importantly - that they communicated to any clinic owner, that they were "spread too thin". For these reasons summary judgment on this issue should be granted.

**Point 11: The claim of record keeping violations is insufficient to establish a claim for fraud against Noel, Beatriz and MW.**

Neither Beatriz nor MW can be accused of violating the records retention laws of AHCA because Beatriz sold the business well before the seven (7) year records retention date kicked in as to MW. As for Noel and MW, Noel testified that when MW closed in 2017, he transferred all of its property and records to a local storage warehouse. (Noel Santos Deposition pp. 74, 98-99, and 115-116). SF has failed and refused to ask Noel or MW for permission to inspect the warehouse. Despite the closing of MW, MW and Noel have produced a significant amount of records relating to MW's operations. The non-specific allegation and the lack of evidence of intentional disposal of any "record" requires summary judgment on this issue in favor of Noel, Beatriz and MW.

## CONCLUSION

Based on the foregoing, the Court should grant the relief requested herein.

                                        Respectfully submitted,

                                        s/ Richard J. Diaz
                                        _____

                                        Richard J. Diaz, Esq.
                                        3127 Ponce De Leon Blvd.
                                        Coral Gables, FL  33134
                                        Telephone: (305) 444-7181
                                        Facsimile: (305) 444-8178
                                        F.B.N. 0767697

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served electronically on all parties of record this 30th   day of October, 2019.

                                        s/ Richard Diaz
                                        _____
                                        Richard J. Diaz, Esq.