**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:18-cv-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANT and STATE
FARM FIRE and CASUALTY
COMPANY
        Plaintiff,

vs.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE,
HUGO GOLDSTRAJ, MANUEL FRANCO,
MEDICAL WELLNESS SERVICES, INC.,
NOEL SANTOS, ANGEL CARRASCO, JORGE
RAFAEL COLL, PAIN RELIEF CLINIC OF
HOMESTEAD, CORP., JESUS LORITES and
JOSE GOMEZ-CORTES,

        Defendants.
_____/

**DEFENDANTS, MEDICAL WELLNESS SERVICES, INC., NOEL SANTOS, LAZARO MUSE AND BEATRIZ MUSE'S OMNIBUS FILING:**

**I.**     **SUGGESTION OF PERJURY AS TO CO-DEFENDANTS JORGE RAFAEL COLL AND ANGEL CARRASCO**

**II.**     **MOTION TO STRIKE THE JORGE RAFAEL COLL AND ANGEL CARRASCO AFFIDAVITS AS PERJURIOUS (AND TO PRECLUDE THEIR USE BY PLAINTIFFS IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION)**

**III.**     **MOTION FOR SANCTIONS AGAINST JORGE RAFAEL COLL AND ANGEL CARRASCO FOR THEIR OBSTRUCTION OF JUSTICE**

**IV.**     **REQUEST FOR EVIDENTIARY HEARING TO DISCOVER THE FULL NATURE AND EXTENT OF THE OBSTRUCTION OF JUSTICE FOR CONSIDERATION OF WHETHER SANCTIONS ARE APPROPRIATE AGAINST ANY PERSON WHO ASSISTED IN THE PREPARATION OF THE AFFIDAVITS WITH KNOWLEDGE OF ANY OF THE FALSE ALLEGATIONS THEREIN**

1

Defendants, **MEDICAL WELLNESS SERVICES, INC., NOEL SANTOS, LAZARO MUSE** and **BEATRIZ MUSE** ("Muse Defendants"), state as follows:

## BACKGROUND

1. Doctors Jorge Rafael Coll ("Coll") and Angel Carrasco ("Carrasco") are co-defendants in this case.

2. Shortly after the discovery cutoff deadline of August 30, 2019, and apparently not by coincidence, Plaintiffs disclosed an affidavit from Carrasco[1] (**Exhibit 1**) and one from Coll[2] (**Exhibit 2**) to the defense. Plaintiffs now rely on these affidavits in support of their motion for summary judgment.[3]

3. The Coll affidavit is a component and condition of a recent settlement by and between Coll and the Plaintiffs.[4]

4. After receiving the affidavits, undersigned counsel initiated an investigation into the veracity of the core allegations of each one and has uncovered not one, but *several* material instances of perjury in both affidavits, as further illustrated below.

(i).   **Dr. Coll's Perjury**

The following are verbatim excerpts from the Coll affidavit followed by proof of the falsehood:

- ¶ 3 of Coll's affidavit states in part, "*I have never been sanctioned or found to have been involved in any fraud or illegitimate medical practice*."  This statement is false. On October 25, 2001, the Agency for Health Care Administration ("AHCA") sanctioned Dr. Coll in the amount of $1,099.00 for violating F.S. §458.331(1)(g)(x) IN CASE No. 2001-101252.(**EXHIBIT 3**)

---

[1] Carrasco's affidavit was signed and notarized on July 17, 2019 and withheld for almost two months when it was disclosed (on September 25, 2019).
[2] Coll's affidavit was signed and notarized on August 22, 2019 but again, it was not disclosed until one month later, on September 25, 2019.  As such, it was also withheld.
[3] As a result of the "admissions" in these affidavits, Coll and Carrasco will invariably lose their medical licenses.
[4] Carrasco remains a Defendant in the case, perhaps explained by his "pro se" status.

- ¶9 of Coll's affidavit states in part, "*I was also the medical director at D&K Rehab, Sunshine Medical Center and VLO Medical.  I no longer work at any of these clinics.*" This statement is false. A September 29, 2019 Florida Health Finder printout for Sunshine Medical Care Group, Inc. identifies Dr. Coll as its current Medical or Clinic Director. (**EXHIBIT 4)**
- ¶11 of Coll's affidavit states in part, "*…I had not reviewed in detail nor received any education by Medical Wellness regarding the laws and/or regulations which apply to medical directors…I did not know the full scope nor all…of my responsibilities…or any of its policies*". The statement is belied by Coll's signatures evidencing his "In Service Training" and his annual review and approval of Medical Wellness's Policy and Procedure Manual as Medical  Director for Medical Wellness dated September 24, 2015, September 24, 2014 and September 24, 2013 (**Comp. EXHBIT 5).**
- ¶12 of Coll's affidavit states in part, "*…I have not read, reviewed in detail the laws and/or regulations which apply to medical directors in the state of Florida*". This is a concerning statement that should not be taken lightly. Its similar to a licensed attorney employed at a firm and the attorney would claim to not have read or reviewed the rules and regulations governing the Florida Bar!! Nevertheless, the statement is false because Coll already signed off as having read and reviewed all such responsibilities in the Medical Wellness General Procedures Manual. (**Comp. EXHIBIT6**).
- ¶13(d) of Coll's affidavit states in part, "*I was unfamiliar with all the requirements of Florida Statute §456.057 which sets for the parameters of serving the clinic's medical records…*".  This is a false statement as well and is belied by Dr. Coll's signatures on the Medical Wellness Clinical Medical Director Oversight forms. Indeed, subparts 6 and 7 therein affirm that Dr. Coll served as the clinics record owner as defined in s. 456.057 and ensured compliance with the recordkeeping, office surgery and adverse reporting requirements of Chapter 456 and 408.  (**Comp. EXHBIT 7).**

(ii)    **Dr. Carrasco's Perjury**

The following are verbatim excerpts from the Carrasco affidavit followed by proof of the falsehood:

- ¶3 of Carrasco's affidavit states, "*I am board certified in neurology*". This is a false/inaccurate statement. A Florida Department of Health profile printout for Carrasco reflects that Carrasco does not hold any certifications from specialty boards recognized by Florida.  **(EXHIBIT 8).**
- ¶9 of Carrasco's affidavit states in part, "*…I had not reviewed in detail nor received any education by Medical Wellness regarding the laws and/or regulations which apply to medical directors…I did not know the scope of my responsibilities as Medical Wellness's medical director*". The statement is belied by Carrasco's signatures evidencing his "In Service Training" and his annual review and approval of Medical Wellness's Policy and Procedure Manual as Medical  Director for Medical Wellness dated June 22, 2009, June 23, 2010, June 24, 2011 and June 23, 2012 (**Comp. EXHBIT 9).**
- ¶10 of Carrasco's affidavit states in part, "*…I have not read, reviewed in detail, nor received any education regarding the laws and/or regulations which apply to medical*

3

- *directors in the state of Florida*". This is a concerning statement that should not be taken lightly. Its similar to a licensed attorney employed at a firm and the attorney would claim to not have read or reviewed the rules and regulations governing the Florida Bar!! Nevertheless, the statement is false because Carrasco already signed off as having read and reviewed all such responsibilities in the Medical Wellness General Procedures Manual. (**Comp. EXHIBIT 10**).
- ¶11(a) of Carrasco's affidavit states in part, "*I never maintained a log of statement reviews of billing that I performed.*" This is a false statement. Attached as **Comp. EXHIBIT 11** are a handful of "Systematic Billing Review" forms signed by Dr. Carrasco while at Medical Wellness that state he has conducted a systematic review of the clinic billing and discovered there were no unlawful charges.
- ¶11(e) of Carrasco's affidavit states in part, "*I was unfamiliar with all the requirements of Florida Statute §456.057 which sets for the parameters of serving the clinic's medical records…*". This is a false statement as well and is belied by Dr. Carrasco's signatures on the Medical Wellness Clinical Medical Director Oversight forms. Indeed, subparts (e) and (i) therein affirm that Dr. Carrasco served as the clinics record owner as defined in s. 456.057 and ensured compliance with the recordkeeping, office surgery and adverse reporting requirements of Chapter 456 and 408. (**Comp. EXHBIT 12**).

Based on the proffer herein, the Court can and should: First, make a finding of perjury against Drs. Coll and Carrasco. Next, the Court should strike their affidavits and order that they cannot be used in support of Plaintiffs' motion for summary judgment because they are perjurious and attempt to create a false fact upon which the Plaintiffs intend the Court to rely to grant them summary judgment. Third, the Court should enter heavy sanctions against Drs. Coll and Carrasco. If they were opposite parties to the "Muse Defendants" in this case, the amended complaint could be dismissed if they were the Plaintiffs; their defenses could be stricken if this motion was being filed by the Plaintiffs and they were defendants, but that is not the posture under which these parties are aligned. Therefore, the gambit of sanctions is unusually limited there. We therefore respectfully suggest a significant monetary fine against both Defendants and a referral to the United States Attorney's Office for criminal investigation and prosecution. Last, because it is logically obvious that these individuals did not create these affidavits on their own, the Court should conduct an evidentiary hearing to get answers to the following questions:

1). Whose idea was it to get these affidavits in the first place?
2). Who initiated the first drafts of each?
3). Where are all of those preliminary non-final drafts?
4). Who were the drafts shared with?
5). Who provided the information that went into the various drafts and final product?
6). What investigation, if any, did the "drafter(s)" of the various iterations of the affidavits do to verify the accuracy of the facts alleged therein?

## MEMORANDUM OF LAW

In re: *Tuto Wells Contamination Litigation* 120 F. 3d 368 (3d Cir.1997), the court of appeals affirmed a $120,000.00 sanction against the law firm for its part in suppressing a report by a professional engineer summarizing the results of certain tests in connection with an environmental lawsuit. A greater award of sanctions was reversed on procedural grounds. In *Chambers v. NASCO,* 501 U.S. 32 (1999), sanctions in the form of attorney's fees and expenses totaling almost $1,000,000 dollars were upheld by the United States Supreme Court for the petitioner's attempt to deprive the Court of jurisdiction by acts of fraud, for filing false and frivolous pleadings, causing massive expenses and other tactics of delay, oppression, harassment to reduce the respondent to exhausted compliance. In *E.I. Dupont De Nemours & Comp.* 918 F. Supp. 1524, (M.D. Ga. 1995) reversed 99 F.3d 363 (11 Cir. 1996), Plaintiffs sought sanctions based upon the defendant's failure to disclose test data central to the plaintiff's claims. The district court held that the defendant, through its legal counsel, carried out a deliberate effort to restrict legitimate discovery and sanctioned the defendant $13,687,675.06 for the abuses and $100,000,000.00 for civil contempt. Here, the sanctions should be equally severe.

## ARGUMENT

This is not a single "innocent misrepresentation" attributable to maybe a "lapse in memory" of a witness on a minor subject which can be overlooked as a "probable mistake". See, Eleventh Circuit Pattern Instruction 6.1. Both affidavits are riddled with perjury. Both were

5

executed within weeks of each other and likely "hatched" at an even closer point in time. Coll and Carrasco did not wake up one day and type them up on their own. The format and facts are identical as are many of the aversions in each affidavit. The affidavits were clearly prepared by a lawyer and remember, Carrasco is unrepresented.

## CONCLUSION

Based on the foregoing, the Court should grant the relief requested herein.

Respectfully submitted,

s/ Richard J. Diaz
_____

Richard J. Diaz, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
F.B.N. 0767697

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served electronically on all parties of record this 30th day of October, 2019.

s/ Richard Diaz
_____
Richard J. Diaz, Esq.