**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-CV-23125-RNS**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE and CASUALTY COMPANY,

Plaintiffs,

v.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE, HUGO
GOLDSTRAJ, MANUEL FRANCO, MEDICAL
WELLNESS SERVICES, INC., NOEL SANTOS,
ANGEL CARRASCO, PAIN RELIEF CLINIC OF
HOMESTEAD, CORP., JESUS LORITES, AND
JOSE GOMEZ-CORTES,

Defendants.
_____/

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**SUMMARY JUDGMENT AGAINST ALL DEFENDANTS**

**[THIS SECTION IS INTENTIONALLY LEFT BLANK]**

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively the "State Farm Plaintiffs"), pursuant to Local Rule 56.1, file this Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment directed to Counts IV - X in the Amended Complaint [ECF No. 6].

## I. THE RELEVANT PARTIES AND INDIVIDUALS

1. Health and Wellness Services, Inc. ("HW") is an active Florida corporation with its principal place of business in Miami, Florida. *See* [ECF No. 6], Am. Compl. at ¶ 12; [ECF No. 117], HW Answer at ¶ 3. HW is a licensed health care clinic that treats patients who were injured in automobile accidents and bills the patients' No-Fault insurer. *See* [ECF No. 177], A. Perez Dep. at 51:15-24; [ECF No. 161], B. Muse Dep. 43:17-45:12.

2. Beatriz Muse is a citizen of Florida, residing in Miami-Dade County, Florida. *See* [ECF No. 161], Vol. I at 55:10-25. Ms. Muse is married to Noel Santos. *Id* at 8: 4-5.

3. Lazaro Muse is a citizen of Florida, residing in Miami-Dade County. *See* [ECF No. 163], L. Muse Dep. Vol. I at 16:3-6. Mr. Muse is Ms. Muse's brother. *Id*. at 93:8-11.

4. Hugo Goldstraj is a citizen of Florida, residing in Miami-Dade County. [ECF No. 6], Am. Compl. at ¶ 15; [ECF No. 110], H. Goldstraj Answer at ¶ 15. Dr. Goldstraj was the medical director at HW from July 3, 2007 until June 19, 2013 ('the "Goldstraj Period"). Dr. Goldstraj pled guilty to insurance fraud related to his role as medical director at another health care clinic on May 19, 2014. *See* [ECF No.182-1], Goldstraj Guilty Plea. Lazaro Muse hired Dr. Goldstraj to work at HW. *See* [ECF No. 159], H. Goldstraj Dep. at 79:17-20.

5. Manuel Franco is a Florida citizen, residing in Miami-Dade County. *See* [ECF No. 6], Am. Compl. at ¶ 16; [ECF No. 73], Franco Default. Dr. Franco is currently the medical director at HW and has been since June 2013 to the present (the "Franco Period"). *See* [ECF No.182-2], June 24, 2013 HW Licensure Application to the Agency for Health Care Administration ("AHCA"); [ECF No. 168], M. Franco Dep. Vol. I at 80: 19-25.

6. Medical Wellness Services, Inc. ("MW") is an active Florida corporation with its principal place of business in Miami-Dade County. *See* [ECF No.182-3], N. Santos Answer to Interrogatory No. 3. MW was formed in June 2009 and operated until October 2017. *See* [ECF No.182-4], MW Articles of Incorporation; [ECF No. 171], N. Santos Dep. Vol. I at 154:24-155:2. MW was a licensed health care clinic that treated patients pursuant to their automobile insurance. *See* [ECF No. 171], Vol. I at 71:17-72:3.

7. Noel Santos is a citizen of Florida, residing in Miami-Dade County. *See Id*. at 11:18-20. Mr. Santos was the owner of MW during its operation from 2009 until 2017. *Id*. at 154:24-155:2. Mr. Santos is a licensed massage therapist. *Id*. at 18:2-5.

8. Angel Carrasco is a citizen of Florida, residing in Miami-Dade County. *See* [ECF No. 6], Am. Compl. at ¶ 19; [ECF No. 73], Carrasco Default. Dr. Carrasco was the medical director at MW from August 14, 2009 to September 2, 2013 (the "Carrasco Period"). *See* [ECF No. 179], Carrasco Aff. at ¶ 8.

9. Dr. Coll was the medical director at MW from September 2013 until the beginning of 2017 (the "Coll Period"). *See* [ECF No. 178], Coll Aff. at ¶ 8. Dr. Coll is no longer a party to this litigation by virtue of this Court entering a stipulation of dismissal following Dr. Coll's settlement with the State Farm Plaintiffs. *See* [ECF No. 142], Or. of Dismissal as to Jorge Coll Only.

10. Pain Relief Clinic of Homestead, Corp. ("PR") is an active Florida corporation with its principal place of business in Miami, Florida. *See* [ECF No. 162], PR Corp. Rep. Dep. at 22:1-7; Ex. [ECF No.182-5], October 24, 2014 PR Amendment to Articles of Incorporation. PR was formed in 2010. *See* Ex. [ECF No.182-6], PR Articles of Incorporation. PR is a licensed health care clinic that treats patients pursuant to their No-Fault insurance. *See* [ECF No. 162], 138:10-12.

11. Jesus Lorites is a Florida citizen, residing in Miami-Dade County. *See* [ECF No. 33], Miami-Dade County Property Appraiser records for J. Lorites. Dr. Lorites was the medical director at PR from June 15, 2010 until April 1, 2013 (the "Lorites Period"). *See* [ECF No.182-7], Composite Answers & Amended Answers to Interrogatories.

12. Jose Gomez-Cortes is a Florida citizen, residing in Miami-Dade County. *See* [ECF No. 6], Am. Compl. at ¶ 23; [ECF No. 146], Gomez-Cortes Default. Dr. Gomez-Cortes is the current medical director at PR and has held that position since April 1, 2013 (the "Gomez-Cortes Period"). *Id.*

II. **THE MUSE FAMILY ORCHESTRATED THIS SCHEME IN ORDER TO PROFIT FROM UNLAWFULLY OBTAINED INSURANCE BENEFITS**
   1. **Lazaro Muse Learned the "Clinic Business"**

13. Lazaro Muse formed Muse Medical Center, Inc. ("Muse Medical"), a health care clinic, in 2001, with no medical background or experience. *See* [ECF No. 163], Vol. I at 20:7-23:

3

25; *see also* [ECF No.182-8], Articles of Incorporation.  Mr. Muse operated Muse Medical, which provided treatment to patients who were injured in automobile accidents.  *Id*. at 39:3-5.

14. Shortly thereafter, he formed MARR Building Company ("MARR Building") with three other individuals: Danny Rivero, Noel Ruiz, and Alfonso Alvarez.  *See* [ECF No.182-9], MARR Building Articles of Incorporation.

15. MARR Building purchased a commercial office building located at 2128 W. Flagler Street in Miami, Florida ("2128 W. Flagler").  *See* [ECF No. 163], at 70:24-71:11.  Many health care clinics treating automobile accident patients maintained their principal places of business at 2128 W. Flagler.  *See* [ECF No.182-10], Articles of Incorporation of Clinics located at 2128.

16. While Mr. Muse was a co-owner of 2128 W. Flagler, he became the administrator of Injury Pain Release Center, Inc. ("Injury Pain"), a health care clinic which was a tenant of 2128 W. Flagler that treated patients with PIP insurance.  *See* [ECF No. 163], Vol. I at 93:16-21; 99:11-14; 109:7-12.

### 2. Beatriz Muse and Noel Santos Join Lazaro Muse in the Clinic Business

17. As the administrator of Injury Pain, Mr. Muse then hired his sister, Ms. Muse, to work as the receptionist there.  *See* [ECF No. 163], Vol. II at 143:11-144:5.  Mr. Muse trained Ms. Muse on her job duties.  *See Id*. at 144:20-22.

18. Mr. Muse and Ms. Muse worked at Injury Pain until shortly before it closed in 2009.  *Id*. at 145:21-146:18.  Shortly before Injury Pain closed, Mr. Muse gave Ms. Muse $50,000.00 in seed money to start HW in 2007 and rented her a space in his MARR building.  *Id*. at 234:18-23 and Vol I 98: 10-100: 5.  Ms. Muse also used money from an account she shared with Mr. Santos.  *See* [ECF No. 171], Vol. I at 43:6-10.

19. Mr. Muse worked as a consultant at HW, advising on all aspects of the business through his company Advance Total Services, Inc.  *See* [ECF No. 163], Vol. II at 153:8-154:4 and 207: 1-25.  Mr. Muse hired HW medical director, Dr. Goldstraj.  *See* [ECF No. 159] at 79:17-20.

20. Two years later, in 2009, Mr. Santos formed MW using $60,000 in funds from an account shared with Ms. Muse to capitalize the clinic.  *See* [ECF No. 171], Vol. I at 46:13-18.  Ms. Muse provided information to Mr. Santos when he formed MW.  *Id*. at 44:13-45:8.  Mr. Muse also worked as a business consultant for MW and hired Dr. Carrasco.  *See* [ECF No. 163], Vol. II at 153:8-154:4; [ECF No. 179], at ¶ 7.

21. Thereafter, an associate of Mr. Muse from Cuba, Ulises Salgado, formed PR, using Better Life Home Health, a company owned by Mr. Muse as the registered agent. *See* [ECF No.182-6], [ECF No. 163], Vol. I at 84:13-86:8. Mr. Muse served as the business consultant for PR as well. *See* [ECF No. 163], Vol. II at 153:8-154:4.

22. All three Muse Clinics used Anet Perez, an "AHCA Consultant" that Mr. Muse recommended. *See* [ECF No. 163], Vol II at 154: 18-155: 10. Similarly, at various times during their operation, each Muse Clinic used Mr. Muse's accountant. *See* [ECF No. 163] Vol II at 216: 19-217: 5; 2009, 2010, 2011 and 2012-2017 MW Tax Returns, and 2014, 2015 and 2016 HW Tax Returns; [ECF No. 161] Vol I 71: 10-73: 6.

### 3. The Muse Family Expands Into Billing and Massage Therapy Schools

23. In 2010, Ms. Muse formed Confidence Billing & Collections, Inc. ("Confidence Billing"). *See* [ECF No.182-11], Confidence Billing Articles of Incorporation. Mr. Muse's company, Better Life Home Health was the registered agent for Confidence Billing. *Id.*; [ECF No. 163], Vol. I at 84:13-86:8.

24. Confidence Billing performed billing services at HW and MW. *See* [ECF No. 161], Vol. II at 186:9-12.

25. Ms. Muse formed Healing Hands Institute ("Healing Hands") in 2010. *See* [ECF No.182-12], Healing Hands Articles of Incorporation; [ECF No.161] Vol. II at 252:7-11. Lazaro Muse is a co-owner of Healing Hands and serves as the "outside administrator". *Id.* at 252:6-15; 255:17-24; [ECF No. 163], Vol. II at 140:1-7. Healing Hands purportedly provides training to individuals seeking to become licensed massage therapists. *See* [ECF No. 161], Vol. II at 249:20-24. Healing Hands provides job placement services to its students. *Id.* at 256:13-25. Several licensed massage therapists employed by the Muse Clinics were placed there by Healing Hands. *See* [ECF No. 161], Vol. II at 257:1-258:2.

26. Pain Relief owner, Daniel Collazo, testified that he even used Healing Hands to renew the department of health licenses for his LMTs and that he was advised to do so by Mr. Muse. *See* [ECF No. 162], at 159: 1-5.

### 4. The Muse Family Profits from the Muse Clinics

27. Mr. Muse owns several companies including: Advance Total Services, Inc. ("Advance Total"), Fresh Water Aquaculture, Inc. ("Fresh Water"), and Better Life Home Health

("Better Life").  *See* [ECF No.182-13-15], Articles of Incorporation of Advanced Total, Fresh Water, and Better Life.

28.  During the Relevant Time Period, Advance Total received $99,540.00 from HW; $201,337.67 from MW; and $203,381.46 from PR.  *See* [ECF No.182-16], Checks to Advance Total.  Fresh Water received $500.00 from HW during its operations.  It received $21,966.90 from MW during its operation.  *See* [ECF No.182-17], Fresh Water Checks.  Better Life received $3,300 from MW during its operation.  *See* [ECF No.182-18], Better Life Checks.

29.  PR's operating account makes car payments of over $1,000 per month for Mr. Muse's Porsche.  *See* [ECF No. 163], Vol. II at 271: 4-9; [ECF No. 162] PR Dep. at 180:19 – 181:9 and Ex. 17.

30.  Ms. Muse owns several companies including: Confidence Billing & Collection Services, Inc.[1] ("Confidence Billing"); Florida Society of Phlebotomy Technicians ("Florida Society"); and Healing Hands Institute, Inc.[2] ("Healing Hands").  *See* [ECF No.182-11, 12 & 22], Articles of Incorporation of Confidence Billing, Florida Society, and Healing Hands;[ECF No. 161] Vol. II at 258:9-12;

31.  Confidence Billing received $136,025.13 from HW and $189,010.06 from MW during its operation.  *See* [ECF No.182-19], Confidence Billing Checks.

32.  Healing Hands received $14,328.40 from HW; $26,880.00 from MW and $6,611.20 from PR.  *See* [ECF No.182-20], Healing Hands Checks.

33.  Ms. Muse received $8,000.00 from HW directly, a portion of which was paid to her after she sold her interest.  Ms. Muse received $23,307.85 directly from MW.  *See* [ECF No.182-21], Checks to Beatriz Muse.

34.  Florida Society received $10,498.30 from HW during its operation.  *See* [ECF No.182-22], Florida Society Articles of Incorporation; [ECF No.182-38], Checks to Florida Society.

35.  Mr. Santos received $171,162.98 from MW during its operation.  *See* [ECF No.182-23], Checks to Noel Santos.

**III.   THE MUSE CLINICS' UNLAWFUL CONDUCT**

---

[1] Ms. Muse owns Confidence Billing jointly with Mr. Muse.
[2] Ms. Muse owns Healing Hands jointly with Mr. Muse.

6

### A. LICENSED MASSAGE THERAPISTS AT THE MUSE CLINICS RENDERED TREATMENT OUTSIDE THE SCOPE OF THEIR LICENSE

36. The Muse Clinics submitted medical records reflecting that mechanical traction, gait training, neuromuscular re-education, and therapeutic exercises were performed there. *See* [ECF No. 181], State Farm Aff. at ¶ 11.

37. The Muse Clinics did not employ any health care practitioners other than licensed massage therapists to perform modalities there. *See* [ECF No.182-24], Excerpts of H&W AHCA; Muse Clinics' Respective Answers to Interrogatory No. 1.

### B. THE MUSE CLINICS RENDERED THERAPY NOT AUTHORIZED BY VALID PRESCRIPTIONS

38. Prescriptions for therapy issued by the Muse Clinics were not followed. *See* [ECF No. 181], State Farm Aff. at ¶ 12. In some instances, this resulted in patients receiving treatment that was not prescribed. *Id*.

39. Defendants medical expert opined that these clinics engaged in a practice of rendering therapy not authorized by the prescription. *See* [ECF No. 180], N. Suite Dep. at Vol II at 264: 5-19.[3]

### C. THE MUSE CLINICS SYSTEMICALLY VIOLATED FLORIDA RECORD KEEPING LAWS
#### 1. Medical Wellness

40. Neither of the MW medical directors were familiar with the statutory recordkeeping requirements they were obligated to satisfy. *See* [ECF No. 178] at ¶ 13(d); [ECF No. 179], at ¶ 11(e).

41. Dr. Coll never received nor reviewed MW's policies. *See* [ECF No. 178] at ¶ 11. Dr. Carrasco admitted that the MW' initial evaluation forms fail to utilize the 1-10 pain scale to document subjective pain complaints and thus do not meet the standard of care. *See* [ECF No. 179], at ¶ 12 (e). Additionally, Dr. Coll noted that these same forms failed to allow a provider to identify the specific areas of the patient's pain and would not meet the standard of care. [ECF No. 178] at ¶ 14(d).

42. MW does not have copies of patient files for the five years prior to its closing. *See* Req. for Production to MW No. 1 & Response.

---

[3] This transcript does not include exhibits which are patient records because they are not relevant, contain extensive confidential information, and are voluminous.

43. Mr. Muse served as a "business consultant" to MW. In this role, Mr. Muse admitted to reviewing patients' medical records who were allegedly treated at MW without a legally required business associate agreement. [ECF No. 163], Vol II at 306: 11-24.

44. The MW medical records do not justify the course of treatment prescribed to each patient. *See* [ECF No. 178] at ¶ 14(f)-(l); [ECF No. 179], at ¶ 12(h) - (n).

45. X-ray results were not documented as being utilized in the patients' treatment. *See* [ECF No. 181], at 13.

46. Patients' treatment plans at MW did not include the amount of time or units a particular modality was to be performed. *Id*. at 14.

### 2. Pain Relief

47. No policies exist at PR reflecting recordkeeping standards for the clinic. *See* [ECF No.182-26], PR Response to Req. for Prod. No. 4.

48. Mr. Muse also served as the consultant for PR. In this role, Mr. Muse admitted to reviewing patients' medical records who were allegedly treated at PR without a legally required business associate agreement. [ECF No. 163], Vol II at 306: 11-24.

49. X-ray results were not documented as being utilized in the patients' treatment. *See* [ECF No. 181] at 13.

50. Patients' treatment plans at PR did not include the amount of time or units a particular modality should be performed. *Id*. at 14.

### 3. Health & Wellness

51. Neither Dr. Franco nor Dr. Goldstraj were familiar with the statutes governing recordkeeping that applied to HW. *See* [ECF No. 168], Vol. II at 120:19-21; [ECF No. 159], Vol. I. at 93: 16-18.

52. Dr. Franco admitted he does not know whether HW maintains patient records for the last five years. *See* [ECF No. 168], Vol. II at 221:17-222:7.

53. Both Drs. Franco and Goldstraj admitted they cannot read some of the HW medical records. *Id*. at 342:12-343:9; [ECF No. 159], Vol II at 180: 14-16.

54. Mr. Muse, HW's business consultant, admitted to reviewing patients' medical records to allegedly ensure they were receiving the proper treatment without a legally required business associate agreement. [ECF No. 163], Vol II at 306: 11-24.

55. HW medical directors, Goldstraj and Franco, testified they have never seen, nor were they ever consulted, regarding any policies or procedures related to record keeping at the clinic. [ECF No. 159], Vol I 65: 23-66: 6; [ECF No. 168], Vol II 217: 9-19; Vol II 220: 23-25; and Vol II 224: 4-11.

56. Dr. Franco's predecessor, Dr. Goldstraj, confirmed he was completely unaware of the record keeping requirements that governed his duties while serving as the medical director of HW. [ECF No. 159], Vol I at 93: 16-18.

57. X-ray results were not documented as being utilized in the patients' treatment. *See* [ECF No. 181] at 13.

D. **THE MUSE CLINICS FAILED TO COLLECT CO-PAYMENTS & DEDUCTIBLES**

   1. **Health & Wellness**

58. HW does not accept payments of *any* kind from patients directly. *See* [ECF No. 177], at 52:18-20.

59. HW has no means of collecting co-payments or deductibles from patients because the clinic does not have a device to accept cash, check or credit card payments. *Id*. at 52:15-23; *see* [ECF No. 160], A. Campa Dep. at 134:6-17; [ECF No. 168], Vol. I at 184:16-185:6.

60. The medical directors at HW never saw any patient pay a co-payment or deductible at HW. *See* [ECF No. 159], Vol. I at 100:10-101:4; *see* [ECF No. 168], Vol. I at 183:21-184:6.

61. No policies exist instructing staff at HW on how to collect co-payments or deductibles. *See* [ECF No. 159], Vol. I at 65:23-66:1; [ECF No. 168], Vol. I at 185:7-11; [ECF No. 160], at 164:16-165:9. HW made no effort to collect co-payments or deductibles from its patients. *See* [ECF No. 163], Vol. II at 152:15-154:4; 299:17-300:14.

62. HW never sent any patient a bill of any kind nor did HW ever provide a bill to patients in any form. *See* [ECF No. 177], at 53:5-11; [ECF No. 161], Vol I at 99:25-100:8. HW's patients were only informed of the cost of their treatment if they asked for that information. *See* [ECF No. 161], Vol I at 98:4-20.

   2. **Medical Wellness**

63. The medical directors at MW never saw any patient pay a co-payment or deductible at MW. *See* [ECF No. 178] at 13(f); *see* [ECF No. 179], at 11(g).

64. MW did not produce any document reflecting co-payments or deductibles which were collected from its patients. *See* [ECF No. 171], Vol. II at 49:16-51:8.

65. No policies exist instructing staff at MW on how to collect co-payments or deductibles. *See* Req. for Production to MW Nos. 2-3 & Responses.

66. MW made no effort to collect co-payments or deductibles from its patients. *See* [ECF No. 163], Vol. II at 152:15-154:4; 299:17-300:14. MW never sent a bill to a patient. *See* [ECF No. 171], Vol II at 46: 2-5. The only way a patient could possibly know the amount of the co-payment was by the front desk showing the patient a total of the charges, which is not maintained in any patient files produced, and calculating the patient responsibility. *See* [ECF No. 171], *Id*. at 9-15.

67. MW' owner, Noel Santos, could not tell the difference between a co-payment and a deductible. *See* [ECF No. 171], Vol II at 42: 8-16. He believes the twenty percent owed by patients to MW was a deductible, not a co-payment. *See* [ECF No. 171], *Id*. at 42: 17-18.

### 3. **Pain Relief**

68. PR did not collect co-payments. *See* [ECF No. 162], at 92:1-9; [ECF No. 160], at 79:7-83:2.

69. PR does not have a ledger or any other documents which reflect that any payments were collected from patients of any kind. *See* [ECF No.182-26], Req. for Production to PR Nos. 14, 51, & 52 & Responses.

70. No policies exist instructing staff at PR on how to collect co-payments or deductibles. *See* Req. for Production to PR Nos. 2-4 & Responses, [ECF No. 160], at 77:17-78:5.

71. PR made no effort to collect co-payments or deductibles from its patients. *See* [ECF No. 163], Vol. II at 152:15-154:4; 299:17-300:14; *see also* [ECF No. 160], at 82:3-8.

### IV. SUBMISSION OF BILLING

72. CMS 1500 Forms were submitted by the Defendants to the State Farm Plaintiffs to obtain payment of their insureds' benefits. *See* [ECF No. 181] at ¶ 5.

73. Defendants submitted these forms continuously during the following timeframes: HW: 2007-present; MW: 2009-2017; and PR: 2010-present. *Id*.

74. The State Farm Plaintiffs relied upon these CMS 1500 Forms and issued payment to the Defendants. *See* [ECF No. 181] at ¶ 7.

75. As a result, the State Farm Plaintiffs were not aware of the Defendants' scheme until approximately July 31, 2018. *See* [ECF No.182-27], State Farm Mut. Answers to Dr. Coll's First Set of Interrogatories, No. 4.

V. **AMOUNTS PAID**

   A. **Health & Wellness**

   76.   As a result of the Defendants' scheme, State Farm Fire paid $315,902.55 to HW and State Farm Mutual paid a total of $1,264,511.60.  *See* [ECF No. 181] at ¶ 8.  During the Goldstraj Period, State Farm Mutual paid $1,070.337.35 to HW. *Id* at 8(a).  State Farm Fire paid HW $306,958.92 during that same period. *Id*. During the Franco Period, State Farm Mutual paid $194,174.25 to HW. *Id*. at 8(b).  State Farm Fire paid HW $8,943.61 during that same period. *Id*. A portion of the amount paid to HW by the State Farm Plaintiffs was then paid to Ms. Muse, Mr. Muse, Hugo Goldstraj, and Manuel Franco.  *See* [ECF No.182-28], 2007-2017 HW Tax Returns; [ECF No. 159], Vol. I at 79:24-80: 2; [ECF No. 168], Vol I at 80: 11-17.

   B. **Medical Wellness**

   77.   As a result of the Defendants' scheme, State Farm Fire paid $156,317.64 to MW. *See* [ECF No. 181] at ¶ 9.  State Farm Mutual paid a total of $865,754.42 to MW.  *Id*.  During the Carrasco Period, State Farm Mutual paid $647,730.35 to MW. *Id*. at 9(a).  State Farm Fire paid MW $156,317.64 during that same period.  *Id*. at 9(a). During the Coll Period, State Farm Mutual paid $221,302.66 to MW. *Id*. at 9(b). A portion of the amount paid to MW by the State Farm Plaintiffs was then paid to Ms. Muse, Noel Santos, Mr. Muse, Angel Carrasco, and Jorge Coll. *See* [ECF No.182-29], 2009-2017 MW Tax Returns; [ECF No. 179], at ¶ 7; [ECF No. 178] at ¶ 7.

   C. **Pain Relief**

   78.   As a result of the Defendants' scheme, State Farm Fire paid $226,084.25 to PR. *See* [ECF No. 181] at ¶ 10.  State Farm Mutual paid $94,482.69 to PR.  *Id*. During the Lorites Period, State Farm Mutual paid $145,326.15 to PR and State Farm Fire paid $94,482.69 to PR.  *Id*. at 10(a).  During the Gomez-Cortes Period, State Farm Mutual paid $80,758.10 to PR. *Id*. at 10(b). A portion of the amount paid to PR by the State Farm Plaintiffs was then paid to Mr. Muse, Jesus Lorites, and Jose Gomez-Cortes.  *See* [ECF No.182-30], 2014-2018 PR Tax Returns; [ECF No.182-31], 2012-2017 L. Muse Returns; [ECF No.182-32], Checks to Lorites; [ECF No. 6], Am. Compl. at ¶ 271 & 293-94; [ECF No. 146], Gomez-Cortes Default.

Dated:  October 30, 2019

Respectfully submitted,

*/s/ David I. Spector*
David I. Spector (Florida Bar No. 086540)
E-mail: david.spector@hklaw.com
Caitlin Saladrigas (Florida Bar No. 095728)
E-mail: caitlin.saladrigas@hklaw.com
**HOLLAND & KNIGHT LLP**
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL 33401
Telephone:  (561) 833-2000
Facsimile:   (561) 650-8399
*Attorneys for State Farm Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540

**SERVICE LIST**

| | |
|---|---|
| Christian Carrazana, Esq.<br>**CHRISTIAN CARRAZANA, P.A.**<br>P.O. Box 900520<br>Homestead, FL 33030<br>Telephone: (786) 226-8205<br>Email: christian@carrazana-legal.com<br>*Attorney for Defendant Pain Relief Clinic of Homestead, Corp.*<br>**Served via email**<br><br>Karen B. Parker, Esq.<br>**KAREN B. PARKER, P.A**<br>2550 S. Bayshore Drive, Suite 102<br>Coconut Grove, FL 33133<br>Telephone: (305) 343-8339<br>Email: kparker@kbparkerlaw.com<br>       kbparkerlaw@gmail.com<br>       parkerlawasst@gmail.com<br>*Attorneys for Defendant Jesus Lorites*<br>**Served via email**<br><br>Michael Nicoleau<br>Michael D. Nicoleau, P.A.<br>11900 BISCAYNE Boulevard, Suite 770<br>North Miami, FL 33181-2737<br>Telephone: (305) 438-7883<br>Email: michael@nicoleaulaw.com<br>*Attorneys for Defendant Hugo Goldstraj*<br>**Served via email** | Richard J. Diaz, Esq.<br>Attorney at Law<br>3127 Ponce De Leon Boulevard<br>Coral Gables, FL 33134<br>Telephone: (305) 444-7181<br>Facsimile: (305) 444-8178<br>Email: rick@rjdpa.com<br>*Attorneys for Defendants Medical Wellness Services, Inc., Beatriz Muse, Lazaro Muse, and Noel Santos*<br>**Served via email**<br><br>Louis V. Martinez, Esq.<br>**LOUIS V. MARTINEZ, P.A.**<br>2333 Brickell Avenue,<br>Suite A-1,<br>Miami, FL 33129<br>Telephone: (305) 764-3834<br>Email: louisvmartinez14@gmail.com<br>*Attorneys for Defendant Health & Wellness Services Inc.*<br>**Served via email**<br><br>Jose Gomez-Cortes, MD<br>1840 West 49th Street, Suite 305<br>Hialeah, FL 33012<br><br>     - AND -<br><br>3400 SW 130th Avenue<br>Miami, FL 33175<br>*In Pro Se*<br>**Served via U.S. Mail** |

#71225745_v10