## AFFIDAVIT OF DR. JOSE GOMEZ CORTES M.D.

1. I, JOSE GOMEZ CORTES M.D., am over 18 years of age and I have personal knowledge of the facts stated herein.

2. At all times material hereto, I am the licensed medical physician in the State Florida.

3. I am currently the treating physician and medical director at Pain Relief Clinic of Homestead Corp. ("Pain Relief"). I have been employed with Pain Relief since 2013.

4. I have had an opportunity to review a small group of patient charts that are maintained by Pain Relief. The charts in question are State Farm insureds that I treated in 2014 and 2015.

**I.  Medical Necessity**

5. In each case, I personally evaluated each State Farm patient at Pain Relief. On each occasion, the patients reported that they suffered injuries as a consequence of an automobile accident.

6. Based on the physical evaluation that I performed, I determined that the patients suffered sprain strains to the cervical, thoracic and lumbar spine regions. In some cases, I also diagnosed a sprain strain in the upper and lower extremities.

7. A sprain is where one or more ligaments are stretched or torn. A strain, in contrast, is an injury to a muscle or tendon (a tendon is a tissue that connects muscle to bone). In a strain, a muscle or tendon is stretched or torn.

8. In my professional experience, the symptoms of a sprain include: pain, swelling, bruising, and not being able to use the joint. Similarly, the symptoms of a strain

include: muscle spasms, swelling, cramping, and trouble moving or a limited range of motion.

9. The diagnosis of a sprain and strain in these cases are neither fabricated nor predetermined, but instead supported by the fact that I found the aforementioned symptoms, which are indicative of a sprain-strain.

10. The fact that the patients all suffered similar injuries, e.g., sprain/strains, is not necessarily unusual or out of the realm of possibility. In my professional experience, sprains/strains are caused by whiplash which is a common occurrence in automobile accidents. Whiplash is a soft tissue neck injury that will often occur in motor vehicle accidents when the victim's head is suddenly jolted backward and forwards. Low back pain is also quite common after whiplash and may be caused by injury to the discs, facet joints of the low back or sacroiliac joints.

11. As for the treatment plan that I prescribed for the State Farm patients in this case, the plan included but was not limited to the following passive physical therapy modalities: (a) hot/cold packs; (b) infrared; (c) electric stimulation; (d) therapeutic exercises; (e) neuro muscular re-education; (f) vital wrap; (g) manual/massage therapy; (h) mechanical traction, etc. These modalities are effective in reducing pain and joint swelling, reducing muscle spasm, restoring functional joint mobility, increasing local blood flow to the injured soft tissues.

12. Neither my diagnosis nor the treatment plan that I prescribed was neither predetermined nor fraudulent. I accurately reported both (a) my clinical findings and (b) what the patient told me during the examinations. In other words, I did not see one thing but reported something else instead.

13. Although the patients were given substantially the same treatment plan that included the aforementioned modalities in ¶ 11 of this affidavit, that is not unusual or uncommon. The prescribed modalities are the standard of care for soft tissue injuries associated with whiplash injuries in auto accident cases.

14. In addition, the therapist did not deviate from the treatment plan that I prescribed. In other words, the treatment records do not reflect that the therapist performed a therapy modality that was not prescribed.

17. In my professional opinion, the therapy that I prescribed for each of the State Farm patients at Pain Relief was medically necessary and related to the reported auto accident in each case. I would not have prescribed the therapy if in my clinic judgment, the therapy is unnecessary or my findings did not justify the treatment.

18. In the lawsuit against Pain Relief, State Farm alleges that the treatment plan is pre-determined because the course of therapy was systematically performed in three cycles. Doc. 6, ¶¶ 174-193. I do not agree that this supports the inference that the treatment plan is predetermined. The three cycles referenced in State Farm's complaint is consistent with the three phases of healing in soft tissue injury cases. The first phase is termed as "acute" from the initial time of injury and while the pain, bleeding and swelling is at its worst. This time frame for this phase is usually lasts two to four days post-injury, but it can vary. The second phase is the "sub-acute" phase. A soft tissue injury is termed as sub-acute when the initial acute phase makes a transition to repairing the injured tissues. This phase commonly lasts up to six weeks post-injury at which time, the laying down new soft tissue and reducing the need to protect the injury as the new scar tissue begins to mature and strengthen. The third phase is the "remodeling" phase, which is

between six weeks and three months post-injury. During this phase, the healing tissue is reasonably mature but as you stretch, strength and stress the new scar tissue, it often finds that it is not strong enough to cope. When the body detects that a repaired structure is still weaker that necessary, it will automatically stimulate additional new tissue to help strengthen and support the healing tissue until it meets the demands of normal exercise or physical function.

19. The State Farm patients that I examined Paint Relief treated for about an average of 8 to 12 weeks. This frequency is within the norm given the time associated with the acute, sub-acute and late stage phase of healing.

## II. Medical Director Duties

20. In addition to my role as the treating physician, I also performed my duties as medical director at Pain Relief. In my capacity as medical director, I served as the clinic records owner and I ensured that the records were properly maintained at Pain Relief. As part of my duties, I ensured that the patient medical records are not to be disclosed to third parties. Although the policy is not written, I implemented a policy in which I instructed the employees at Pain Relief that patient medical records cannot be disclosed to unauthorized third parties unless there is a proper request by a patient's attorney. To the best of my knowledge, Pain Relief did not deviate from this policy.

21. On a monthly basis, I also performed systematic reviews of random patient charts maintained at Pain Relief to ensure there is no unlawful or fraudulent billing. There was no occasion where I discovered billing for services that were not rendered (i.e., fraud) at Pain Relief; nor did I discover that Pain Relief billed for services that were unlawful which would otherwise require corrective action. The fact that the

therapy modalities, such as those at issue in this case, were performed by licensed massage therapists at Pain Relief did not require corrective action in my capacity as medical director. The modalities or "physical agents" were applied incidental to massage and are within the common practice of massage therapists. Thus, the therapists employed at Pain Relief were adequately licensed to perform the treatment modalities in question.

22. With respect to the random patients files that I reviewed as part of my systematic reviews as medical director, I did not find that the treatment records did not substantially meet the record keeping requirements in Fla. Admin Code R. 64B8-9.003(3). The records substantially complied with the rule where: (a) the records identified the patient; (c) it contained sufficient information to support or justify the diagnosis and treatment plan; (c) the records contained the results of the patient evaluations.

23. It is my understanding, however, that State Farm asserts that the State Farm patient files in the present matter did not meet the requirements of Rule 64B8-9.003(3) because X-ray results were not documented, and that the treatment plans did not include the amount of time or units a particular modality should be performed. I disagree that the alleged deficiencies constitute a failure to comply with the rule. In fact, the records substantially meet what the rule requires; the treatment records identity the patient; it contains sufficient information to support or justify the diagnosis and treatment plan; it also contains the results of the patient evaluations.

**I, the undersigned affiant, understand that I am swearing or affirming under oath the truthfulness of the statements in this affidavit and that punishment for knowingly making a false statement includes fines or imprisonment.**

**FURTHER AFFIANT SAYETH NAUGHT:**

_____
DR. JOSE GÓMEZ CORTES M.D.

**SWORN & SUBSCRIBED** before me this 13th day of November, 20 19,
Personally Known ✓ or Produced Identification ____
Type of I.D. Produced _____.

_____
NOTARY PUBLIC - STATE OF FLORIDA
My commission expires:



Notary Public State of Florida
Christopher F Falck
My Commission GG 321335
Expires 04/08/2023

- 6 -