UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-CV-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE and CASUALTY COMPANY,

Plaintiffs,

v.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE, HUGO
GOLDSTRAJ, MANUEL FRANCO, MEDICAL
WELLNESS SERVICES, INC., NOEL SANTOS,
ANGEL CARRASCO, PAIN RELIEF CLINIC OF
HOMESTEAD, CORP., JESUS LORITES, AND
JOSE GOMEZ-CORTES,

Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT JESUS LORITES' MEMORANDUM OF
LAW IN SUPPORT OF HIS NOTICE OF MOTION TO DISQUALIFY COUNSEL**

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively the "State Farm Plaintiffs"), hereby file this Response in opposition to "Defendant Jesus Lorites' Memorandum of Law in Support of His Notice of Motion to Disqualify Counsel" (the "Motion") [ECF No. 166] and in support state:

**I.   INTRODUCTION**

Dr. Lorites' Motion—filed fourteen (14) months after he became aware of the purported conflict—was filed with one purpose: an attempt to leverage pressure after dispositive motions were filed and a few weeks before Court ordered mediation. Not only does Dr. Lorites assert the application of the wrong Rule of Professional Conduct (4-1.9), but the application of the correct Rule (4-1.10) establishes that disqualification is neither available nor appropriate. The disqualification of a party's chosen counsel is a drastic remedy. It is intended as a shield to protect a party from having its prior counsel use attorney-client confidences against it—something that

has not happened here.  Disqualification is *not* intended to be used as a sword in order to gain some strategic advantage in litigation.

Notably, Dr. Lorites has not offered any evidence that confidential, privileged information has been exchanged or compromised in any way.  As demonstrated by David Spector's ("Mr. Spector") Affidavit, Mr. Spector: (a) never worked with Everett Wilson ("Wilson") on any engagements while associated with Akerman LLP ("Akerman"); (b) never acquired knowledge of any material confidential information derived from Wilson's representation of Dr. Lorites; and (c) did not know that Dr. Lorites was a former client of Akerman until Dr. Lorites disclosed this information at his July 18, 2019 deposition, at which time Mr. Spector was no longer associated with Akerman.

Dr. Lorites' Motion should be denied for two independent reasons:

- Dr. Lorites discovered the facts which lead to the motion—that Akerman and Mr. Spector represented the State Farm Plaintiffs—in ***August 2018*** at the inception of this lawsuit when he was served with process, yet failed to file a motion to disqualify until over a year later.  Florida law is clear that a party waives a conflict if not timely raised.

- Dr. Lorites failed to establish  Holland & Knight LLP ("H&K") violated any Rules of Professional Conduct. Under Florida Rule of Professional Conduct 4-1.10, which governs this issue, the moving party is required to establish that confidential information was obtained.  Dr. Lorites failed to establish a prima facie case for disqualification, nor can he, because H&K and Mr. Spector never acquired confidential information pertaining to Dr. Lorites.

## II.    BACKGROUND

According to Dr. Lorites, on July 14, 2011, Dr. Lorites retained the services of Wilson, who at the time was associated with Akerman,[1] for the limited purpose of having Wilson review a "primary care physician agreement with Wellmax Medical Center of Allapattah, LLC ("Wellmax")".  *See* [ECF No. 166], Dr. Lorites' Motion at Ex. A.  Undisputedly, Wellmax has no connection to this lawsuit and is apparently a separate medical clinic where Dr. Lorites began working in June 2009, a year before he became employed at the clinic which is the subject of this litigation.  Contrary to the limited scope of the Akerman engagement, Dr. Lorites vaguely asserts he "also sought the advice of Everett Wilson in regards to [his] obligations and responsibilities as

---

[1]  Prior to 2013, Akerman LLP was known as Akerman Senterfitt LLP.

#71474366_v1

medical director for the various clinics for which [he] was affiliated."[2]  *See Id.* at Ex. B, ¶ 6. However, Dr. Lorites' fails to address the necessary information such as when Dr. Lorites met and/or communicated with Wilson, the scope of Wilson's advice, and/or whether the advice specifically pertained to Dr. Lorites' role as the medical director at Defendant Pain Relief Clinic of Homestead.  *See Id.* at Ex. A.

The initial retainer for Wilson's engagement was $2,500, and Dr. Lorites has failed to offer any evidence he paid any additional sums to Akerman for Mr. Wilson's services.  *See Id.* at Exs. A and B.  It is undisputed Mr. Spector was not involved in any way in the work Wilson was engaged to perform for Dr. Lorites—regardless of scope—and that Mr. Spector did not acquire any knowledge of any material confidential information that was derived from Wilson's representation of Dr. Lorites.  *Compare* **Exhibit A**, D. Spector Aff. at ¶¶ 5, 8-17 *with* [ECF No. 166], Dr. Lorites' Motion at Ex. B.

On August 1, 2018, more than seven years after Dr. Lorites engaged Wilson, the State Farm Plaintiffs filed this suit.  *See* [ECF No. 1], Complaint.  Dr. Lorites was served with the Complaint in this case on August 7, 2018.  *See* [ECF No. 11], Return of Service for Dr. Lorites.  As result, from that date forward, Dr. Lorites was aware of the purported conflict.  Giving Dr. Lorites the benefit of the doubt that he did not read those portions of the Complaint, Dr. Lorites "brought the complaint filed by State Farm" to Wilson at Akerman who "read the complaint and then [physically] handed it back" to Dr. Lorites.  *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 12 & 13).  Importantly, Wilson then advised Dr. Lorites of the conflict and stated, **"I can't help you with this."** *Id. (emphasis added).*  Dr. Lorites testified the reason he was told this by Wilson was "because it was a conflict of interest." [ECF No. 164], Dr. Lorites Dep. at 70:4-18.  Shortly thereafter, Dr. Lorites engaged Karen Parker ("Parker"), who filed a Notice of Appearance on August 29, 2018.  *See* [ECF No. 24], Notice of Appearance by Parker.

---

[2]  On November 6, 2019, counsel for the State Farm Plaintiffs requested that Dr. Lorites provide written authorization so the State Farm Plaintiffs could obtain Dr. Lorites' billing records from Akerman, which is needed to analyze the nature of the engagement and properly respond to Dr. Lorites' Motion.  Dr. Lorites' counsel refused.  Accordingly, State Farm issued a subpoena to obtain same from Akerman.  Despite bringing this motion seeking the drastic remedy of disqualification, Dr. Lorites asserted privilege and instructed Akerman's General Counsel to not respond to State Farm's subpoena.  *See* [ECF 190], Dr. Lorites' Objection to Plaintiff's Notice of Intent to Serve Subpoena on Third Party and Motion to Quash Subpoena.  Florida law does not allow such an assertion of privilege where a party has sought disqualification.

Thereafter, while this case was being litigated, both Wilson and Mr. Spector departed Akerman. Mr. Spector joined H&K and Wilson joined Polsinelli PC (Inc). It is undisputed that Dr. Lorites has never been a client of H&K. *See* **Exhibit A**, D. Spector Aff. ¶ 18.

From August 2018 until July 18, 2019, Dr. Lorites kept the information about his prior relationship with Akerman a secret. In fact, from August 2018 to July 18, 2019, Dr. Lorites submitted eight filings in this case—none of which contain even a hint of a purported conflict. Such filings include Dr. Lorites' motion to dismiss, which was denied. In fact, this Court noted "Dr. Lorites' arguments are flawed and, at times, verging on unintelligible in the context of this case." *See* [ECF No. 113], Om. Or. Denying Mot. to Dismiss at p. 5. During the same period, counsel for State Farm coordinated deposition dates for eight (8) deponents with Dr. Lorites' counsel, negotiated the terms of the agreed Protective Order with Dr. Lorites' counsel and Dr. Lorites' counsel requested and obtained copies of documents State Farm obtained during discovery from third parties. Dr. Lorites' counsel then appeared at approximately four depositions in this case. The point is that despite being on express notice a conflict could exist, Dr. Lorites and his counsel fully and actively litigated this case for almost a year without even a whisper of a potential conflict.

Dr. Lorites waited until his July 18, 2019 deposition, more than eleven months after he was served with process and was told by Wilson a conflict of interest existed which precluded Wilson from assisting Dr. Lorites, to disclose he was previously represented by Akerman. *See* [ECF No. 164], Dr. Lorites Dep. at 70:4-18. By this time, Mr. Spector and Wilson had both disassociated with Akerman and were working at separate law firms. When Dr. Lorites' counsel raised the potential conflict after 2-3 hours of deposition testimony and asked that the deposition be postponed, Mr. Spector immediately stated on the record, "What I can tell you is that Mr. Wilson shared nothing. I didn't know about [the purported conflict] until you told me [at the deposition]. *See Id.* at 74:15 - 75:12. The deposition was postponed at the request of Dr. Lorites' counsel.

With the close of discovery rapidly approaching, and after never hearing anything further about the purported conflict, counsel for State Farm contacted Dr. Lorites' counsel by email on August 26, 2019 to obtain availability so the deposition could be concluded. Dr. Lorites' counsel did not respond. The next day, counsel for State Farm attempted to call Dr. Lorites' counsel, only to find that her "mailbox is full." Thus, counsel for the State Farm Plaintiffs emailed once again, but did not receive a response. Approximately a week later, State Farm's counsel *again* tried to

#71474366_v1

contact Dr. Lorites' lawyer and sent an email after counsel could not be reached on the phone. Only then, on September 5, 2019—49 days after the deposition was terminated—did Dr. Lorites' counsel advise she would not make her client available until the issue of the conflict had been resolved. *See* **Exhibit B**, Composite Emails.

There can be no question that Dr. Lorites and his counsel failed to act diligently and swiftly when one or both discovered a purported conflict. On the flip side, State Farm prosecuted this case with the utmost diligence, including the taking of Dr. Lorites' deposition and attempting to get it reset. All the while, it appears, Dr. Lorites and his counsel kept their purported view of a conflict of interest tucked deep within their pockets. The law does not allow this. Further, Dr. Lorites relies on Rule 4-1.9 which does not apply to an attorney, such as Mr. Spector, when the attorney was not involved with the prior representation and has no confidential information pertaining to same. *See RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, No. 3:08CV302-MCR-EMT, 2009 WL 3581637, at *7 (N.D. Fla. Oct. 28, 2009). Rather, if not waived by the 14 month delay, the analysis involves the application of Rule 4-1.10(b) which states a lawyer may not knowingly represent a person in the same or substantially related matter in which the lawyer, or his or her prior firm, had "represented a client whose interests are materially adverse **and about whom the lawyer had acquired information protected by rules 4-1.6 and 4.19(b) and (c) that is material to the matter."** *See* R. Regulating Fla. Bar 4-1.10(b) (emphasis added). Not only did Dr. Lorites fail to analyze the application of Rule 4-1.10 and interpreting case law, but if he had, he would have realized that there is no support for a request for disqualification.

### III. ARGUMENT

#### A. LEGAL STANDARD

It is well established the disqualification of counsel is an extraordinary remedy that should not be granted unless absolutely necessary. *See Woliner v. Sofronsky*, No. 18-CV-80305, 2018 WL 4039311, at *5 (S.D. Fla. Aug. 23, 2018) ("Disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly."); *Platinum Properties Inv'r Network, Inc. v. Sells*, No. 18-61907-CIV, 2019 WL 1670893, at *1 (S.D. Fla. Apr. 17, 2019) ("The disqualification of counsel is an extraordinary measure that acts immediately to the detriment of the client by separating the client from chosen counsel."); *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982) (stating that disqualification of counsel is a harsh remedy and should be employed sparingly). Motions for

disqualifications are viewed with skepticism because they are often asserted for tactical purposes. *See Herrmann v. GutterGuard, Inc.*, 199 F. Appx. 745, 752 (11th Cir. 2006) ("A motion to disqualify brought by opposing counsel should be viewed with caution ... for it can be misused as a technique for harassment."); *Silvers v. Google, Inc.*, 2007 WL 141153, at *1 (S.D. Fla. Jan. 16, 2007) ("When one party seeks to disqualify opposing counsel, courts are skeptical because those motions are sometimes filed for tactical reasons or to harass the other party."); *see also* R. Regulating Fla. Bar 4–1.7 cmt. (warning that an objection raised by opposing counsel "should be viewed with caution ... for it can be misused as a technique of harassment").

"The party bringing the motion to disqualify bears the burden of proving grounds for disqualification." *Woliner v. Sofronsky*, No. 18-CV-80305, 2018 WL 4039311, at *5 (S.D. Fla. Aug. 23, 2018) (*citing Hermann v. GutterGuard, Inc.*, 199 Fed.Appx. 745, 752 (11th Cir. 2006)). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *Id.* (*citing Fenik v. One Water Place*, No. 3:06-cv-514/RV/EMT, 2007 WL 527997, at *4 (N.D. Fla., Feb. 14, 2007)). When a motion to disqualify is based on an alleged ethical violation, the moving party must identify the specific Rule of Professional Conduct that is applicable and demonstrate that the attorney violated the rule. *See Nestlé Health Sci.-Pamlab, Inc. v. Virtus Pharm., LLC*, No. 12-81202-CIV, 2014 WL 12461344, at *3 (S.D. Fla. July 18, 2014), *report and recommendation adopted sub nom. Nestle Health Sci.-Pamlab, Inc. v. Virtus Pharm., LLC*, No. 12-81202-CIV, 2014 WL 12461345 (S.D. Fla. Aug. 4, 2014). However, as the Southern District has recognized, disqualification is not mandatory even if a conflict of interest rule is violated:

> It is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule. *Prudential Ins. Co. of America v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236 (S.D. Fla. 2005); *SWS Financial Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1399 (N.D. Ill. 1992). Disqualification is "a blunt device [that] foists substantial costs upon innocent third parties[,]" including the delay, inconvenience, and expense an innocent client may incur, as well as the deprivation of the innocent client's counsel of choice. *Salomon Bros.*, 790 F. Supp. at 1400. "Given the costs imposed by disqualification and the theoretical availability of alternative means of enforcement of the disciplinary code, a court should look to the purposes of the rule violated in order to determine if disqualification is a desirable sanction." *Id*. at 401. The two basic purposes of Rule 4-1.7 are (1) to protect confidences that a client may have shared with his attorney and (2) to safeguard loyalty as a feature of the attorney-client relationship. *Prudential*, 365 F. Supp. 2d at 1237 (citations omitted).

*Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *1 (S.D. Fla. May 6, 2008).

### B. Dr. Lorites Waived Any Right to Seek to Disqualification and Does So Now Only to Gain a Tactical Advantage.

Dr. Lorites waived any right he may have had to seek disqualification by failing to move with reasonable promptness and employing his Motion as a strategic weapon to disadvantage the State Farm Plaintiffs at this late stage in the proceeding. Dr. Lorites' argument that he did not waive the alleged conflict of interest because he did not expressly consent to the State Farm Plaintiffs' choice of counsel is without merit. Contrary to Dr. Lorites' assertion, waiver may be implicitly found, as is the case here, "where the former client, having every opportunity to do so, fails to object to a new relationship involving its former attorney." *SE Prop. Holdings, LLC v. Phillips*, No. 315CV00554MCREMT, 2016 WL 6246890, at *3 (N.D. Fla. May 24, 2016), *report and recommendation adopted*, No. 3:15CV554/MCR/EMT, 2016 WL 6272373 (N.D. Fla. Oct. 25, 2016) (*quoting Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988)).

The law is well settled a motion to disqualify must be filed "with reasonable promptness after a party discovers the facts which lead to the motion," and the "failure to file a timely motion to disqualify counsel operates as a waiver of the right to object." *Arnett v. Mid-Cont'l Cas. Co.*, No. 8:08-CV-2373-T-27EAJ, 2010 WL 11507481, at *2 (M.D. Fla. Apr. 13, 2010) (*citing Cox v. Amer. Cast Iron Pipe, Inc.*, 847 F.2d 725, 729 (11th Cir. 1988)). Courts are guided by the following factors when determining whether the moving party waived the right to object: (1) the length of the delay in bringing the motion to disqualify, (2) the date that the movant had the opportunity to object, (3) whether the movant was represented by counsel, (4) the reason for the delay, (5) whether disqualification would result prejudice to the non-moving party. *Id.* (*citing In re Jet 1 Ctr., Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004)). As discussed below, all five factors support waiver in this instance.

The first factor in determining whether the moving party waived the right to object is the length of the delay in bringing the motion to disqualify. Here, Dr. Lorites waited until October 30, 2019, more than 14 months after Dr. Lorites was personally served with the Complaint in this action, to file the Motion. By this time, the deadline for discovery had passed and the deadline for dispositive motions was set to expire the same day. Consequently, Dr. Lorites' delay in pursuing the Motion was clearly unreasonable. *See Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008) (filing motion

on the day before the discovery deadline was factor in denial); *Concerned Parents of Jordan Park v. Haus. Auth. of City of St. Petersburg, Fla.*, 934 F. Supp. 406, 408 (M.D. Fla. 1996) (delay of five months after filing suit when movant knew of conflicts months before suit deemed waiver); *Transmark, USA, Inc. v. State Dept. of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (per curiam) (delay of ten months deemed waiver); *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Limitada*, No. 09-23248-CIV, 2010 WL 2926042, at *5 (S.D. Fla. July 23, 2010) (delay of eight months deemed waiver).

  The second factor considered is the date the movant had the opportunity to object.  Dr. Lorites' assertion he did not realize there was a conflict of interest until his July 18, 2019 deposition is untenable and does not withstand even minimal scrutiny.  *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 16.  The evidence clearly establishes Dr. Lorites, a sophisticated medical professional, knew of the facts which led to his Motion—that Akerman represented the State Farm Plaintiffs—at the inception of this lawsuit.  The Complaint, which was personally served on Dr. Lorites on August 7, 2018, identifies Akerman as counsel for the State Farm Plaintiffs.  *See* [ECF No. 1], Complaint; [ECF No. 11], Return of Service for Dr. Lorites.  As the Southern District has recognized, service of a pleading from a client's former counsel imputes knowledge of the conflict.  S*ee, e.g., Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008) (finding that plaintiff knew of conflict when opposing counsel filed an answer on the defendant's behalf).

  Moreover, "immediately" after he was served with the complaint, Dr. Lorites contacted Wilson and scheduled a meeting with Wilson to review the complaint.  *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 12.  According to Dr. Lorites, Wilson declined representation at the meeting and informed Dr. Lorites of a "conflict of interest."  *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 13; [ECF No. 164], Dr. Lorites Dep. at 70:4-18.  One cannot imagine a more clear circumstance that informs a client of a potential conflict then when the lawyer says:  I can't represent you in this lawsuit because of a conflict.  If Dr. Lorites had any doubt regarding whether Wilson and Mr. Spector worked for the same law firm at the time he was served with the Complaint, it was clearly resolved when Wilson specifically told Lorites a conflict existed. Accordingly, Dr. Lorites knew of the facts which led to his Motion and thus, had the opportunity to object to the representation of the State Farm Plaintiffs no later than August 2018.

The third factor—whether the movant was represented by counsel—also supports wavier. Dr. Lorites has been represented by counsel throughout the duration of this action. Karen Parker filed a Notice of Appearance on Dr. Lorites' behalf on August 29, 2018, and Ms. Parker continues to represent Dr. Lorites to this day. *See* [ECF No. 24], Notice of Appearance of Parker. A basic interview of the client would have informed counsel that Dr. Lorites was a former client of Akerman. It was incumbent on counsel to raise any purported conflict at that time to minimize any potential prejudice to all parties. While it has been established that no such confidences were shared, the law requires prompt disclosure of a potential conflict to protect the client. This also avoids the use of disqualification as a tactical weapon to attack a party's selection of counsel. In any event, the third factor supporting waiver exists.

With regard to the fourth factor—the reason for the delay—Dr. Lorites has failed to offer any legitimate reason for the delay in filing this Motion aside from his bald assertion he did not realize there was an alleged conflict of interest until his July 18, 2019 deposition. *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 16. The relevant legal standard is not when Dr. Lorites developed a subjective belief there was a conflict of interest, but rather when Dr. Lorites discovered the facts which led to the Motion. *See Arnett*, 2010 WL 11507481 at *2. As discussed above, Dr. Lorites discovered the facts which led to his Motion—that Akerman represented the State Farm Plaintiffs—on August 7, 2018, when he was personally served with the Complaint or shortly thereafter when Dr. Lorites met with Wilson. *See* [ECF No. 1], Complaint; [ECF No. 11], Return of Service for Dr. Lorites; *see* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶ 13; [ECF No. 164], Dr. Lorites Dep. at 70:4-18. Moreover, Dr. Lorites' stated reason for the delay is directly contradicted by his own deposition testimony, in which he testified under oath that Wilson informed him of the "conflict of interest" in the meeting that occurred immediately after he was served with the Complaint in this action. *See* [ECF No. 164], Dr. Lorites Dep. at 70:4-18. Consequently, Dr. Lorites has failed to offer any legitimate reason for the delay.

The fifth and final factor is whether disqualification would result in prejudice to the non-moving party—also weighs against disqualification. Mr. Spector has represented the State Farm Plaintiffs throughout this litigation. *See* **Exhibit A**, D. Spector Aff. at ¶ 19. As counsel for the State Farm Plaintiffs, Mr. Spector and H&K have litigated dismissal motions, obtained written discovery and production from the Defendants, taken and defended numerous depositions of the litigants, third parties and experts and now filed a dispositive motion for summary judgment. *Id*.

Through those efforts, Mr. Spector and H&K have obtained considerable information on behalf of the State Farm Plaintiffs which will be crucial at this stage of the litigation with mediation, pre-trial motion deadlines, and trial looming in the coming months. *Id.* at ¶ 20. To require the State Farm Plaintiffs to hire new counsel at this stage after more than a year in litigation would expose the State Farm Plaintiffs to undue prejudice. *See*, *e.g.*, *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Limitada*, No. 09-23248-CIV, 2010 WL 2926042, at *5 (S.D. Fla. July 23, 2010) (finding delay of eight months in filing motion to disqualify was prejudicial where the law firm had "defended many complex motions and expended over 1,200 working hours on this case.").

For these reasons, Dr. Lorites waived the right to object to the State Farm Plaintiffs' representation. Consequently, the Court should deny Lorites' Motion.

### C. DR. LORITES FAILS TO ESTABLISH H&K AND MR. SPECTOR'S REPRESENTATION OF THE STATE FARM PLAINTIFFS VIOLATES ANY RULE OF PROFESSIONAL CONDUCT.

The Motion must also be denied because Dr. Lorites fails to establish that H&K and Mr. Spector's current representation of the State Farm Plaintiffs violates any Rules of Professional Conduct. Dr. Lorites' claim that the representation violates Rule of Professional Conduct 4-1.9 ("Rule 4-1.9"), which pertains to conflicts of interests with former clients, is without merit because Rule 4-1.9 has no application to H&K and Mr. Spector in this instance. Rather, as discussed below, the Motion is controlled by Rule of Professional Conduct 4-1.10 ("Rule 4-1.10").

#### i. RULE 4-1.9 HAS NO APPLICATION TO H&K AND MR. SPECTOR'S CURRENT REPRESENTATION OF THE STATE FARM PLAINTIFFS.

Rule 4-1.9 has no application to H&K and Mr. Spector in this instance and thus, does not provide a basis for disqualification. Rule 4-1.9 prohibits a "lawyer who has formerly represented a client in a matter" from later "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." R. Regulating Fla. Bar 4-1.9(a) (emphasis added). The unambiguous language of the comments to Rule 4-1.9 makes clear that the Rule only applies to lawyers and not law firms such as H&K. *See also* R. Regulating Fla. Bar 4-1.9 cmt. ("With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.").

Rule 4-1.9 also does not apply to Mr. Spector because Dr. Lorites never had a direct attorney-client relationship with Mr. Spector, but rather only with Wilson. *See RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, No. 3:08CV302-MCR-EMT, 2009 WL 3581637, at *7 (N.D. Fla. Oct. 28, 2009) (finding that Rule 4-1.9 did not apply to attorney, whom the plaintiff

sought to disqualify, because the attorney was not involved in the representation of the plaintiff at his prior firm); *see also Gaton v. Health Coalition, Inc.*, 745 So. 2d 510, 511 (Fla. 3d DCA 1999) (finding that Rule 4-1.10 applied where a lawyer was subject to a disqualification motion based on his work as co-counsel with the movant in the same case where he subsequently joined the non-moving party's firm) . While Dr. Lorites was a client of Akerman, Dr. Lorites was represented by Wilson, *not* Mr. Spector, (*see* **Exhibit A**, D. Spector Aff. at ¶¶ 12), and Dr. Lorites does not dispute this point (*see* [ECF No. 166], Dr. Lorites' Motion at Ex. B, ¶¶ 3-9). Any confidential information of Dr. Lorites that might be material to this litigation, if any, was never shared with Mr. Spector. *See* **Exhibit A**, D. Spector Aff. at ¶¶ 13-17. In fact, Mr. Spector did not even know of Wilson's representation of Dr. Lorites until July 18, 2019, when Dr. Lorites was deposed in this action. *Id*.

Moreover, at the time the Motion was filed, Wilson's conflict to Dr. Lorites as a former client of Wilson was not imputed to Mr. Spector under Rule 4-1.10(a). Rather, any conflict of interest that was imputed to Mr. Spector terminated in February 2019, when Mr. Spector and Wilson both resigned from Akerman and transitioned to different law firms.[3] *See* Restatement (Third) of the Law Governing Lawyers § 124 (2000) cmt. c(ii) (explaining that "[w]hen a lawyer leaves a firm … whose lawyers were subject to imputed prohibition owing to presence in the firm of another lawyer, the departed lawyer becomes free of imputation so long as that lawyer obtained no material confidential client information relevant to the matter.").[4]

Dr. Lorites' citation to *Canta v. Philip Morris USA, Inc.*, 245 So. 3d 813 (Fla. 3d DCA 2017) for the proposition that conflicts are imputed when one attorney leaves a firm and joins another is misplaced because *Canta* is factually distinguishable from this case. In *Canta*, two

---

[3] Because Spector was associated with H&K at the time Dr. Lorites filed the Motion, the Court should not consider any conflicts which may have existed during Spector's tenure at Akerman because they are no longer imputed to Spector. If the Court finds there is any factual dispute relevant to the resolution of this motion, the State Farm Plaintiffs request an opportunity to conduct discovery on the scope of Wilson's representation of Dr. Lorites. Without an opportunity to do so, the State Farm Plaintiffs would not have a fair opportunity to rebut Dr. Lorites' claims that this lawsuit is the same or substantially related to the matter in which Wilson previously represented Dr. Lorites. *See*, *e.g.*, *Hagen v. Rose*, No. CV 12-0031 KBM/RHS, 2013 WL 12239130, at *2 (D.N.M. June 4, 2013) (reopening discovery in connection with motion to disqualify counsel for the limited purpose of allowing the Defendants to explore the fee arrangement and possible business dealings between plaintiff and his counsel).

[4] "Florida courts have regularly turned to the Restatement (Third) for guidance in cases involving the professional obligations of lawyers and law firms." *Canta v. Philip Morris USA, Inc.*, 245 So. 3d 813, 821 (Fla. 3d DCA 2017).

#71474366_v1

smokers filed suit against Philip Morris USA, Inc. ("PM") and R.J. Reynolds Tobacco Co. ("RJR"). *Id*. at 814. During the pendency of the case, the law firm who represented the smokers hired an attorney who previously represented PM in similar tobacco litigations at a prior law firm. *Id*. at 814-15. *Canta* has no application here because Mr. Spector, unlike the attorney in *Canta*, never directly represented Dr. Lorites prior to joining H&K and only had imputed conflict based on his prior association with Wilson, which terminated when Mr. Spector left Akerman in February 2019. *Canta* is further distinguishable because the lawyer in question performed substantive legal working including extensive legal research and drafting over hundreds of hours for Phillip Morris on *Engle*-related cases wherein significant confidential information was obtained by the lawyer before he switched firms and began working on matters which directly opposed that same client in precisely the same types of cases. *See Canta*, 245 So. 2d at 815-816. Here, Mr. Spector not only never represented Dr. Lorites directly, he never knew of Akerman's representation of Dr. Lorites and never obtained any confidential information from Dr. Lorites of any kind. *See* **Exhibit A**, D. Spector Aff. at ¶¶ 5, 8-17.

### ii. RULE 4-1.10 DOES NOT PRECLUDE H&K AND MR. SPECTOR'S REPRESENTATION OF THE STATE FARM PLAINTIFFS.

Because Mr. Spector is now associated with H&K, a firm which has never represented Dr. Lorites, the Motion is controlled by Rule 4-1.10(b). Although Dr. Lorites seeks to disqualify Mr. Spector and H&K based on application of Rule 4-1.9, Florida courts agree that when a perceived conflict arises through imputation as a result of a lawyer's prior association with a firm, the proper Rule of Professional Conduct to apply is Rule 4-1.10. In *ATC Logistics Corp. v. Jackson*, 168 So. 3d 292, 295 (Fla. 1st DCA 2015), a Florida appellate court ruled Rule 4-.110 applied when disclosure was sought for a lawyer who worked on a motion for summary judgment on behalf of Toyota while at a prior firm and then became employed at her new firm that represented the opposing party in the appeal of the summary judgment. There, the Court agreed with the trial court that the appropriate Rule of Professional Conduct for assessing the perceived conflict was Rule 4-1.10. *Id*. Similarly, in *Solomon v. Dickison*, 916 So. 2d 943, 944-945 (Fla. 1st DCA App. 2005) the First District Court of Appeal addressed a situation similar to the one present here where a disqualification motion was filed based on counsel's prior firm's representation of a client to which his subsequent firm was adverse. *Id*. at 944. In addressing the trial court's order which disqualified the lawyer in question based on application of Rule 4-1.9, the appellate court rejected the trial court's application of Rule 4-.19 and held that "the correct standard" for such a motion is found in

Rule 4-1.10.  *Id*. at 944-945.  These opinions are consistent with other Courts in Florida which hold that Rule 4-1.10 applies to motions for disqualification where the lawyer never actually represented the party seeking disqualification.  *See RJSG Properties v. Marbella Condo. Dev., LLC*, No. 3:08CV302, 2009 WL 3581637, at * 7 (N.D. Fla. Oct. 28, 2009) (denying motion to disqualify and noting that movant's reliance on Rule 4-1.9 was misplaced as 4-1.10 was the proper standard);

This distinction is critical in part because under Rule 4-1.9, where a conflict exists between a lawyer and his or her former client, there is a presumption that confidential information was exchanged.  *See State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So. 2d 630, 633 (Fla. 1991) (noting that "one seeking to disqualify opposing counsel under Rule 4-1.9 was required to show that (1) an attorney-client relationship existed, thereby giving rise to an *irrefutable* presumption that confidences were disclosed during the relationship…") (emphasis added).  Yet under Rule 4-1.10, no such presumption, let alone an irrefutable one, exists and instead the party seeking disqualification bears the burden to make a prima facie showing that the lawyer in fact obtained confidential information.  *Gaton v. Health Coal, Inc.*, 745 So. 2d 510, 511 (Fla. 3d DCA 1999) (finding that confidential information was shared and thus disqualification was warranted under Rule 4-1.10).

Rule 4-1.10(b) provides:

> **(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

R. Regulating Fla. Bar 4-1.10(b).

To establish a prima facie case for disqualification under Rule 4-1.10(b), "the moving party must show that the newly associated attorney acquired confidential information in the course of the attorney's prior representation. [citations omitted]  After the moving party meets this burden, the burden shifts to the firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information." *RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, No. 3:08CV302/MCR/EMT, 2009 WL 3581637, at *5 (N.D. Fla. Oct. 28, 2009) (*quoting Scott v. Higginbotham*, 834 So. 2d 221, 223 (Fla. 2d DCA 2002)).

13

Dr. Lorites has failed to establish a prima facie case for disqualification under Rule 4-10(b).[5] Specifically, Dr. Lorites has failed to offer any evidence that Mr. Spector acquired any information that was protected and "material to the matter." Dr. Lorites' does not state that Mr. Spector received any confidential information regarding Akerman's representation of Dr. Lorites. Moreover, Mr. Spector states unequivocally that he did not receive any such confidential information and in fact was unaware that Akerman ever represented Dr. Lorites. *See* [ECF No. 166], Dr. Lorites' Motion at Ex. B.[6]

Instead, Dr. Lorites incorrectly asserts there is an irrefutable presumption that client confidences were disclosed to Mr. Spector. Although the irrefutable presumption controls under Rule 4-1.9, it is inapplicable to an analysis under Rule 4-1.10(b). *See Solomon v. Dickison*, 916 So. 2d 943 (Fla. 1st DCA 2005) (holding that trial court departed from the essential requirements of law by applying the irrefutable presumption in connection with a motion to disqualify a law firm and an attorney who previously worked for another law firm that represented moving party). Because Dr. Lorites has failed to establish a prima facie case for disqualification under Rule 4-10(b), the Court should deny the Motion.

## IV. CONCLUSION

For the reasons set forth above, the State Farm Plaintiffs request that this Court deny Dr. Lorites Motion.

---

[5] Even if Lorites were to establish a prima facie case for disqualification under Rule 4-1.10(b), his Motion would still fail because Spector, the newly associated attorney, has no knowledge of any material confidential information pertaining to Dr. Lorites. While Spector was associated with Akerman, he did not know that Dr. Lorites was even a client of Akerman, let alone work on any engagements for him. *See* **Exhibit A**, D. Spector Aff. at ¶¶ 5, 8-13.

[6] Dr. Lorites should not be permitted, via reply memorandum, to cure the deficiency in the Motion by presenting sworn testimony or other evidence that Spector acquired any information that was protected and "material to the matter." Because a reply is not the proper place to bring in new matters that should been raised in an initial motion, Defendants should not be allowed to do so at this stage, and if they do, the State Farm Plaintiffs should be given an opportunity to file a surreply. *See* Local Rule 7.1(c) (the reply memorandum shall be strictly limited to rebuttal).

|  |  |
|---|---|
| DATED: November 13, 2019 | By: */s/ David Spector, Esq.* |
|  | DAVID SPECTOR (FBN: 086540) |
|  | david.spector@hklaw.com |
|  | CAITLIN SALADRIGAS (FBN: 095728) |
|  | caitlin.saladrigas@hklaw.com |
|  | **HOLLAND & KNIGHT LLP** |
|  | 222 Lakeview Avenue, Suite 1000 |
|  | West Palm Beach, FL 33401 |
|  | Telephone:  (561) 833-2000 |
|  | Facsimile:   (561) 650-8399 |
|  | *Attorneys for the State Farm Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified in the list below via transmission of Notices of Electronic Filing generated by CM/ECF and served on all other parties via U.S. Mail.

/s/ *David Spector, Esq.*
David Spector, Esq. (FBN: 086540)

#71474366_v1

## SERVICE LIST

| | |
|---|---|
| Christian Carrazana, Esq.<br>**CHRISTIAN CARRAZANA, P.A.**<br>P.O. Box 900520<br>Homestead, FL 33030<br>Telephone: (786) 226-8205<br>Email: christian@carrazana-legal.com<br>*Attorney for Defendant Pain Relief Clinic of Homestead, Corp.*<br>**Served via email**<br><br>Karen B. Parker, Esq.<br>**KAREN B. PARKER, P.A**<br>2550 S. Bayshore Drive, Suite 102<br>Coconut Grove, FL 33133<br>Telephone: (305) 343-8339<br>Email:  kparker@kbparkerlaw.com<br>           kbparkerlaw@gmail.com<br>           parkerlawasst@gmail.com<br>*Attorneys for Defendant Jesus Lorites*<br>**Served via email**<br><br>Michael Nicoleau<br>**NICOLEAU | LAW**<br>11900 Biscayne Boulevard, Suite 770<br>North Miami, FL   33181-2737<br>Telephone:  (305) 438-7883<br>Email: michael@nicoleaulaw.com<br>           eservice@nicoleaulaw.com<br>*Attorneys for Defendant Hugo Goldstraj*<br>**Served via email** | Richard J. Diaz, Esq.<br>Attorney at Law<br>3127 Ponce De Leon Boulevard<br>Coral Gables, FL 33134<br>Telephone: (305) 444-7181<br>Facsimile:  (305) 444-8178<br>Email: rick@rjdpa.com<br>*Attorneys for Defendants Medical Wellness Services, Inc., Beatriz Muse, Lazaro Muse, and Noel Santos*<br>**Served via email**<br><br>Louis V. Martinez, Esq.<br>**DIAZ, REUS & TARG LLP**<br>3400 Miami Tower<br>100 SE 2nd Street<br>Miami, FL 33131<br>Telephone: (305) 375-9220<br>Facsimile:  (305) 375-8050<br>Email: lvmartinez@aol.com<br>*Attorneys for Defendant Health & Wellness Services Inc.*<br>**Served via email**<br><br><br>Jose Gomez-Cortes, MD<br>1840 West 49th Street, Suite 305<br>Hialeah, FL  33012<br><br>     - AND -<br><br>3400 SW 130th Avenue<br>Miami, FL  33175<br>*In Pro Se*<br>**Served via U.S. Mail** |

#71474366_v1