UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANT and STATE
FARM FIRE and CASUALTY
COMPANY

        Plaintiff,

vs.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE,
HUGO GOLDSTRAJ, MANUEL FRANCO,
**MEDICAL WELLNESS SERVICES, INC.,
NOEL SANTOS**, ANGEL CARRASO, JORGE
RAFAEL COLL, PAIN RELIEF CLINIC OF
HOMESTEAD, CORP., JESUS LORITES and
JOSE GOMEZ-CORTES,

        Defendants.
_____/

MEDICAL WELLNESS SERVICES, INC.,
and NOEL SANTOS,

        Third Party Plaintiffs,

vs.

JORGE RAFAEL COLL,

        Third Party Defendant.
_____/

**MEDICAL WELLNESS SERVICES INC. AND NOEL SANTOS'S THIRD PARTY
COMPLAINT AGAINST JORGE RAFAEL COLL**

For this Third Party Complaint, Medical Wellness ("MW") and Noel Santos ("Santos")

(collectively "TPP") state:

1. This is a third party complaint within the subject matter jurisdiction of this Court as it preexists by virtue of the Amended Complaint itself.

2. Personal jurisdiction over Defendant Jorge Rafael Coll ("Coll") exists by virtue of his prior status as a named defendant in the underlying claim and his answer filed therein. Coll is sui juris and resides within the Southern District of Florida.

3. On or about 2013, Coll while being a licensed medical doctor within the state of Florida met with CP to discuss a potential working relationship. MW was a medical clinic catering primarily to patients who suffered injuries resulting from motor vehicle accidents and covered by Florida's No Fault Automobile Insurance Law.

4. CP hired Coll to serve as medical director at MW.

5. Coll was responsible for compliance with all applicable medical, state and AHCA regulations at MW.

6. In 2017, Coll separated from MW.

7. On August 22, 2019, Coll executed an affidavit wherein he swore that he did not meet his statutory and contractual duties at MW and his professional duties at MW. (Exhibit A). These admissions form the primary—though not exclusive—basis for this Third Party Complaint.

8. It was not until the summer of 2019 that MW became aware of Coll's breach of contract and fraud.

## COUNT I-FRAUD IN THE INDUCEMENT

TPP reallege Paragraphs 1-8 and adds that:

9. During the 2013 interview with MW, Coll made the following representations to TPP:

- that Coll possessed the background, knowledge, training and experience to: supervise the treatment of MW's patients by licensed massage therapists in full compliance with all applicable laws and regulations;
- that Coll possessed the background, knowledge, training and experience to serve as MW's medical director and supervise all of MW's operations including its billing procedures to operate in full compliance with all applicable laws and regulations.

10. These statements were material to TPP because they formed the reliance upon which MW hired Coll as its medical director.
11. Such reliance was reasonable as TPP looked to Coll who had the medical background knowledge, training and experience to serve as MW's medical director.
12. TPP actually relied on such representations in making its decision to hire Coll.
13. Those statements were knowingly false when made. Indeed, Coll, by implication, has acknowledged this in his affidavit.
14. TPP detrimentally relied on Coll's false representations.
15. Coll's fraud has proximately caused hundreds of thousands of dollars in damage to TPP.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

### COUNT II-NEGLIGENT MISREPRESENTATION

TPP reallege Paragraphs 1-8 and adds that:

16. During the interview Coll made the following representations to TPP:

- that Coll possessed the background, knowledge, training and experience to: supervise the treatment of MW's patients by licensed massage therapists in full compliance with all applicable laws and regulations;
- that Coll possessed the background, knowledge, training and experience to serve as MW's medical director and supervise all of MW's operations including its billing procedures to operate in full compliance with all applicable laws and regulations.

17. These statements were material to TPP because they formed the reliance upon which MW hired Coll as its medical director.
18. Such reliance was reasonable as TPP looked to Coll who had the medical background knowledge, training and experience to serve as MW's medical director.
19. TPP actually relied on such representations in making its decision to hire Coll.
20. Those statements were made with reckless disregard for their truth. Indeed, Coll, by implication, has acknowledged this in an affidavit.
21. TPP detrimentally relied on Coll's representations.
22. Coll's fraud has proximately caused hundreds of thousands of dollars in damage to TPP.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

## COUNT III-BREACH OF CONTRACT

TPP reallege Paragraphs 1-8 and adds that:

23. TPP hired Coll to perform at MW as a medical director.

24. Coll breached his employment obligations by failing as the medical director to properly supervise treatment of MW patients by licensed massage therapists, by failing to properly supervise MW's billing and other aspects of MW's operations to maintain MW in compliance with all applicable laws and regulations.

25. CP has met all conditions precedent to suing Coll for breach of contract or they are otherwise waived or excused.

26. As a direct and natural cause of Coll's breach of contract, TPP have been damaged.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

## COUNT IV-NEGLIGENCE

TPP realllege Paragraphs 1-8 and adds that:

27. As MW's medical director, Coll had a duty to maintain a standard of care to MW to ensure that its operations were conducted in compliance with all statutes, laws, rules and regulations.

28. Coll breached the duty by now admitting that he fell below that standard or care.

29. Coll is liable per se because he admits he breached, among other duties, a statutory duty owed to MW.

30. As a direct and proximate cause of such negligence, TPP have been damaged.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

## COUNT V -OUTRAGE

TPP reallege Paragraphs 1-8 and add that:

31. Coll's conduct was intentional and reckless.

32. He was responsible for the health, well-being and safety of hundreds of patients and the business operations of MW.

33. He was responsible to keep MW in full compliance with all applicable laws and regulations, including any claims for fraud against MW. His affidavit is an admission that he violated his statutory duties as medical director of MW

34. Such conduct goes beyond all bounds of decency in a civilized society and are utterly intolerable.

35. The conduct has caused severe distress to Santos and to the reputation and goodwill of MW.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

## COUNT VI-CONTRIBUTION

TPP reallege Paragraphs 1-8 and add that:

36. Pursuant to F.S. 768.31, MW and Santos seek contribution from Coll for any liability finding(s) and/or damages determined in favor of the Plaintiffs and against MW, or Santos, or both.

WHEREFORE, Third Party Plaintiffs demand judgment against Coll for their damages, plus costs and interest and any other relief the Court deems just and proper.

Respectfully submitted,

s/ Richard J. Diaz

_____

Richard J. Diaz, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
F.B.N. 0767697

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served electronically on all parties of record this  22 day of November, 2018.

s/ Richard Diaz

_____

Richard J. Diaz, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:18-CV-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE and CASUALTY COMPANY,

Plaintiffs,

v.

HEALTH AND WELLNESS SERVICES,
INC., BEATRIZ MUSE, LAZARO MUSE,
HUGO GOLDSTRAJ, MANUEL FRANCO,
MEDICAL WELLNESS SERVICES, INC.,
NOEL SANTOS, ANGEL CARRASCO,
JORGE RAFAEL COLL, PAIN RELIEF
CLINIC OF HOMESTEAD, CORP., JESUS
LORITES, AND JOSE GOMEZ-CORTES,

Defendants.
_____/

### AFFIDAVIT OF JORGE COLL, M.D.

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

BEFORE ME, the undersigned authority personally appeared Jorge Coll, M.D., who being by me first duly sworn, deposed and said:

1. My name is Jorge Coll. I am over the age of eighteen (18) years old, am competent to testify, and have personal knowledge of the facts contained in this Affidavit.

2. I am a medical doctor, licensed to practice medicine since 1998 in the State of Florida.

3. I am board eligible in internal medicine. I have never been sanctioned or found to have been involved in any fraud or illegitimate medical practice.

Ex. A

4. In 2013 I was recommended by an associate, Dr. Orlando Leiva, to meet with Lazaro Muse for a medical director position at a health clinic that he was associated with. Dr. Leyva worked at Medical Wellness Services, Inc. ("Medical Wellness").

5. Lazaro Muse identified the clinic he was involved with as Medical Wellness Services, Inc. ("Medical Wellness"). I was never advised and was unaware that Lazaro Muse owned any other clinics. At the time I met with Lazaro Muse, I was told that Noel Santos was the owner. When I met with Lazaro Muse I believed that he had some interest or association with Medical Wellness. I don't recall if Lazaro Muse told me what his actual position was at Medical Wellness. I met with Lazaro Muse at Medical Wellness to discuss the medical director position.

6. Following the meeting at Medical Wellness, I met other clinic employees there including Noel Santos, who I understood to be a licensed massage therapist at the clinic and the owner.

7. Lazaro Muse hired me during our initial meeting at Medical Wellness as the medical director of Medical Wellness at a pay rate of $1,000.00 every other week.

8. I served as the medical director at Medical Wellness from the end of 2013 to the beginning of 2017.

9. While I was the medical director at Medical Wellness, I was also the medical director at D&K Rehab, Sunshine Medical Center, and VLO Medical. I no longer work at any of these clinics.

10. During my time at Medical Wellness I recall seeing Lazaro Muse at Medical Wellness 4-5 times.

11. At the time that I was hired, I had not reviewed in detail nor received any education by Medical Wellness regarding the laws and/or regulations which apply to medical directors in the

2

#69587343_v1

state of Florida such that I did not know the full scope nor all of the intricacies of my responsibilities as Medical Wellness' medical director. I did not receive any training at or from Medical Wellness regarding any of its policies. I also did not receive or review a copy of any of Medical Wellness' policies.

12. Since the time I was hired until the date I left Medical Wellness, I have not read, reviewed in detail, nor received any education regarding the laws and/or regulations which apply to medical directors in the state of Florida and was therefore not aware of the full scope nor all of the intricacies of my responsibilities as medical director at any time during my tenure at Medical Wellness.

13. During my tenure as medical director at Medical Wellness:

   a. My systematic review of the billings was limited to reviewing the medical records, *i.e.*, examination reports, therapy reports and daily therapy notes, and the related medical bills that were briefly reviewed. I did not document any concerns in the records and billings I reviewed at Medical Wellness. Further, I never voiced any such concerns to any person because I thought my concerns were not relevant.

   b. Medical Wellness never published a schedule of charges of any kind reflecting the costs associated with the medical services offered to patients at Medical Wellness.

   c. Other than being aware of the physical copies of the Medical Wellness practitioners' licenses, which were posted onsite, I never verified that health care practitioners at Medical Wellness maintained current active and unencumbered Florida licenses. I never contacted the Department of

3

    Health, any applicable licensing board, or the Agency for Health Care Administration to verify the status of those health care practitioners' licenses.

d. I was unfamiliar with all the requirements of Florida Statute § 456.057 which sets forth the parameters of serving as the clinic's medical records custodian, a role that I held as medical director of Medical Wellness. I was not aware that I was a custodian of the medical records at Medical Wellness.

e. I was unaware of the sources of Medical Wellness patients, other than the fact that they were auto accident victims because they brought police reports with them, and was unaware of any patient referral contracts or agreements executed by the clinic.

f. To my knowledge, Medical Wellness never made an attempt to collect any co-payments or deductibles from any patients. To my knowledge, no co-payments or deductibles were ever collected at Medical Wellness. I was unaware of the provision in Florida's Insurance Fraud Statute, Fla. Stat. § 817.234, regarding the required collection of co-payments or deductibles.

14. Even though I did not believe it was my responsibility at Medical Wellness to directly supervise the treating physician, in retrospect and after reviewing additional information, it is my opinion the treatment performed on Medical Wellness patients was not appropriate and in accordance with the standard of care in the following ways:

### Subjective Pain Complaints

a. In a normal setting, 95% of patients would not present with subjective pain complaints in the cervical, thoracic, and lumbar regions of the spine.

4

#69587343_v1

b. In a normal setting, 100% of patients would not present with subjective pain complaints in an extremity.

c. These patterns would not be credible.

Initial Evaluation

d. The Medical Wellness initial examination form does not provide a space for the examining provider to identify the specific muscles which are the source of the patient's pain or the specific levels of the spine where the patient experiences pain. In its current form, this would not meet the standard of care for objectively diagnosing a patient's pain symptoms.

e. Due to the deficiencies in the Medical Wellness initial evaluation forms, a patient at Medical Wellness could not receive a correct or proper diagnosis.

Therapy Order Form

f. The therapy order form used at Medical Wellness does not provide sufficient information for an examining practitioner to properly document the treatment prescribed. This form does not meet the standard of care for medical record keeping.

g. Specifically, there are no options for the types of therapeutic exercises for the treating physician to select.

h. There are no options for the types of manual therapy for the treating physician to select.

i. There are no options for the frequency or amplitude of the EMS and TENS therapies.

j. There is no option to elect the type of mechanical traction.

k. There is no place for the prescription of time or units for each modality.

l. Due to the deficiencies in the Medical Wellness therapy form, it does not allow for enough detail in the prescription to allow for appropriate treatment options.

### X-rays

m. X-rays were not being interpreted by a radiologist prior to therapy beginning for patients treating at Medical Wellness. Where patients received mechanical traction before their x-rays were interpreted, such treatment did not meet the standard of care.

n. X-rays should be used to assist in the decision making process for a patient's proper care, but they were not used in this way at Medical Wellness.

o. When a radiologist recommends additional diagnostic studies, those studies should be taken into consideration and performed unless a documented reason not to exists.

### Therapy

p. If a specific therapy modality is performed on more than one region of the body, therapists should document it in the treatment records.

q. Such an indication is a prerequisite to billing a "59 modifier" on a CMS 1500 form.

### Final Evaluation & Impairment Ratings

r. The final impairment ratings (other than 0%) provided by physician's assistants at Medical Wellness were never verified by me to ensure that they were consistent with the American Medical Association standards.

#69587343_v1

s. I never questioned the way that impairment ratings were assigned.

15. I resigned from the position of medical director at Medical Wellness in late 2017.

16. I never reviewed the medical records to determine if any patient in fact had, in my opinion, an emergency medical condition as that term is defined in the Florida Statutes. The emergency medical condition status was determined by the treating and/or examining physician. I was never advised of the process used at Medical Wellness by the treating and/or examining physician for determining if a patient did or did not have an emergency medical condition.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Jorge Coll, M.D.

The foregoing instrument was sworn to and subscribed before me this 22nd day of August, 2019, by JORGE COLL, M.D., who is:

☒ personally known to me; or

☐ produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or

☐ produced the following identification: _____

_____
NOTARY PUBLIC, STATE OF FLORIDA

Olga Lydia Torres
(Print, Type or Stamp Commissioned Name of Notary Public)

OLGA LYDIA TORRES
MY COMMISSION # GG072740
EXPIRES February 13, 2021

OLGA LYDIA TORRES
MY COMMISSION # GG072740
EXPIRES February 13, 2021

7

#69587343_v1