United States District Court
for the
Southern District of Florida

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, Plaintiff, ) ) ) ) | |
| v. ) | Civil Action No. 18-23125-Civ-Scola |
| ) | |
| Health and Wellness Services, Inc. and others, Defendants. ) ) | |

### Omnibus Order

State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (together, "State Farm") have sued three healthcare clinics—Health & Wellness Services, Inc., Medical Wellness Services, Inc., and Pain Relief Clinic of Homestead, Corp. (collectively the "Clinics")—and nine individuals associated with the clinics: Beatriz Muse; her brother, Lazaro Muse; her husband, Noel Santos (collectively the "Muse Family"); and six doctors—Drs. Hugo Goldstraj, Manuel Franco, Angel Carrasco, Jorge Rafael Coll, Jesus Lorites, and Jose Gomez-Cortes.[1] According to State Farm, the Muse Family orchestrated a scheme to defraud State Farm through the unlawful operation of the Clinics. In effecting their scheme, according to State Farm, the Defendants, together, fraudulently obtained insurance payments from State Farm in excess of $4.7 million dollars. State Farm's complaint includes ten counts: three counts of fraud; three counts under the Florida Deceptive and Unfair Trade Practices Act; three counts of unjust enrichment; and one request for declaratory relief. Each Defendant faces at least one count of fraud, one count under FDUTPA, and one count of unjust enrichment. State Farm's request for declaratory relief is lodged only against the Clinics.

Now before the Court are several motions:

(1) Medical Wellness and the Muse Family's motion to reopen discovery to take two depositions (ECF No. 143);

(2) State Farm's motion for leave amend the complaint (ECF No 148);

(3) Medical Wellness and the Muse Family's motion for leave to amend their affirmative defenses, file a third-party complaint, and file a cross claim (ECF No. 230);

---

[1] Of these six doctors, three have been defaulted by the Clerk (Franco (ECF No. 72); Carrasco (*Id.*); and Gomez-Cortes (ECF No. 146)) and one has been dismissed as the result of a settlement (Coll (ECF No. 140)).

(4) Lorites's motion to disqualify counsel (ECF No. 166);

(5) Lorites's motion to quash a third-party subpoena (ECF No. 190);

(6) State Farm's motion to compel compliance with a third-party subpoena (ECF No. 229);

(7) Medical Wellness and the Muse Family's motion to "reveal the deal(s)" between State Farm and Carrasco and Coll (ECF No. 188); and

(8) Medical Wellness and the Muse Family's motion regarding the Coll and Carrasco affidavits (ECF Nos. 187, 198).

The Court held a hearing on these motions on December 18, 2019, at which counsel, Defendants Beatriz Muse, Lazaro Muse, Noel Santos, and Medical Wellness Services, Inc., and Plaintiff State Farm all appeared.[2] As stated in open court, the Court finds most of these motions to be without merit and sets forth its rulings in more detail below.

### 1. The Court largely denies the motions involving modifications of the Court's scheduling order as untimely (ECF Nos. 143, 148, 230).

With respect to Medical Wellness and the Muse Family's motion to reopen discovery (ECF No. 143), the Court finds the Defendants have not established the due diligence necessary to support their motion to extend the discovery deadline. These Defendants had well over ten months to take the depositions of their co-defendants, Carrasco and Coll. They complain, however, that, until they learned these defendants would be cooperating with State Farm, they had no reason to do so. But even before learning of their cooperation, the moving defendants should have been well aware that these defendants had substantial information regarding the schemes alleged by State Farm. Further, the moving defendants should have also been cognizant of the possibility, or even likelihood, that these co-defendants' interests in this litigation were not necessarily aligned with their own. For Coll's part, he had already set forth an affirmative defense regarding the apportionment of any fault with people or entities over whom Coll had no control. Further, Carrasco failed to respond to the complaint and, ultimately, State Farm ended up cancelling both of their depositions. Under Federal Rule of Civil Procedure 16(b), a scheduling order will only be modified upon a showing of good cause, requiring a demonstration that the deadline "cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory

---

[2] Despite the Court's instruction to do so (ECF No. 244), Defendant Lorites himself failed to appear though his attorney participated in the hearing.

committee's note). The moving Defendants have not made such a showing and thus the Court denies their motion (ECF No. 143).[3]

In the same vein, the Court also denies State Farm's request for leave to amend its complaint (ECF No. 148) and, to a large extent, Medical Wellness and the Muse Family's motion for leave to amend their affirmative defenses and to submit additional pleadings (ECF No. 230). State Farm asks the Court for permission to amend its complaint in order to add claims that the Defendants violated additional Florida Statute sections by failing to collect co-payments or deductibles from their patients. The Defendants, at the same time, seek to amend their response to the complaint to assert a statute-of-limitations affirmative defense, to plead claims against Carrasco and Coll, and to add Defendants Coll and Carrasco as *Fabre* parties. The deadline for the parties to amend their pleadings, however, expired nearly a year ago, several months prior to the parties' requests to amend.

In an attempt to establish good cause for the modification of the amendment deadline with respect to the complaint, State Farm complains it only recently "discovered evidence surrounding the previously undiscovered violation of Florida law." (Pls.' Mot. at 3.) State Farm does not, though, contend that the Defendants in any way concealed this evidence. Instead, State Farm complains only that evidence revealing the violations "was not readily identifiable in the medical bills and records" produced by the Defendants and that "no insured whose claim is at issue in this lawsuit volunteered any such information." (*Id.* at 14.) But, the onus is not on defendants or witnesses to proactively outline any claims a plaintiff might have. Rather, the burden rests with the plaintiff to prosecute its own case diligently. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241, n. 3 (11th Cir. 2009) (lack of diligence finding triggered by "a [party's] failure to seek the information it needs to determine whether an amendment is in order"); *De Varona*, 285 F.R.D. at 672 (S.D. Fla. 2012) (Ungaro, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ) ("If [a] party was not diligent, the [good cause] inquiry should end."). The information supporting the new claims was not undiscovered because it was actively being concealed; the information was not discovered because State Farm didn't actively seek it. *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 17-22475-CIV, 2018 WL 3404133, at *4 (S.D. Fla. July 12, 2018) (Scola, J.).

---

[3] The Defendants, after their motion had been fully briefed, submitted what they called a "supplement" to their motion (ECF No. 152). No such filing is permitted, in conjunction with a fully briefed motion, by the Federal Rules of Civil Procedure or the Local Rules and the Court did not, therefore, consider it. Accordingly, the Court also did not consider State Farm's response (ECF No. 155) to the supplement. The Court **strikes** both filings. (**ECF Nos. 152, 155**.)

For their part, the Defendants did not even try to establish good cause or due diligence for the late pleading of a cross claim against Carrasco or third-party complaint against Coll or the late addition of a statute-of-limitations affirmative defense. The Court thus denies the Defendants' motion (ECF No. 230), in part, with respect to these issues. On the other hand, State Farm does not object to the Defendants' addition of Coll and Carrasco as *Fabre* defendants. The Court thus grants the Defendants' motion (ECF No. 230) with respect to amending their affirmative defenses to allow them to apportion fault to Coll and Carrasco as *Fabre* defendants.

## 2. The Court denies Defendant Lorites' motion to disqualify counsel (ECF Nos. 166, 190, 229).

Lorites asks the Court to disqualify the law firm of Holland & Knight, LLP and attorney David I. Spector from this case because, he says, "such representation constitutes an ethically impermissible concurrent conflict of interest in violation of Florida's Rule of Professional Conduct." (Lorites' Mot. at 1.) The conflict, as Lorites describes it, stems from a prior client-attorney relationship Lorites had, in 2011, with J. Everett Wilson, an attorney with Akerman Senterfitt, LLP in Miami. (*Id.* at 2.) That representation involved Wilson's negotiating Lorites's primary-care-physician contract with a non-party health clinic and purportedly advising Lorites as to his obligations as a medical director generally, as well as in conjunction with his work for one of the Defendant clinics in this case. (*Id.* at 2–3.) When this case was initiated, seven years after Lorites's retention of Wilson, Spector (lead counsel for State Farm) was himself an Akerman attorney, in its West Palm Beach office. (*Id.* at 3.) After Lorites was served with the complaint, he says he sought Wilson's assistance, in August 2018. (*Id.*) Wilson told Lorites he could not represent him. (*Id.*)

The Court finds Florida Rule of Professional Conduct 4-1.10(b) governs this scenario. *See Gaton v. Health Coal., Inc.*, 745 So. 2d 510, 511 (Fla. 3d DCA 1999) (finding Rule 4–1.10(b) applies to "conflict of interest problems which may arise when a lawyer moves from one firm to another"); *RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, 3:08CV302/MCR/EMT, 2009 WL 3581637, at *7 (N.D. Fla. Oct. 28, 2009) (finding Rule 4-1.10(b) applies where a movant seeks to disqualify an attorney who transferred to a firm who represents an adverse party after working at a firm that previously represented the movant).[4, 5] Under Rule 4-1.10(b), the movant must first establish a prima

---

[4] Lorites contends Rule 4-1.9 applies. He is mistaken. Rule 4-1.9 prohibits "[a] lawyer who has formerly represented a client in a matter" from later "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." R. Regulating

facie case for disqualification by "show[ing] that the newly associated attorney acquired confidential information in the course of the attorney's prior representation." *RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, 3:08CV302/MCR/EMT, 2009 WL 3581637, at *5 (N.D. Fla. Oct. 28, 2009) (quoting *Scott v. Higginbotham,* 834 So.2d 221, 223 (Fla. 2d DCA 2002)). After the movant "meets this burden, the burden shifts to the firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information." *RJSG Properties*, 2009 WL 3581637, at *5 (quoting *Scott,* 834 So.2d at 223). Further, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Arnett v. Mid-Contl. Cas. Co.*, 8:08-CV-2373-T-27EAJ, 2010 WL 11507481, at *2 (M.D. Fla. Apr. 13, 2010) (quoting *Cox v. Amer. Cast Iron Pipe, Inc.*, 847 F.2d 725, 729 (11th Cir. 1988)). "Where a party moving for disqualification had every opportunity to object to opposing party's counsel but fails to do so, the party waives its right to seek disqualification." *Arnett*, 2010 WL 11507481, at *2 (citing *Cox*, 847 F.2d at 731).

Lorites's attempt to disqualify Spector and his current law firm fails. To start, Lorites fails to state a prima facie case: he makes no allegations that Spector ever acquired any confidential information in the course of his prior firm's representation of Lorites. Furthermore, Spector's affirmative declaration that he never received any confidential information and, indeed, was, in any event, totally unaware of Wilson's representation of Lorites, is left unrebutted.[6] (Spector Aff. at ¶¶ 14–15, 17; ECF No. 204-1.) Lorites's insistence that there is an irrebuttable presumption that client confidences were disclosed to Spector

---

Fla. Bar 4-1.9(a). This rule, then, clearly does not apply with respect to Lorites's attempt to disqualify Holland & Knight. Further, this rule does not apply to Spector either because Lorites doesn't allege he ever had a direct attorney-client relationship with Spector—only with Wilson. *See RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, 3:08CV302/MCR/EMT, 2009 WL 3581637, at *7 (N.D. Fla. Oct. 28, 2009) (concluding the Rule 4-1.9 does not apply where a movant to seeks to disqualify an attorney who never himself represented the movant at his prior firm).

[5] Lorites also relies on Rule 4-1.7 to establish disqualification. The Court finds this reliance unavailing as well. This rule applies to conflicts arising as to adverse clients who are currently being represented by the same lawyer. Lorites provides support for an inference that he is, at most, only a *former* client, since Spector left Akerman in February 2019. Further, Lorites has not presented any allegations that Spector was even aware that Wilson had ever represented Lorites, never mind still represented him at the time the complaint in this case was filed.

[6] While this lack of awareness, in this particular case and under this rule, supports State Farm's opposition to the motion to disqualify, it nonetheless raises serious concerns about Akerman's conflict-checking procedures. Upon a stronger showing from the movant, this might have proved fatal to the adverse party's ability to ward off disqualification.

misses the mark. That presumption only attaches under Rule 4-1.9 which the Court finds inapplicable here.

Additionally, the Court finds Lorites has also waived his right to seek disqualification by failing to act with reasonable promptness. Lorites was aware of the facts upon which his motion is based when he was personally served with the complaint in this case over fourteen months before filing his motion to disqualify. The complaint clearly identifies Akerman as counsel for the Plaintiffs and immediately thereafter Wilson, an Akerman attorney, told Lorites he could not represent him in the case. While the Court agrees the allegations here indicate concerning failings by counsel somewhere along the line— between shortcomings in Akerman's conflict check and Wilson's failure to alert Spector to the conflict—such failings do not absolve Lorites from acting promptly to protect his own interests. Considering the length of the unexplained delay from the time Lorites became aware of the conflict, Lorites's representation by other counsel since shortly after he was served with the complaint, and the prejudice that would befall State Farm at this late stage of the litigation, the Court finds Lorites has waived his right to disqualification. *See Arnett v. Mid-Contl. Cas. Co.*, 8:08-CV-2373-T-27EAJ, 2010 WL 11507481, at *2 (M.D. Fla. Apr. 13, 2010) (listing the following factors in determining disqualification waiver: "(1) the length of the delay in bringing the motion to disqualify, (2) the date that the movant had the opportunity to object, (3) whether the movant was represented by counsel, (4) the reason for the delay, (5) whether disqualification would result prejudice to the non-moving party.").

Because the Court denies Lorites's motion to disqualify counsel, it also denies, as moot, his motion to quash a third-party subpoena (ECF No. 190) as well as State Farm's motion to compel compliance with that subpoena (ECF No. 229).

### 3. The Court denies Medical Wellness and the Muse Family's motion to "reveal the deal(s)" between State Farm and Carrasco and Coll (ECF No. 188).

In Medical Wellness and the Muse Family's motion to "reveal the deal(s)" between State Farm and Carrasco and Coll, the Defendants complain of the tactical advantage State Farm has gained since allegedly settling with their co-defendants Carrasco and Coll. In a word, they say they have been sandbagged. To that end, Medical Wellness and the Muse Family say State Farm should be ordered to disclose the settlement agreements and "all communications between counsel for these parties initiating settlement discussions and containing all offers and counter-offers exchanged before the final settlement agreement was entered." (Defs.' Mot. ¶ 3, ECF No. 188, 2.)

As State Farm points out, the Defendants' motion is short on, if not completely devoid of any, legal support. The Defendants offer the Court no guidance whatsoever regarding any specific legal authority upon which the Court should base its order requiring State Farm to produce the requested discovery. And while the Defendants are correct that they need not furnish case law that is precisely on all fours with their position, they must nonetheless endeavor to supply *some* legal basis for the action they propose the Court take. Indeed, "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.). In short, the Court will not do parties' research for them. *Id.* On the other hand, State Farm proffers many legal reasons why the Defendants' request for relief should be denied. (Pls.' Resp., ECF No. 227.) In reply, the Defendants (1) complain that their motion was only four pages long but that State Farm's opposition spanned seven pages; (2) object to State Farm's reliance on cases where the facts are not even remotely similar to the facts in this case; (3) summarily contend the settlement negotiations and settlements themselves, and State Farm's failure to produce related documents, were "in blatant violation of [State Farm's] ongoing and continuing disclosure obligations under Rule 26"; and (4) adamantly insist "the Plaintiff's conduct is wrong [and] absolutely reprehensible." (Defs.' Reply, ECF No. 228.) Despite these protestations and unsupported conclusions, and otherwise finding no legal basis upon which to base an order compelling State Farm to produce the requested documents and information, the Court denies the motion (ECF No. 188).

### 4. The Court denies Medical Wellness and the Muse Family's motion regarding the Coll and Carrasco affidavits (ECF Nos. 187, 198).

Next, Medical Wellness and the Muse Family suggest Coll and Carrasco, through their recently provided affidavits, have committed perjury and ask the Court to (1) strike the affidavits and (2) conduct an evidentiary hearing to make an obstruction-of-justice determination and assess sanctions as may be appropriate. (Defs.' Mot., ECF No. 187.) By way of a "supplement," Medical Wellness and the Muse Family also contend the Court should strike the affidavits based on judicial estoppel. (Defs.' Supp., ECF No. 198.)

The Defendants set forth several discrepancies between the assertions Coll and Carrasco have stated in their affidavits and other evidence they contend contradicts those assertions. For example, as the Defendants point out, Coll, in his affidavit states that he has "never been sanctioned or found to have been involved in any fraud or illegitimate medical practice." (Coll. Aff. ¶ 3,

ECF No. 187-2.) The Defendants' assessment that "[t]his statement is false" is based on what they describe as an October 25, 2001, Agency for Health Care Administration case where they say Coll was sanctioned for $1,099 for violating Florida Statutes section "458.331(1)(g)(x)." In support, they direct the Court to "**EXHIBIT 3**." This exhibit, however, is a duplicate of Exhibit 2 which is simply Coll's affidavit which does not support the Defendants' contention at all. In any event, State Farm explains that in 2001, Coll was assessed a monetary penalty for an isolated medical-record-keeping issue. "To constitute perjury the statement must be false, material and made with knowledge of its falsity." *U.S. v. Dudley*, 581 F.2d 1193, 1196 (5th Cir. 1978). Assuming the Defendants can establish the statement is even false, they have made no showing that the statement is either material or that it was made with knowledge of its falsity. In sum, the Defendants come up well short of properly alleging Coll's statement is perjurious.

The other purported "several material instances of perjury" the Defendants point out fare no better. At best the Court finds these are merely possible evidentiary inconsistencies and agrees with State Farm that these discrepancies merely go to the credibility of the evidence supplied by the affidavits. The Defendants simply have not supplied adequate support for their contention that any of identified statements amount to actual perjury.

Additionally, the Defendants' contention, raised in a supplement, that the Court should strike the affidavits based on judicial estoppel is wholly meritless. While the Court acknowledges the Defendants set forth a comprehensive analysis of the legal principles underpinning the application of judicial estoppel, the Defendants fail to explain how this concept applies to the Coll and Carrasco affidavits. In sum, the Eleventh Circuit "employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (internal quotations omitted). District courts are required to "consider the totality of the facts and circumstances of the case" in assessing whether the party intended to make a mockery of the judicial system. *Id.* at 1188. Here, the Defendants have made no such allegations. Instead, the Defendants point to positions Coll took in his *unsworn* responsive pleadings and Carrasco's failure to respond to the complaint at all. These allegations are insufficient to support a claim of judicial estoppel.

Based on the above analysis, the Court denies the relief the Defendants request with respect to Coll and Carrasco's affidavits (ECF Nos. 187, 198).

### 5. Conclusion

To summarize, the Court rules on the above-described motions as follows:

- The Court **denies**: Medical Wellness and the Muse Family's motion to reopen discovery to take two depositions (**ECF No. 143**); State Farm's motion for leave amend the complaint (**ECF No 148**); Lorites's motion to disqualify counsel (**ECF No. 166**); Medical Wellness and the Muse Family's motion to "reveal the deal(s)" between State Farm and Carrasco and Coll (**ECF No. 188**); and Medical Wellness and the Muse Family's motion regarding the Coll and Carrasco affidavits (**ECF Nos. 187, 198**);

- The Court **denies as moot**: Lorites's motion to quash a third-party subpoena (**ECF No. 190**); and State Farm's motion to compel compliance with third-party subpoena (**ECF No. 229**); and

- The Court **denies in part and grants in part** Medical Wellness and the Muse Family's motion for leave to amend their affirmative defenses, file a third-party complaint, and file a cross claim (**ECF No. 230**).

The Clerk is directed to **mail** a copy of this order to the defendants identified below.

**Done and ordered**, in Miami, Florida, on December 19, 2019.

Robert N. Scola, Jr.
United States District Judge

*Copy via email to*:

**Hugo Goldstraj**
3029 NE 188th Street, Apt. 305
Aventura, Florida 33180

**Manuel Franco**
13400 SW 83rd Avenue
Miami, FL 33156

**Angel Carrasco**
29224 SW 142 Place
Homestead, FL 33033

**Jose Gomez-Cortes**
3400 SW 130th Avenue
Miami, FL 33175