United States District Court
for the
Southern District of Florida

State Farm Mutual Automobile ）
Insurance Company and State Farm ）
Fire & Casualty Company, Plaintiff, ）
                                   ）
v.                                 ）       Civil Action No. 18-23125-Civ-Scola
                                   ）
Health and Wellness Services, Inc. ）
and others, Defendants.            ）

## Omnibus Order on Motions for Summary Judgment

   State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (together, "State Farm") have sued three healthcare clinics—Health & Wellness Services, Inc., Medical Wellness Services, Inc., and Pain Relief Clinic of Homestead, Corp. (collectively the "Clinics")—and nine individuals associated with the clinics: Beatriz Muse; her brother, Lazaro Muse;[1] Beatriz's husband, Noel Santos (together, the "Muse Family"); and six doctors—Drs. Hugo Goldstraj, Manuel Franco, Angel Carrasco, Jorge Rafael Coll, Jesus Lorites, and Jose Gomez-Cortes. According to State Farm's complaint, the Muse Family orchestrated a scheme to defraud State Farm through the unlawful operation of the Clinics. In effecting their scheme, according to State Farm, the Defendants, together, fraudulently obtained insurance payments from State Farm in excess of $4.7 million dollars. State Farm's complaint includes ten counts: three claims of fraud; three claims under the Florida Deceptive and Unfair Trade Practices Act; three claims of unjust enrichment; and one request for declaratory relief. Each Defendant faces at least one count of fraud, one count under FDUTPA, and one count of unjust enrichment. State Farm's request for declaratory relief is lodged only against the Clinics.

   Now before the Court are three motions for summary judgment:

   (1) State Farm's motion for partial summary judgment (ECF No. 184);

   (2) Medical Wellness and the Muse Family's (together, the "Muse Defendants") motion for summary judgment (ECF No. 172); and

   (3) Dr. Lorites's motion for summary judgment (ECF No. 205).

---

[1] In order to differentiate between the Muse siblings, the Court refers to them by their first names.

The Court has considered the concomitant responses and replies, along with the parties' statements of material facts and their associated filings. After careful review, and for the following reasons, the Court: **grants in part** State Farm's motion for partial summary judgment (**ECF No. 184**) and **denies** both the Muse Defendants' motion (**ECF No. 172**) as well as Dr. Lorites's motion (**ECF No. 205**).

## 1. General Background

State Farm's allegations in this case arise out of claims for auto insurance benefits submitted by the Clinics, all licensed healthcare clinics in Florida, for services State Farm claims were unlawfully rendered. The claims at issue here were submitted to State Farm by the clinics between 2007 and 2018. State Farm maintains the Defendants, collectively and in concert, perpetrated a large-scale scheme to obtain no-fault or personal injury protection ("PIP") insurance benefits by misrepresenting to State Farm that the medical services billed for were lawfully rendered when they were not.

By way of background, Florida's Motor Vehicle No-Fault Law requires automobile insurers, like State Farm, to provide PIP coverage to victims of car accidents "for reasonable, necessary, related and lawful treatment, without regard to fault." *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015) (Moore, C. J.) (citing Fla. Stat. §§ 627.730–627.7405). Covered medical benefits include reimbursement only for "services and care that are lawfully provided, supervised, ordered or prescribed." Fla. Stat. § 627.736(1)(a)(1). To that end, Florida's No-Fault Law provides that "[a]n insurer . . . is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered." Fla. Stat. § 627.736(5)(b)(1)(b). Further, under Florida's No-Fault Law, "[a] statement of medical services may not include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." Fla. Stat. § 627.736(5)(d). An insurer is not required to pay a claim that is "not substantially" compliant with this requirement. Fla. Stat. § 627.736(5)(b)(1)(d).

State Farm's complaint, here, alleges common law fraud, FDUTPA violations, and unjust enrichment. The final count is for a declaratory judgment regarding bills that have been submitted to State Farm by the three Clinics but not yet paid. The following chart breaks down each count and the defendants to which they apply:

| Count | Claim | Clinic | Individuals | Doctors |
|---|---|---|---|---|
| 1 | Common Law Fraud | Health & Wellness | Beatriz and Lazaro | Goldstraj[2] and Franco[3] |
| 2 | Common Law Fraud | Medical Wellness | Beatriz, Lazaro, and Santos | Carrasco and Coll[4] |
| 3 | Common Law Fraud | Pain Relief | Beatriz and Lazaro | Lorites and Gomez-Cortes[5] |
| 4 | FDUTPA | Health & Wellness | Beatriz and Lazaro | Goldstraj and Franco |
| 5 | FDUTPA | Medical Wellness | Beatriz, Lazaro, and Santos | Carrasco and Coll |
| 6 | FDUTPA | Pain Relief | Beatriz and Lazaro | Lorites and Gomez-Cortes |
| 7 | Unjust Enrichment | Health & Wellness | Beatriz and Lazaro | Goldstraj and Franco |
| 8 | Unjust Enrichment | Medical Wellness | Beatriz, Lazaro, and Santos | Carrasco and Coll |
| 9 | Unjust Enrichment | Pain Relief | Beatriz and Lazaro | Lorites and Gomez-Cortes |
| 10 | Declaratory Judgment | All three Clinics | NA | NA |

According to State Farm, the bills submitted by the Clinics were unlawful on any number of bases: patient treatments were administered by employees who were not properly licensed to perform those services; none of the Clinics complied with Florida's record-keeping laws; the prescriptions for treatment the Clinics issued were invalid and unlawful; and the medical directors of the clinics did not comply with their legal obligations to prevent unlawful billing or ensure that the clinics engaged in a good faith effort to collect co-payments and

[2] Dr. Goldstraj is proceeding pro se. (Order, ECF No. 213.)

[3] The Clerk has entered a default against Dr. Franco with respect to all the counts against him (counts 1, 4, and 7). (Clerk's Def., ECF No. 73.)

[4] The Clerk has entered a default against Dr. Carrasco with respect to all the counts against him (counts 2, 5, and 8). (Clerk's Def. 73.) State Farm and Coll settled the dispute between them and filed a joint stipulation of dismissal as to the counts against Coll (counts 2, 5, and 8). (Jt. Stip., ECF No. 140.)

[5] The Clerk has entered a default against Dr. Gomez-Cortes with respect to all of the counts against him (counts 3, 6, and 9). (Clerk's Def., ECF No. 146.)

deductibles. State Farm maintains that all the Defendants, in one way or another, participated with perpetrating the scheme and benefited from the improper payments that resulted. More particularly, in the complaints, Beatriz and Lazaro are implicated in counts one through nine; Drs. Goldstraj and Franco and Health & Wellness are implicated in counts 1, 4, and 7; Santos, Dr. Carrasco, and Medical Wellness are implicated in counts 2, 5, and 8; Drs. Lorites and Gomez-Cortes and Pain Relief are implicated in counts 3, 6, and 9; and, finally, all three clinics are implicated in count 10, for declaratory relief.

## 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### 3. The Court grants, in part, State Farm's motion for partial summary judgment.

State Farm seeks the entry of partial summary judgment on all but its fraud claims, set forth in counts 1 through 3. Medical Wellness and the Muse Family, together, jointly oppose State Farm's motion. (Muse Defs.' Resp., ECF No. 195.) Health & Wellness and Dr. Goldstraj (as best the Court can discern) have adopted and joined the Muse Defendants' opposition. (ECF Nos. 211, 209.) Separately, Pain Relief has filed its own opposition. (Pain Relief's Resp., ECF No. 202). Dr. Lorites has adopted Pain Relief's response, as well as its "Statement of Disputed Facts, Affidavits of Gomez-Cortes, Collazo, and Diana Hernandez." (ECF No. 203.) State Farm has submitted replies, separately addressing the issues raised in the Muse Defendants' and Pain Relief's responses. (ECF Nos. 221, 226.)

In addition to the Defendants identified above, State Farm also seeks summary judgment against Defendants Drs. Franco, Carrasco, and Gomez-Cortes. As previously noted, however, the Clerk has entered defaults against these three Defendants. (ECF Nos. 73, 146.) State Farm offers no argument or support justifying the entry of summary judgment against these defaulting Defendants. Indeed, State Farm does not even acknowledge any procedural impediment to lumping in the defaulting Defendants together with the non-defaulting Defendants in a motion for summary judgment. This seems to reflect "a misunderstanding of the consequences of a clerk's default." *Great Am. Ins. Co. v. Delphini Constr. Co.*, 614CV1412ORL41DAB, 2016 WL 11565619, at *1–2 (M.D. Fla. Mar. 9, 2016). "[A] defendant's default does not in itself warrant the court['s] entering a default judgment. There must be a sufficient basis in the *pleadings* for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[6] (emphasis added). Here, State Farm "has provided no authority [that would] allow the Court to look beyond the pleadings in determining the propriety of default judgment." *Great Am. Ins. Co. v. Delphini Constr. Co.*, 614CV1412ORL41DAB, 2015 WL 13791707, at *2 (M.D. Fla. Sept. 28, 2015). The Court finds the more appropriate practice, then, would be for State Farm, once liability as to all the other Defendants has been resolved, to seek default judgments, as provided for by Federal Rule of Civil Procedure 55(b), against Drs. Franco, Carrasco, and Gomez-Cortes. As a preliminary matter, then, Court denies State Farm's motion for summary judgment with respect to these three Defendants.

---

[6] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

**A. The allegations State Farm sets forth in its statement of facts are largely either undisputed or deemed undisputed.**

The parties have also separately filed statements of material facts and various responses and replies thereto. As State Farm points out, though, the Defendants have largely failed to controvert State Farm's factual statements. The Local Rule, in effect at the time of the parties' summary judgment briefing, requires parties to support their factual statements with "specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits." L. R. 56.1(a)(2). Similarly, Federal Rule of Civil Procedure 56(c)(1)(A), requires parties to "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Further, unless an opposing party properly controverts a movant's material facts, the Court will deem that fact admitted—so long as the statement is otherwise supported by evidence in the record. L. R. 56.1(b).

The vast majority of the Defendants' responses to State Farm's statement of material facts fails to comply with either the Local Rules or the Federal Rules of Civil Procedure. For the most part, the Defendants have offered only conclusory, unsupported, and self-serving declarations in attempting to generate genuine issues of material fact. In many instances, the Defendants also fail to cite to any record evidence or, instead, they cite to entire documents, spanning multiple pages, without specifying where in the document the supporting evidence can be found.

For instance, in Dr. Lorites's response in opposition to State Farm's statement of facts, Dr. Lorites "denies" each of State Farm's allegations but cites only generally to his affidavit. He provides no direction to the Court as to where amongst the over 200 entries on the docket the Court might find the affidavit, nor does he provide any guidance as to which specific part of his affidavit supports his position. As such, Dr. Lorites's opposition to State Farm's statement of facts is deficient. The Court declines Dr. Lorites's counsel's invitation to do her work for her. The Court has no obligation to itself sift through the record in order to root out issues of material fact that the parties themselves have not bothered to identify. Dr. Lorites's "failure to comply with the Local Rules essentially leaves the Court with 'the functional analog of an unopposed motion for summary judgment.'" *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (Moore, C.J.) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008)).

Turning to Pain Relief's opposition to State Farm's statement of facts, the Court again deems admitted all of State Farm's supported allegations. To begin with, none of the affidavits Pain Relief cites to in support of its opposition are properly before the Court. First, Pain Relief relies on an affidavit supplied by Dr. Gomez-Cortes, one of the defaulting defendants in this case. But, despite

diligent efforts, State Farm was precluded from obtaining any discovery from Dr. Gomez-Cortes. Even in the face of the threatened penalty of default, Dr. Gomez-Cortes refused to comply with the Court's order that he provide discovery responses, produce documents, and appear for deposition. (Mag. J.'s Order Granting Mot. to Compel, ECF No. 114.) The Court will not consider the affidavit of a witness who is effectively a defendant's corporate representative but who refused to participate in discovery in any way. (Pain Relief's Resp. to Pls.' Mot. to Strike ¶ 3, ECF No. 249 ("Cortes is the corporate employee with the most knowledge regarding (a) Pain Relief's compliance with the Clinic Act— Cortes is the medical director—and (b) why the treatment at issue was prescribed. Thus, Pain Relief cannot defend itself without Cortes.").) Indeed, Pain relief "will not be permitted to glean an unfair advantage over [State Farm] by relying on [a] witness to whom [State Farm] did not have access during discovery." *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 566 (S.D. Fla. 2001) (Moore, J.); *see also Henriquez v. Total Bike, LLC*, 13-20417-CIV, 2013 WL 6834656, at *6 (S.D. Fla. Dec. 23, 2013) (Moreno, J.) ("[C]ourts have consistently held that the affidavit of a witness cannot be used to support or oppose summary judgment where the other party did not have the ability to depose the witness.").

Next, Pain Relief also offers the affidavits of witnesses Yaqueline Reyes and Diana Hernandez. Pain Relief never disclosed either witness, however, as individuals with knowledge which may be used to support a claim or defense as required under Federal Rule of Civil Procedure 26(a)(1)(A)(i). Instead, Pain Relief merely identified these two witnesses as its employees in response to State Farm's interrogatory. That is insufficient. Pain Relief's failure to properly disclose these witnesses was neither substantially justified nor harmless. *See, e.g. Rigby v. Phillip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017) (affirming the striking of an affidavit where a party failed to describe the subject of the witness's knowledge under Fed. R. Civ. P. 26(a)(1)(A)(i): "Plaintiffs' failure to disclose the contact information was perhaps excusable, but the failure to include a description of the witness's discoverable information was not. Defendants were not required to blindly search for suit-related information that Plaintiffs possessed but failed to disclose."). Certainly, without the disclosure, State Farm had no way of knowing that Pain Relief intended to use the knowledge possessed by these witnesses. *Id.*

Pain Relief also relies on an affidavit submitted by Daniel Collazo, an owner of Pain Relief. This affidavit, however, fails to comport with either Federal Rule of Civil Procedure 56 or Local Rule 56.1. Instead, the affidavit is wholly conclusory, self-serving, and fails to "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *Mursten v. Caporella*, 14-

60014-CIV, 2014 WL 4954118, at *6 (S.D. Fla. Oct. 2, 2014) (Cohn, J.), *aff'd*, 619 Fed. App'x 832 (11th Cir. 2015) (unpublished) (disregarding affidavit testimony where the court found the assertions therein were "untethered to any specific facts" and therefore "no more than unsupported legal conclusions and characterizations"). For example, in his affidavit, Collazo states that "insurance carriers do not pay medical insurance claims unless the treatment records are submitted with the billing." (Collazo Aff. ¶ 4, ECF No. 200-1, 1.) He also sets forth a number of issues in this case that he says State Farm "had notice of," for example: "the clinical findings of the treating physician"; "the therapy modalities"; the identities of the service provider of the therapy; the lack of x-ray results; and "whether or not the therapist followed the doctor's treatment plan." (*Id.* at ¶¶ 5–7.) Further, Collazo maintains, through his affidavit, that State Farm, in paying Pain Relief's claims without objection, failed to acknowledge any of the deficiencies it now complains of. (*Id.* at ¶ 8.) Collazo also asserts that Lazaro, "as a consultant for Pain Relief, . . . did not review, [or have] access to, patient medical records." (*Id.* at ¶ 10). In making these representations, Collazo fails to provide any foundation for his personal knowledge and is primarily opining about what he believes State Farm was aware of. Furthermore, Collazo pointedly admits in his affidavit that he does "not handle billing and collections" and instead only has "basic knowledge regarding how insurance claims are submitted." (*Id.* at ¶ 4.) As such, his conclusory allegations have no probative value and cannot support Pain Relief's statement of facts.

Lastly, Pain Relief also attempts to rely upon its amended written responses to State Farm's first request for production to counter State Farm's statement of facts. But Pain Relief has provided these amended responses long after the close of discovery. In doing so, Pain Relief fails to show that the late disclosure is either substantially justified or harmless. Permitting Pain Relief to rely on these amended written responses would be highly prejudicial to State Farm. In sum then, the Court disregards the totality of the record relied upon by Pain Relief in its opposition to State Farm's statement of facts as well as its own statement of additional facts. Without any other record evidence set forth by Pain Relief, State Farm's facts, so long as they are supported by the record, are also deemed admitted with respect to Pain Relief's opposition to State Farm's motion for summary judgment.[7]

Medical Wellness and the Muse Family's opposition to State Farm's statement of facts fared slightly better in attempting to controvert State Farm's allegations, but not by much. Much like Dr. Lorites, many of the Medical

---

[7] In addition to filing his own opposition, Dr. Lorites also adopted Pain Relief's opposition to State Farm's statement of facts. (ECF No. 203).

Wellness and Muse Family Defendants' attempts to dispute State Farm's allegations either failed to cite to the record at all or cited to lengthy documents in their entirety. For this reason, and to the extent State Farm's allegations are properly supported by the record it has provided in moving for summary judgment, the Court deems the following paragraphs admitted as to the Medical Wellness Defendants: 6, 13, 22, 25, 26, 30, 36–41, 43, 44–48, 49–50, 52–55, 57, 60, 62, 63, 65, 68–71, 75–78. (Pls.' Stmt. of Facts, ECF No. 183.) In other instances, the Medical Wellness and Muse Family Defendants have cited to a specific part of the record (or, at least, only one page of it) but they have nonetheless failed to actually controvert the fact presented. For example, in response to State Farm's allegation that Lazaro's $1000 per month car payment is made out of Pain Relief's operating account, the Defendants complain State Farm has improperly implied the payment was made "without consideration." (Muse Defs.' Stmt. of Facts Resp. ¶ 29, ECF No. 193, 4.) This does not controvert State Farm's allegation. Medical Wellness and the Muse Family's opposition to paragraph 51, 56, 58–59, 62, 67 is similarly deficient in that the cited material does not in any way refute State Farm's actual allegation. To the extent the remaining paragraphs are disputed, they are discussed below, in the following section.

Finally, Health & Wellness's opposition to State Farm's statement of facts fails, with very few exceptions, to comply with either Local Rule 56.1's or Rule 56's requirement that specific evidentiary support be presented where the movant's facts are challenged. Further, in the two instances where Health & Wellness did manage to supply a record citation, the citations were not responsive to the facts State Farm alleged. (Health & Wellness's Stmt. of Facts Resp. ¶¶ 51, 56.) Accordingly, to the extent State Farm's allegations are supported by its record evidence, they are all deemed admitted as to Health & Wellness as well.[8]

## B. Factual Background

Although the Court deems admitted many of State Farm's submitted facts, the "[C]ourt must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). "This requirement provides the Court an opportunity to address the merits of the motion." *Lugo*, 154 F. Supp. 3d at 1343. Where a fact was properly controverted, the Court will address it below. In assessing the facts deemed admitted, the Court confines its review to

---

[8] State Farm's allegations as to Dr. Goldstraj are also deemed admitted, to the extent they are supported by the record, because he failed to file any opposition whatsoever to State Farm's statement of facts.

the evidentiary materials relied upon by State Farm in support of its motion for summary judgment, but declines to consider the improperly submitted record relied upon by the Defendants. *Reese*, 527 F.3d at 1270 (stating that a district court may disregard materials submitted by a nonmoving party who fails to comply with the local rules regarding opposition to a movant's statement of facts). In light of the above, and taking into account the many facts State Farm alleges that are affirmatively admitted or undisputed by the Defendants, the Court presents the facts as follows.

During the relevant time periods, the Clinics were all active Florida corporations, licensed as healthcare clinics to treat patients who were injured in car accidents. (Pls.' Stmt. of Facts ¶¶ 1, 6, 10;.)

Prior to Lazaro's involvement with any of the Clinics, in 2001, he formed Muse Medical Center, Inc., despite not having any medical background or experience. (*Id.* at ¶ 13.) Lazaro ran Muse Medical, providing treatment to patients who were injured in car accidents. (*Id.*) Shortly after starting Muse Medical, Lazaro formed MARR Building Company, with three other people. (*Id.* at ¶ 14.) Thereafter, MARR purchased a commercial office building located at 2128 W. Flagler Street, in Miami, Florida. (*Id.* at ¶ 15.) A number of healthcare clinics, also treating car-accident patients, maintained their principal places of business at that office building. (*Id.*) While he owned the Flagler building, Lazaro became the administrator of another clinic, Injury Pain Release Center, Inc. (*Id.* at ¶ 16.) Injury Pain Release was also a tenant in the Flagler building and treated patients with PIP insurance. (*Id.*) While the administrator at Injury Pain Release, Lazaro hired and trained his sister, Beatriz, to work as the receptionist. (*Id.* at ¶¶ 3, 17.)

Lazaro and Beatriz worked at Injury Pain Release until shortly before it closed in 2009. (*Id.* at ¶ 18.) Before Injury Pain Release closed, however, Lazaro gave Beatriz $50,000 to start Health & Wellness (one of the defendant Clinics), in 2007. (*Id.*) Health & Wellness also rented space from MARR at Lazaro's Flagler building. (*Id.*) In getting Health & Wellness up and running, Beatriz used additional money from an account she shared with Santos, her husband. (*Id.* at ¶¶ 2, 18.) At the same time, Lazaro, through another company he owned—Advance Total Services, Inc.—worked as a consultant at Health & Wellness, advising the company on all aspects of the business. (*Id.* at ¶ 19.) Despite Lazaro's position as a consultant, Medical Wellness and the Muse Defendants dispute State Farm's claim that Lazaro hired Dr. Goldstraj as Health & Wellness's medical director.[9] (*Id.*)

---

[9] Although Medical Wellness and the Muse Family improperly cited to Lazaro's entire affidavit, the document itself is only two-pages long and the relevant testimony is readily identifiable. The Court thus accepts Lazaro's testimony that he "did not hire any of the medical directors for

Two years after Health & Wellness was formed, Santos formed Medical Wellness, using $60,000 from an account he shared with Beatriz. (*Id.* at ¶20.) Beatriz advised Santos regarding various aspects related to opening the clinic. (*Id.*) Like he did for Health & Wellness, Lazaro provided services as a business consultant for Medical Wellness. (*Id.*) Again, though, Lazaro denies hiring Dr. Carrasco.[10] (*Id.*)

After Health & Wellness was opened, another one of Lazaro's associates formed Pain Relief, yet another clinic. (*Id.* at ¶ 21.) An additional company owned by Lazaro, Better Life Home Health, was identified as Pain Relief's registered agent. (*Id.*) And, further, as he did for Health & Wellness and Medical Wellness, Lazaro served as Pain Relief's business consultant. (*Id.*)

All three Clinics—Health & Wellness, Medical Wellness, and Pain Relief— employed Anet Perez, upon Lazaro's recommendation, as their Florida Agency for Health Care Administration "consultant." (*Id.* at ¶22.) All three Clinics also, at various times, availed themselves of the services of Lazaro's accountant. (*Id.*) Additionally, both Health & Wellness and Medical Wellness employed Confidence Billing & Collections, Inc.—another company created by Beatriz and which identified Lazaro's company Better Life Home Health as its registered agent—to handle their billing services. (*Id.* at ¶¶ 23, 24.)

In 2010, Beatriz formed the Healing Hands Institute. (*Id.* at ¶ 25.) Lazaro is both a co-owner of Healing Hands and serves as its "outside administrator" as well. (*Id.*) Beatriz formed Healing Hands in order to train massage therapists. (*Id.*) Healing Hands works with its graduates to find job placements. (*Id.*) Indeed, Healing Hands has placed a number of massage therapists from its program in positions at Health & Wellness. (*Id.*) Collazo, one of the Pain Relief owners, said he used Healing Hands, upon Lazaro's advice, to renew his massage therapist's department-of-health licenses. (*Id.* at ¶ 26.)

Aside from the companies identified above, Lazaro also owns at least two other companies with ties to the Clinics: Advance Total Services, Inc. and Fresh Water Aquaculture, Inc. (*Id.* at ¶ 27.) During the time periods relevant to this case, the Clinics collectively paid hundreds of thousands of dollars to various companies owned by Lazaro: Health & Wellness paid $99,540 to Advance Total and $500 to Fresh Water; Medical Wellness paid $201,337.67 to Advance Total, $21,966.90 to Fresh Water, and $3,300 to Better Life; and Pain Relief paid

---

any of th[e] three clinics" as properly disputing State Farm's allegation on this point. (Lazaro Aff. ¶ 5, ECF No. 194-1, 2.) This disputed fact, however, ultimately has no effect on the Court's ultimate resolution of State Farm's motion.

[10] See note 9.

$203,381.46 to Advance Total. (*Id.* at ¶28.) Additionally, Pain Relief makes payments of over $1000 a month for Lazaro's car. (*Id.* at ¶ 29.)

Similarly, Beatriz and Santos, or companies they own, have also received money from Health & Wellness and Medical Wellness. In addition to the companies listed above, Beatriz also owns Florida Society of Phlebotomy Technicians. Health & Wellness has paid: $136,025.13 to Confidence Billing; $14,328.40 to Healing Hands; $8000 to Beatriz herself; and $10,498.30 to Florida Society. (*Id.* at ¶¶ 31–34.) Medical Wellness, in turn, has paid: $189,010.06 to Confidence Billing; $26,880.00 to Healing Hands; $23,307.85 directly to Beatriz; and $171,162.98 directly to Santos. (*Id.* at ¶¶ 31–33, 35.) Health & Wellness paid Drs. Goldstraj and Franco weekly while they served as medical director. (*Id.* at ¶ 76.) Likewise, Medical Wellness paid Drs. Carrasco and Coll weekly while they served as well. (*Id.* at ¶ 77.) Finally, Pain Relief periodically paid Dr. Lorites. (*Id.* at ¶ 78.)

All three Clinics submitted medical records to State Farm purporting to have provided mechanical traction, gait training, neuromuscular re-education, and therapeutic exercises to various patients alleged to have been involved in car accidents. (*Id.* at ¶ 36.) The only health-care practitioners the Clinics employed to perform these treatments, however, were licensed massage therapists. (*Id.* at ¶ 37.) Additionally, not only were therapy prescriptions issued by the Clinics not followed, but in some instances, patients received treatment that had not even been prescribed. (*Id.* at ¶ 38.) Even the Defendants' medical expert noted instances where a doctor ordered a therapy but the therapy was not actually ever administered. (*Id.* at ¶ 39; Suite Dep. 265:10–12.)

State Farm has identified several concerns regarding the Clinics' recordkeeping. For instance, at Medical Wellness, neither medical director— that is, neither Dr. Coll nor Dr. Carrasco—was familiar with all the requirements identified in the Florida statute that sets forth a clinic's recordkeeping requirements. (Pls.' Stmt. of Facts at ¶ 40.) Medical Wellness never provided Dr. Coll with any education regarding the law or regulations that apply to medical directors in Florida and Dr. Coll did not understand the full scope or intricacies of his responsibilities. (*Id.* at ¶ 41) Medical Wellness also never gave him any training; nor did it provide him with any of its policies. (*Id.*) Further, the Medical Wellness initial evaluation form only allows a patient's pain to be reported as "severe, moderate, and mild," rather than the standard one-through-ten pain scale. (*Id.*) The form also does not allow an examining provider space to identify a patient's specific areas of muscular or spinal pain. (*Id.*) Importantly, the Medical Wellness therapy order forms do not allow for an examining practitioner to document: the type of therapeutic

exercise to be prescribed; the types of manual therapy to be prescribed; the frequency or amplitude of the EMS or TENS therapies that should be applied; the type of mechanical traction that should be provided; or the length of time or the number of units that should be applied for each modality. (*Id.* at ¶ 44; Coll. Aff. ¶ 14(f)–(k); Carrasco Aff. ¶ 12(h)–(m).) Finally, the identified Medical Wellness patients' treatment plans lacked any documentation regarding the amount of time or the number of units each modality was to be applied. (Pls.' Stmt. of Facts at ¶ 46.)

The state of Pain Relief and Health & Wellness's records was similar. Pain Relief had no policies reflecting its record-keeping standards. (*Id.* at ¶ 47.) Nor did Pain Relief's identified patient treatment plans include any information regarding the amount of time or the number of units each modality was to be applied. (*Id.* at ¶ 50.) Neither Health & Wellness medical director—that is, neither Dr. Franco nor Dr. Goldstraj—was familiar with all the requirements identified in the Florida statute that sets forth a clinic's recordkeeping requirements. (*Id.* at ¶ 40.) Moreover, Dr. Franco, who has been Health & Wellness's medical director since 2013, did not know whether the clinic had maintained any records for the past five years. (*Id.* at ¶¶ 5, 52.) And both Drs. Franco and Goldstraj acknowledged that some of Health & Wellness's records were not legible. (*Id.* at ¶ 53.) Moreover, Dr. Goldstraj was unaware of any record-keeping policies and procedures Health & Wellness had in place and Dr. Franco said he did not know whether the clinic followed a policy regarding the preparation of medical records. (*Id.* at ¶ 55.) Additionally, Dr. Goldstraj admitted he was unfamiliar with any of Florida's record-keeping laws. (*Id.* at ¶ 56.)

Furthermore, Lazaro reviewed patient medical records for all three Clinics even though he was not responsible for doing so. (*Id.* at ¶¶ 43, 48, 54.) Additionally, none of the Clinics' records documented the results of patient x-rays or, accordingly, whether the results of the x-rays were ever used in prescribing or developing the patients' treatments. (*Id.* at ¶¶ 45, 49, 57.)

There is also no evidence that Health & Wellness or Pain Relief collected or even attempted to collect co-payments or deductibles from their patients. Andrelvis Perez, the Health & Wellness corporate representative, testified that he was not aware of the clinic's having ever accepted payments of any kind from any patients directly. (*Id.* at ¶ 58.) Indeed, Health & Wellness did not accept cash and did not have a credit card reader; nor had it ever sent a bill to any of its patients. (*Id.* at ¶¶ 59, 62.) Medical directors from Health & Wellness testified they had never seen any patient pay a co-payment or a deductible. (*Id.* at ¶ 60.) Neither Health & Wellness nor Pain Relief had any policies that instructed staff on how to actually collect co-payments or deductibles. (*Id.* at

¶¶ 61, 70.) In sum, there is no evidence that either Health & Wellness or Pain Relief made any real effort to collect co-payments or deductibles. (*Id.* at ¶¶ 61, 70.)

Similarly, Medical Wellness has no documentation reflecting its collection of co-payments or deductibles. (*Id.* at ¶ 64.) And the medical directors at Medical Wellness testified they never saw any patient pay a co-payment or deductible. (*Id.* at ¶ 63.) Nor does Medical Wellness have any policies that instruct staff on how to actually collect co-payments or deductibles. (*Id.* at ¶ 65.) Indeed, like Health & Wellness, Medical Wellness never sent a single bill to any of its patients. (*Id.* at ¶ 66.) Santos additionally testified that he himself was unable to differentiate between a co-payment and a deductible. (Pls.' Stmt. of Facts at ¶ 67.) Nonetheless, Santos also testified that he personally told every single Medical Wellness patient they needed to pay twenty percent of their bill and that many of these patients paid that amount in cash, directly to him. (Santos Vol. 1, 71:9–10; Dep. Vol. 2, 47:12–14, 48:9–15.) Conversely, Santos further testified that the front-desk personnel at the clinic were responsible for informing patients about and collecting the twenty percent (*Id.* at Vol. 2, 46:13 – 15, 47:7–11.)

In order to have their patients' claims processed, the Clinics submitted standardized "CMS 1500" forms to State Farm to obtain payment for the insureds' benefits. (Pls.' Stmt. of Facts at ¶ 72.) Health & Wellness has been submitting these forms to State Farm since 2007 and has continued to do so through the filing of this case; Pain Relief has been submitting these forms since 2010 and has also continued to do so through the filing of this case; and Medical Wellness submitted these forms from 2009 through 2017. (*Id.* at ¶ 73.)

Based on the representations in these forms, State Farm paid a total of $1,580,414.15 to Health & Wellness. (*Id.* at ¶¶ 74, 76.) Plaintiff State Farm Fire paid $315,902.55 of this amount ($306,958.92 during Dr. Goldstraj's tenure; and $8,943.61 during Dr. Franco's). (*Id.* at ¶¶ 74, 76.) And Plaintiff State Farm Mutual paid the remaining $1,263,511.60 ($1,070,337.35 during Dr. Goldstraj's tenure; and $194,174.25 during Dr. Franco's). (*Id.* at ¶¶ 74, 76.)

In addition, State Farm paid a total of $1,022,072.06 to Medical Wellness. (*Id.* at ¶¶ 74, 77.) Plaintiff State Farm Fire paid $156,317.64 of this amount (all paid during Dr. Carrasco's tenure). (*Id.* at ¶¶ 74, 77.) And Plaintiff State Farm Mutual paid the remaining $865,754.42 ($647,730.35 during Dr. Carrasco's tenure; and $221,302.66 during Dr. Coll's). (*Id.* at ¶¶ 74, 77.)

Lastly, State Farm paid a total of $320,566.94 to Pain Relief. (*Id.* at ¶¶ 74, 78.) Plaintiff State Farm Fire paid $226,084.25 of this amount ($145,326.15 during Dr. Lorites's tenure; and $80,758,10 during Dr. Gomez-

Cortes's). (*Id.* at ¶¶ 74, 78.) And Plaintiff State Farm Mutual paid the remaining $94,482.69 (all paid during Dr. Lorites's tenure). (*Id.* at ¶¶ 74, 78.)

**C. State Farm is entitled to summary judgment on its FDUTPA and unjust enrichment claims.**

Even viewing the record evidence in the light most favorable to the Defendants, the Court concludes there is no genuine issue of material fact ripe for determination at trial regarding State Farm's FDUPTPA and unjust enrichment claims. As set forth below, the services the Clinics billed State Farm for were unlawfully rendered and non-compensable. As more fully explained, also below, these findings alone are sufficient to entitle State Farm to relief on these claims.

**(1) *Unlawfully Rendered and Non-compensable Services***

(a) *Therapy Treatments Unlawfully Performed by Licensed Massage Therapists*

The only healthcare practitioners all three Clinics employed to provide the prescribed physical-therapy treatments were licensed massage therapists. (Pls.' Stmt. of Facts at ¶¶ 36–37.) But a licensed massage therapist's scope of practice does not permit him or her to perform anything but "massage," which is defined as "the manipulation of the soft tissues of the human body with the hand, foot, arm, or elbow, whether or not such manipulation is aided by hydrotherapy . . . or thermal therapy; any electrical or mechanical device; or the application to the human body of a chemical or herbal preparation." Fla. Stat. § 480.033; *see also Gov't Employees Ins. Co. v. Quality Diagnostic Health Care, Inc.*, 369 F. Supp. 3d 1292, 1299 (S.D. Fla. 2019) (Martinez, J.) ("[T]he practice of physical therapy generally requires licensure under the Physical Therapy Act.") Excluded from the scope of permissible services under this definition, then, according to State Farm, are treatments performed by the massage therapists at the Clinics: mechanical traction; gait training; neuromuscular reeducation; and therapeutic exercises. (Pls.' Stmt. of Facts at ¶¶ 36–37.)

Pain Relief, along with Medical Wellness and the Muse Family, disagree with State Farm's assessment, however, arguing the cited definition does not prevent a licensed massage therapist from rendering the physical therapy provided at the Clinics. In support, Pain Relief[11] looks to a statutory exemption

---

[11] Medical Wellness and the Muse Family provide no real argument and simply conclude, without any support, that "[n]one of the modalities performed by the [licensed massage therapists] . . . fell *outside* of the parameters of the [massage therapy] statute." (Medical Wellness et al.'s Resp. at 8 (emphasis in original).) To the extent this opposition warrants

that allows a Florida licensed massage therapist, among others, to "us[e] any physical agent as a part of, or incidental to, the lawful practice of her or his profession." Fla. Stat. § 486.161. Correspondingly, Pain Relief relies on several cases that indicate, generally, that a massage therapist can use certain "physical agents" to assist the massage therapist in performing massage. The Court finds this statutory exemption and the cases Pain Relief relies on inapplicable here.

To begin with, Pain Relief provides no support, nor is the Court aware of any, for Pain Relief's apparent contention that the therapies at issue in this case are akin to the "physical agent" identified in the statute. Further, there is no indication here that the Clinics' massage therapists were using any such "physical agents" as part of or "as incidental to their practice of massage." *Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 18-20921-CIV, 2019 WL 1992930, at *6 (S.D. Fla. Apr. 19, 2019) (Altonaga, J.) Instead, the facts here, as set forth above, show that the massage therapists at the Clinics were purportedly providing mechanical traction, gait training, neuromuscular reeducation, and therapeutic exercises to the Clinic patients. There is no record evidence that these therapies were in any way associated with, or even incidental to, any massage they were providing.

In two of the cases Pain Relief relies on, the courts address only the use of hot packs, electrical muscle stimulators, ultrasound therapy devices, and mechanical massage. *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 6:06-CV-1757-ORL-GJK, 2008 WL 11337326, at *6 (M.D. Fla. Dec. 18, 2008); *State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Florida, Inc.*, 881 So. 2d 557, 560 (Fla. 3d DCA 2004). As noted by those courts, such "simple modalities," were permissible because they were either used incidentally to the practice of massage therapy or were used to directly assist a physician with treatment. The treatments being billed for in this case go well beyond the mere use of "hot packs, electrical muscle stimulators, ultrasound therapy devices, and mechanical massage" and, again, are not incidental to any associated massage. To find otherwise would allow the limited exemption—for "physical agents" used "incidental to" massage—to permit massage therapists the unfettered right to practice physical therapy without a physical therapy license. *Quality Diagnostic Health Care*, 369 F. Supp. 3d at 1301 (noting that the exemption is "not an unfettered right for these enumerated professionals to practice physical therapy outside of their professional license," but, rather, "it is an exemption to allow these professionals the full use of their professional license, despite the fact certain services they may perform under their

---

addressing, the Court's consideration of it is subsumed within its analysis of Pain Relief's argument.

professional license are also regulated as the 'practice of physical therapy'"). Moreover, even if any of the identified services the massage therapists performed were technically legal, "the PIP statute . . . precludes reimbursement [for] massage therapists" who are performing physical therapy services. *Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc.*, 3D18-2030, 2020 WL 912938, at *3 (Fla. 3d DCA Feb. 26, 2020).

In sum, then, the Court finds the record evidence shows the Clinics, in concert with the individual Defendants, submitted bills to State Farm seeking reimbursement for non-compensable physical therapy services that were being performed by massage workers unlicensed to do so.

(b) *Noncompliant Record Keeping*

There are many recordkeeping requirements in Florida that apply to healthcare clinics and to the practice of medicine generally. For example, a licensed physician must maintain medical records "in English, in a legible manner and with sufficient detail to clearly demonstrate why the course of treatment was undertaken." Fla. Admin. Code r. 64B8-9.003(2). Moreover, a patient's "medical record shall contain sufficient information to identify the patient, support the diagnosis, justify the treatment and document the course and results of treatment accurately." Fla. Admin. Code r. 64B8-9.003(3). In order to sufficiently comply with this provision, the record must "include[e], at a minimum, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; reports of consultations and hospitalizations; and copies of records or reports or other documentation obtained from other healthcare practitioners." *Id.* A patient's medical records must be maintained for five years from the last patient contact. Fla. Admin Code R. 64B8-10.002(3).

The Clinics themselves are subject to various record-keeping standards as well. For example, each Clinic must appoint a medical director or clinic director as a "records owner" who must "develop and implement policies, standards, and procedures to protect the confidentiality and security of the medical record." Fla. Stat. §§ 400.9935(1)(e), 456.057(10). Any employee of these records owners must, in turn, "be trained in these policies, standards, and procedures." *Id.* Further, the patient records must be properly maintained to safeguard the patients' protected health information. *See* Fla. Stat. § 456.057(7)(a). To this end, "records owners are responsible for maintaining a record of all disclosures of information contained in the medical record to a third party, including the purpose of the disclosure request." Fla. Stat. § 456.057(11). As set forth above, the undisputed facts show the medical directors and the Clinics failed to comply with many of these requirements.

For example, Lazaro was permitted to review patient medical records at all the Clinics despite any evidence or indication from the record that he was in any way authorized to do so: he is not a healthcare practitioner or involved in the patients' care or treatment; there is no evidence any patient authorized Lazaro's inspection of the records; and there is no evidence Lazaro satisfied any of the statutory exceptions that would allow him access to the records. (*See* Pls.' Stmt. of Facts at ¶¶ 43, 48, 54.) Additionally, none of the Clinics' records documented the results of patient x-rays or, accordingly, whether the results of the x-rays were ever used in prescribing or developing the patient's treatments. (*Id.* at ¶¶ 45, 49, 57.) Moreover, the treatment plans for the patients at Medical Wellness and Pain Relief were deficient: they did not indicate the amount of time or units any particular treatment should be performed. (*Id.* at ¶¶ 46, 50.) Lastly, Medical Wellness did not maintain its patients' records for five years as required. (*Id.* at ¶ 42.)

Drs. Goldstraj and Lorites both served as medical directors, at Health & Wellness and Pain Relief, respectively, when these record-keeping requirements were not met. Indeed, Dr. Goldstraj testified he was unaware of any record-keeping policies and procedures Health & Wellness had in place and admitted he was unfamiliar with any of Florida's record-keeping laws. (*Id.* at ¶¶ 55–56.) And neither doctor, during their tenures, properly safeguarded the records as they were required to do as medical directors.

(c) *Invalid and Unlawful Prescriptions for Treatment*

At each Clinic, patients received unlawful prescriptions for treatment. Under Florida law, a prescription must justify the court of treatment to be valid and lawful. Fla. Admin. Code r. 64B8-9.003(2)–(3). Indeed, a physician may face disciplinary action or the denial of licensure for a failure to "keep legible . . . medical records . . . that justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations." Fla. Stat. § 458.331(1)(m). Each Clinic issued prescriptions for treatment which were not followed. (Pls.' Stmt. of Facts at ¶ 38.) Such a deviation from Florida law renders the Clinics' prescriptions unlawful.

(d) *Copayments and Deductibles*

In order to prevent violations of Florida's Insurance Fraud Statute, medical directors must also ensure copayments and deductibles are collected by their clinics. *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1164 n. 7. When copayments and deductibles are not collected, healthcare providers have less

incentive not to administer excessive and unnecessary care. Correspondingly, "if insureds are required to pay a deductible every time they visit a medical clinic, they will be less likely to make unnecessary visits to the medical clinic." *United Auto. Ins. Co. v. Florida Wellness & Rehab. Ctr.*, 08-20348-CIV, 2009 WL 10667729, at *2 (S.D. Fla. Feb. 11, 2009) (Lenard, J.). The Court finds that on the record before it, it is undisputed that the Clinics here, under the direction of the medical director defendants, including Drs. Goldstraj and Lorites, failed to make any real effort to collect co-payments and deductibles. (Pls.' Stmt. of Facts at ¶¶ 58–63, 65–68, 70.) This failure is readily apparent with respect to Health & Wellness and Pain Relief.

In some contrast, Medical Wellness's failure is a closer call. Santos testified that he personally asked every Medical Wellness patient, verbally, to pay twenty percent of their final bill. (Santos Dep. Vol. 2, 48:9–13.) He also maintained Medical Wellness's front-desk staff, on the one hand, "inform[ed] patients about the twenty percent" (*id.* at 47:7–11), but on the other only gave them a copy of their bill if they specifically asked for it (*id.* at 46:6–12). At the same time, Santos said that it was the "front desk person['s]" job to collect twenty-percent from patients (*id.* at 46:13–15), but also maintained it was not the front-desk staff's responsibility to actually do so. (*Id.* at 47:12–14.) Santos says he pointedly told patients not to pay until after the insurance company had paid eighty percent of the bill (*id.* at 48:13–15) and acknowledged that patients paid only in cash and only "little by little according to their possibility [sic]." (*Id.* at 47:16–18.) Notably, Santos acknowledged there is no documentation reflecting either his efforts to collect or any cash payments Medical Wellness purportedly received. (Pls.' Stmt. of Facts at ¶ 64.)

In viewing this evidence and all factual inferences reasonably drawn from it in the light most favorable to Medical Wellness and Santos, the Court finds Santos's testimony still does not raise a *reasonable* doubt as to Medical Wellness's noncompliance with the statute requiring it to establish a general business practice of collecting deductibles and copayments. *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1351 (S.D. Fla. 2015) (Moore, C.J.) (noting that "only *reasonable* doubts are to be resolved in favor of the non-moving party") (emphasis in original). Under Florida Statute section 817.234(7)(a), service providers must not "engage in a general business practice" of failing to collect deductibles and copayments. In determining whether a healthcare provider has engaged in such a practice, courts must consider evidence showing whether the provider "made a good faith attempt to collect such deductible or copayment." Fla. Stat. § 817.234(7)(a). Even upon reading the evidence in the light most favorable to Medical Wellness and Santos, the Court does not discern a genuine issue for trial on this matter:

Santos's testimony, even assuming it is fully believed, at most reveals a half-hearted attempt to inform patients about the deductibles generally and even less of an attempt to actually collect them. Indeed, by Santos's own admission, these efforts resulted in, at most, some patients paying some portion of their deductibles. This does not demonstrate a general business practice at Medical Wellness of making a good-faith effort to collect deductibles and copayments. This is especially so in the face of the unrebutted evidence showing Medical Wellness (1) did not have any formal policies instructing staff on collecting deductibles and copayments, (2) never sent out a single bill to any patient, and (3) did not have any documentation showing it ever collected a deductible, and Santos's acknowledgment that he did not know the difference between a deductible and a copayment. Ultimately, the Court finds this "[f]ailure to make a good-faith effort to collect co-payments is 'insurance fraud' that renders the charges submitted to State Farm . . . unlawful and noncompensable." *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1164 n. 7 (citing Fla. Stat. §§ 627.736(5)(b)(1)(b), 817.234(7)(a)).

### (2) *FDUTPA*

State Farm maintains the Defendants, collectively, violated FDUTPA by submitting invoices to State Farm that were unlawful, unenforceable, and non-compensable. According to State Farm, the medical directors—the six defendant doctors—all failed to comply with their statutory obligations which rendered their bills unlawful and non-compensable. Further, says State Farm, Beatriz, Lazaro, and Santos were all directly in control of the operations at one or more of the Clinics, either as owners, billers, or consultants.

In opposition, the Muse Defendants (joined by Health & Wellness and Dr. Goldstraj) maintain (1) various factual disputes preclude the entry of summary judgment and (2) FDUTPA is not implicated here because FDUTPA only covers the consumer relationships between State Farm and its insureds—that is, the patients. (Medical Wellness et al.'s Resp. at 9–10.) Pain Relief, through its opposition (joined by Dr. Lorites), in turn, maintains there is a question of fact as to whether State Farm knew or should have known about the deficiencies in the claims Pain Relief submitted. (Pain Relief's Resp. at 5.) According to Pain Relief, there remains a question of fact regarding whether State Farm acted reasonably, under the circumstances, in paying the claims. (*Id.* at 4–5.) After careful review, and in light of the overwhelming and unrebutted evidence presented, the Court agrees with State Farm that there are no genuine issues of material fact with respect to its FDUTPA claims.

"To establish a claim under the FDUTPA, State Farm must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Med.*

*Serv. Ctr. of Fla.*, 103 F. Supp. 3d at 1354. "A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (quotations omitted). "[D]eception may be accomplished by innuendo rather than outright false statements." *Millennium Commun. & Fulfillment, Inc. v. Off. of Atty. Gen., Dept. of Leg. Affairs, State of Fla.*, 761 So. 2d 1256, 1264 (Fla. 3d DCA 2000).

To determine whether an act is deceptive or unfair, Florida law applies an objective test: "whether the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances, rather than actual reliance on the representation or omission at issue." *Vazquez v. Gen. Motors, LLC*, 17-22209-CIV, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018) (Gayles, J.) (quotations omitted). FDUTPA does not impose liability solely on corporate entities; rather, a FDUTPA claim against individuals may proceed so long as the "aggrieved party . . . alleges that the individual was a direct participant in the improper dealings." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1288 (M.D. Fla. 2009); *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th Dist. App. 2008) ("In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a direct participant in the dealings.")

The undisputed facts presented here overwhelmingly show that the billing forms submitted to State Farm regarding medical services allegedly provided to their insureds were deceptive. The Defendants, in submitting the forms, duped State Farm into paying for services that were actually unlawfully rendered and non-compensable. *See, e.g.*, *DG Esthetic & Therapy*, 2019 WL 1992930, at *5 (concluding that insurers, like State Farm, are not required to pay a claim for medical services performed by a person who was not actually validly licensed to perform those services). As set forth above, the Clinics, with the direct participation of the medical director Defendants and the Muse Family, operated in violation of numerous Florida laws, rules, and regulations promulgated specifically to protect the general welfare of their patients. These deficiencies include the most basic and fundamental aspects of rendering healthcare services: using appropriately licensed practitioners; maintaining adequate medical records; employing competent and legally compliant medical directors; and collecting patient payments.

Medical Wellness and the Muse Family's arguments in opposition are unavailing. To begin with, they maintain State Farm cannot lodge a FDUTPA claim because State Farm is not a "consumer" as defined by the statute. They also argue that even if State Farm qualified as a "consumer," it could only seek

redress against the Clinics and not against any of the individual Defendants. Both contentions are without merit.

As previously addressed in the Court's order denying some of the Defendants' motions to dismiss (ECF No. 113), State Farm is not required to be a "consumer" to allege a FDUTPA claim. *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2018 WL 1535719, at *5 (M.D. Fla. Mar. 29, 2018) ("FDUTPA claims are not limited to consumers."). In fact, amendments to the Act in 2001, "indicate[] that the [Florida] legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). Thus, State Farm's lack of "consumer" status in no way bars its FDUTPA claims.

Likewise, FDUTPA claims are not limited to suits against corporate entities alone. Nor, as the Muse Family argues, must an individual defendant be in privity with a plaintiff to be implicated in a FDUTPA claim. Indeed, "it has long been the law in Florida that in order to proceed against an individual," as opposed to a corporate entity, for a FDUTPA violation, "an aggrieved party must allege that the individual was a direct participant in the improper [corporate] dealings." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008). It is unnecessary to pierce the corporate veil where an individual defendant was a direct participant in the complained of dealings. *Id.* (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 582 (Fla. 3d DCA 1984)). Based on the record here, there is abundant evidence that the individual Muse Family Defendants were direct participants in the deceptive billing at issue here and, therefore, they are proper defendants in this case.

Pain Relief's arguments in opposition are also unavailing. First, Pain Relief submits State Farm either knew or should have known of the deficiencies in the claims Pain Relief submitted and therefore State Farm was not really misled or deceived. (Pain Relief's Resp. at 5.) In support of its argument, Pain Relief relies on an affidavit it procured from Daniel Collazo, an owner of the Pain Relief clinic. But as set forth above, in section 3.A., the Court finds the entirety of this declaration conclusory and wholly lacking in probative value. As such, the Court concludes Pain Relief's argument is without any factual support. Thus, even if Pain Relief's argument had legal merit—which is questionable, at best—its contention would still fail based on its failure to supply admissible evidence to maintain its position.

Pain Relief also complains that State Farm's summary-judgment motion presents arguments based on unpleaded theories, namely that Pain Relief was operating in violation of various Florida statutory provisions and that it did not

collect copayments or deductibles. (Pain Relief's Resp. at 7.) But State Farm's complaint clearly alleges Pain Relied failed to properly submit its claims and abide by Florida law in running its clinic. The facts State Farm submits in support of its motion merely substantiate the complaint's allegations. These are not, as Pain Relief urges, new theories.

In sum, then, State Farm has shown that it is entitled to judgment as a matter of law and there is no genuine issue of material fact with respect to its FDUTPA claims against all the non-defaulting Defendants. The claims submitted by the Clinics were universally non-compensable based on the Clinics' recordkeeping improprieties and failures to make a good faith effort to collect copayments and deductibles. Additionally, vast subsets of these claims sought reimbursement for unlawfully rendered services where massage therapists purportedly administered physical therapies that they were unlicensed to perform and where prescriptions for treatment were issued but not followed. The repeated submissions, through the concerted transactions and dealings of the Defendants, of what are, at bottom, non-compensable invoices to State Farm, were deceptive practices that the Court finds violate FDUTPA.

### (3) *Unjust Enrichment*

State Farm also maintains it is entitled to summary judgment on its unjust enrichment claims based on the Defendants' rendering of unlawful and non-compensable services, as set forth above. To prevail on its claim for unjust enrichment, State Farm must show (1) it has conferred a benefit on the Defendants, who have knowledge thereof; (2) the Defendants voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the Defendants to retain the benefit without paying the value thereof to State Farm. *Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d at 1355. In opposition, Pain Relief submits State Farm's unjust enrichment claims fail because "State Farm voluntarily paid the claims with notice of the alleged illegalities that it now complains of." (Pain Relief's Resp. at 6.) Medical Wellness and the Muse Family, on the other hand, maintain State Farm's unjust enrichment claim fails because (1) State Farm has an adequate remedy at law and therefore is not entitled to equitable relief and (2) State Farm's unjust enrichment claim can only apply to the Clinics themselves and not the individual Defendants. (Muse Family Resp. at 10.)

Pain Relief's position is unavailing. To begin with, Pain Relief's voluntary-payment argument relies on affidavits that the Court has declined to consider, as set forth in section 3.A. Without these affidavits, Pain Relief lacks any factual support for its position. Furthermore, and as Pain Relief acknowledges,

the voluntary-payment doctrine is an affirmative defense. (Pain Relief's Resp. at 6 n. 9.) As State Farm points out, however, Pain Relief never pleaded this affirmative defense in its answer. Ordinarily, the failure to plead an affirmative defense results in the waiver of the defense. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense.") Nonetheless, a court may still consider an unpleaded affirmative defense if it is shown the plaintiff has suffered no prejudice. *Miranda de Villalba v. Coutts & Co. (USA) Intern.*, 250 F.3d 1351, 1353 (11th Cir. 2001). Here, Pain Relief maintains State Farm has suffered no prejudice because "State Farm's entire case is entirely based on the submissions it used to adjust the claims." (Pain Relief's Resp. at 6 n. 9.) Pain Relief fails to explain, though, why State Farm's reliance on these "submissions" translates into a lack of prejudice. Furthermore, Pain Relief has not offered any justification for its failure to plead its voluntary-payment affirmative defense. In sum, even if Pain Relief's voluntary-payment defense had any substantive merit, it would nonetheless fail (1) for want of factual support and (2) based on waiver.

Medical Wellness and the Muse Family's opposition is also unavailing. To begin with, they fail to supply a single legal authority to support their position that State Farm is not entitled to equitable relief or that such relief can only apply to the clinics. *See Brown v. NCL (Bahamas) Ltd.*, 15-21732-CIV, 2016 WL 8716482, at *5 (S.D. Fla. Oct. 13, 2016) ("Motions devoid of any legal authority or a supporting memorandum of law are due to be denied or stricken.") More importantly, their arguments lack merit. Notably, the general unavailability of equitable remedies when adequate legal remedies exist "does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014). Rather, an unjust enrichment claim is foreclosed only where the parties are bound by an express contract. *Id.* Here, there is no such contract and "[t]hus, the availability of Plaintiffs' FDUTPA claim does not require dismissal of its unjust enrichment claim." *Harris v. Nordyne, LLC*, 14-CIV-21884, 2014 WL 12516076, at *7 (S.D. Fla. Nov. 14, 2014) (Bloom, J.). Additionally, the Court is not persuaded that liability under State Farm's unjust enrichment claims should apply only to the Clinics and not to the individual Defendants themselves. Notably, "there is significant case law holding that a defendant is *not* required to individually receive payments in order for a cause of action for unjust enrichment to exist." *State Farm Mut. Auto. Ins. Co. v. B & A Diagnostic, Inc.*, 104 F. Supp. 3d 1366, 1375–76 (S.D.

Fla. 2015) (Moore, C.J.). The unjust benefit need not flow directly to a defendant to establish liability. *Id.*

In sum, the undisputed facts establish that State Farm conferred a benefit on the Defendants. The facts show that State Farm directly rendered payments to the Clinics and then the Clinics, in turn, provided salaries and other payments to the Muse Family members and the medical directors. (Pls.' Stmt. of Facts at ¶¶ 76–8.) There is no dispute that the Defendants were all aware of, accepted, and retained the benefits State Farm conferred. Finally, the undisputed facts show the services billed for were not lawfully rendered and therefore were non-compensable. It would therefore be inequitable for the Defendants to retain benefits "that [they were] not legally entitled to receive in the first place." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). State Farm has established its entitlement to summary judgment in its favor on its unjust enrichment claims while the Defendants have failed, in response, to show there is any genuine issue for trial.

## D. Statute of Limitations

Pain Relief and Dr. Lorites, separately, maintain the statute of limitations bars State Farm's claims against them. Pain Relief raises this argument both in the context of warding off State Farm's motion for summary judgment as well attempting to move for partial summary judgment within its response. (Pain Relief's Resp., ECF No. 202.) Dr. Lorites, on the other hand, raises his statute of limitations defense only in his motion for summary judgment. (Dr. Lorites's Mot., ECF No. 205.) Both Defendants' arguments fail.

To begin with, Pain Relief and Dr. Lorites's contention that State Farm cannot prevail on its motion for summary judgment because it failed to proactively address their affirmative defenses is meritless. Simply reciting an affirmative defense in an answer is inadequate. "On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable." *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (Ungaro, J.); *see also Singleton v. Dep't of Corr.*, 277 Fed. App'x 921, 923 (11th Cir. 2008) ("[T]he burden of establishing an affirmative defense lies on the *defendant,* not on the plaintiff . . . .") (emphasis in original). A defendant must therefore establish an initial entitlement to the affirmative defense before a plaintiff must rebut that showing.

Next, to the extent Pain Relief and Dr. Lorites seek to establish a genuine issue of material fact with respect to their statute of limitations defenses, their attempts fail. Pain Relief and Dr. Lorites maintain that, with respect to invoices

submitted to State Farm between June 2010 and April 2013, State Farm's FDUTPA and unjust enrichment claims are time barred. And, indeed, neither party disputes that claims on these invoices are subject to a four-year statute-of-limitations period. State Farm, rather, maintains its claims did not accrue until July 2018, when it finally discovered the Defendants' scheme. (Pls.' Resp. to Dr. Lorites's Mot. at 238.) In support of its contention, State Farm points to the doctrine of fraudulent concealment. In opposition, without citing to any actual supporting evidence, Dr. Lorites simply insists "State Farm [was] on notice of the alleged illegalities from the onset," having full possession of all the medical records and claims forms, and therefore "knew or should have known of any allegations of fraud or misconduct well prior to the expiration of any statute of limitations." (Dr. Lorites's Mot. at 5.) This is insufficient.

To invoke fraudulent concealment, a plaintiff must show that a defendant "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So.2d 809, 811 (Fla. Dist. Ct. App. 1995)). Here, State Farm has presented facts establishing that Pain Relief and Dr. Lorites made affirmative misrepresentations—that the services rendered were lawful and compensable—in the invoices submitted to State Farm. (Pls.' Resp. to Dr. Lorites's Mot. at 7.) State Farm has also established that these misrepresentations were intended to conceal the actual facts from State Farm—otherwise State Farm would not have paid the claims. (*Id.*) This suffices to establish fraudulent concealment. *See Berisford*, 667 So. 2d at 812 (finding fraudulent concealment where a defendant pharmacy's affirmative misrepresentation in medical records was intended to conceal facts from the plaintiff). In the face of these undisputed facts, neither Pain Relief nor Dr. Lorites has come forward with any record evidence which shows that State Farm should have been on notice of the Defendants' schemes prior to July 2018.

As Pain Relief and Dr. Lorites have failed to establish any genuine issue of material fact with respect to their statute-of-limitations defenses, they have not even come close to prevailing on their own motions for summary judgment. Thus, to the extent either of them seeks summary judgment in their favor as to the specified invoices based on the statute of limitations, the Court denies their motions.

### E. Declaratory Relief

Finally, State Farm maintains it is entitled to a declaration that it is not required to pay the Clinics' outstanding invoices. In opposing State Farm's request for declaratory relief, Medical Wellness cites to Florida Statutes section

86.011 and then complains State Farm has failed to allege uncertainty as to any of its rights. (Muse Defs.' Resp. at 10.) Medical Wellness also suggests declaratory relief here is unnecessary because the Clinics have not counterclaimed for invoices that remain unpaid. (*Id.* at 10–11.) At least in the context of this case, Medical Wellness's arguments are virtually unintelligible.

The law in this circuit is well settled that insurers like State Farm are not obligated to pay bills submitted by a clinic that is operating unlawfully. *See, e.g., Silver Star Health & Rehab*, 739 F.3d at 584 ("Under Florida law State Farm was entitled to seek a judicial remedy to recover the amounts it paid Silver Star *and to obtain a declaratory judgment* that it is not required to pay Silver Star the amount of the outstanding bills.") (emphasis added); *Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d at 1356 (granting declaratory relief on insurer's motion for summary judgment where insurer established the defendant clinics submitted bills for services that were not lawfully provided). As recounted by the facts above, the Court finds there is no genuine dispute that the Clinics were operating unlawfully. Indeed, with respect to State Farm's request for declaratory relief, Medical Wellness does not in any way rebut State Farm's contention in this regard. The Court thus finds State Farm is entitled to a declaration that it is not obligated to pay any of the Clinics' outstanding invoices for pending claims.

## F. Damages

State Farm has set forth, through its motion for summary judgment and statement of facts, that the Defendants were not legally entitled to receive the payments identified in exhibits 42 through 46 to the amended complaint. (ECF Nos. 6-42 through 6-46; Pls.' Stmt. of Facts at ¶¶ 76–78.) State Farm Fire's payments are summarized as follows:

| Clinic | Associated Medical Director | Amount |
|---|---|---|
| Health & Wellness | Dr. Goldstraj | $306,958.93 |
| Health & Wellness | Dr. Franco | $8,943.61 |
| Medical Wellness | Dr. Carrasco | $156,317.64 |
| Pain Relief | Dr. Lorites | $145,326.15 |

(Pls.' Mot. at 21.) State Farm Mutual's payments are also summarized:

| Clinic | Associated Medical Director | Amount |
|---|---|---|
| Health & Wellness | Dr. Goldstraj | $1,070,337.35 |

| Health & Wellness | Dr. Franco | $194,174.25 |
|---|---|---|
| Medical Wellness | Dr. Carrasco | $647,730.35 |
| Medical Wellness | NA | $221,302.66 |
| Pain Relief | Dr. Lorites | $94,482.69 |
| Pain Relief | Dr. Gomez-Cortes | $80,758.10 |

(*Id.*) As State Farm has shown, Lazaro, Beatriz, and Santos's involvement with the schemes perpetrated by the Clinics was such that (1) Lazaro is jointly and severally liable for all of the amounts listed above; (2) Beatriz is jointly and severally liable for all the payments made to both Health & Wellness and Medical Wellness; and (3) Santos is jointly and severally liable for all the amounts paid to Medical Wellness. As for the medical directors who have not been defaulted or dropped from this case, State Farm has similarly shown that, as indicated above, (1) Dr. Goldstraj is jointly and severally liable for State Farm's payments to Health & Wellness during his tenure; and (2) Dr. Lorites is jointly and severally liable for State Farm's payments to Pain Relief during his tenure. Notably, none of the Defendants has disputed the amounts listed above.

### 4. The Court denies Medical Wellness and the Muse Family's motion for summary judgment.

Medical Wellness and the Muse Family (the "Muse Defendants") seek summary judgment on several bases. (Muse Defs.' Mot., ECF No. 172.) First, they attack State Farm's fraud claims, as set forth in counts one through three, complaining State Farm (1) failed to comply with the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b) and (2) failed to come forward with any evidence supporting their claims of fraud. Next, the Muse Defendants argue State Farm's FDUTPA claims, as set forth in counts four through six, fail because there is no consumer relationship between State Farm and the Muse Defendants. Third, the Muse Defendants complain State Farm has not demonstrated its entitlement to a declaratory judgment. Lastly, the Muse Defendants set forth a series of eleven "points" they maintain justify dismissal or summary judgment as to various Defendants and "issues." After review, the Court finds the Muse Defendants' motion meritless.

To begin with, much of the Muse Defendants' argument centers on what they describe as pleading deficiencies in State Farm's complaint. In other words, they attempt to argue State Farm failed to state claims upon which relief can be granted through a motion for summary judgment. This is procedurally improper and impermissible: a motion asserting a "failure to state

a claim upon which relief can be granted . . . *must* be made before pleading."
Fed. R. Civ. P. 12(b)(6) (emphasis added). The Muse Defendants have all
answered the complaint and therefore their opportunity to test the sufficiency
of the complaint's allegations has passed. As an initial matter, then, the Court
denies the Muse Defendants' motion to the extent their position rests on State
Farm's purported failures to state claims upon which relief may be granted.

## A. The Muse Defendants fail to carry their burden of establishing their entitlement to summary judgment on State Farm's fraud claims.

The Muse Defendants maintain State Farm's fraud claims fail because State
Farm has not presented any evidence of (1) what false statements each
Muse Defendant knowingly made to State Farm; (2) the materiality of any of
those statements; and (3) State Farm's reliance on those statements. (Muse
Defs.' Mot. at 5.) With respect to the Muse Defendants' first point, they appear
to misapprehend the law. A plaintiff pursuing a fraud claim need not show that
each defendant *personally* made the misrepresentations at issue in the case.
Instead, "all knowing participants in a fraudulent scheme are legally liable for
the actions of an individual who acts to carry out the scheme." *United States v.
Gonzalez*, 404 Fed. App'x 403, 405 (11th Cir. 2010); *see also State Farm Mut.
Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995, at *6 (S.D. Fla. Mar.
30, 2017) (Marra, J.) (finding a fraud claim viable against a supplier of durable
medical units who never made any statements directly to State Farm but who
was nonetheless alleged to be part of the fraud scheme); *State Farm Mut. Auto.
Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 611-CV-1373-ORL-31GJ,
2011 WL 6450769, at *4 (M.D. Fla. Dec. 21, 2011) (agreeing that "everyone who
knowingly participates in a fraud scheme will be liable for the conduct of their
co-schemers even if some participants do not make the fraudulent
statements").

Here, the Muse Defendants do not dispute that State Farm has presented
abundant evidence showing Medical Wellness submitted thousands of claims
forms which represented the services billed for were medically necessary and
lawfully rendered. (Pls.' Resp. at 5.) State Farm has also presented substantial
record evidence indicating "the services rendered at Medical Wellness were
performed in violation of a litany of Florida law and regulations." (Pls.' Resp. at
5 (citing to Pls.' Stmt. of Facts and Mot. for Partial Summ. J.).) In response to
that evidence, the Muse Defendants counter merely that (1) Medical Wellness
was properly incorporated in Florida; (2) Medical Wellness hired licensed
physicians to act as its medical directors; (3) Medical Wellness obtained AHCA
licenses for its operations; (4) Santos testified that Medical Wellness "patients
were diagnosed, then treated and the billings were accurate." (Muse Defs.' Mot.

at 12.) The Muse Defendants' first three points here are not responsive to State Farm's evidence and have no bearing on whether Medical Wellness billed for illegally rendered services. Further, the Muse Defendants grossly mischaracterize Santos's cited deposition testimony. Regardless, the evidence the Muse Defendants present does not even come close to showing an absence of any genuine issue of material fact regarding their contention that Medical Wellness "was in full compliance with Florida law." (*Id.*)

Next, State Farm has presented ample evidence that the individual Muse Family members were direct participants in Medical Wellness's scheme. For example, State Farm's record evidence shows Lazaro served as the "business consultant," consulting on "all aspects of the business" at Medical Wellness; Beatriz performed Medical Wellness's billing, through one of her other companies; and Santos was the owner of Medical Wellness. The Muse Defendants have not even come close to establishing a lack of any genuine issue of material fact regarding the Muse Family's knowing participation in the scheme State Farm alleges.

The Muse Defendants also miss the mark with respect to their second point, as to the materiality of the misrepresentations in Medical Wellness's claims forms. State Farm was prompted to issue payment to Medical Wellness based on the forms Medical Wellness submitted. There is record evidence showing that these forms sought payment for medical services that were unlawfully rendered. Importantly, as shown by State Farm's evidence, the forms submitted require the medical provider to attest to the medical necessity and lawfulness of the claim submission. This evidence, at a minimum, establishes the materiality of the alleged misrepresentations.

Lastly, State Farm has submitted what appears to be uncontroverted evidence that State Farm relied on the claims forms Medical Wellness submitted in rendering payment. *See Physicians Injury Care Ctr.*, 427 Fed. App'x at 720 (finding reliance where the insurer's legal analyst testified that the insurer "only pays a claim for PIP benefits if a bill is submitted and that a claim adjuster relies on the accuracy of the bill in processing the claim"). Indeed, the Muse Defendants' only response to State Farm's showing regarding reliance is to once again fall back on their position that none of the individual Muse Family members themselves made any misrepresentative statements to State Farm. As set forth above, such direct contact is not necessary so long as the defendants knowingly participated in the fraudulent scheme. *See Gonzalez*, 404 Fed. App'x at 405 ("all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme.")

**B. The Muse Defendants fail to carry their burden of establishing their entitlement to summary judgment on State Farm's FDUTPA.**

The Muse Defendants argue they are entitled to summary judgment on State Farm's FDUTPA claims because State Farm has not adduced evidence of the necessary "consumer relationship" between State Farm and the Muse Defendants. This argument is unavailing. Again, "it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *Ft. Myers Total Rehab Ctr.*, 657 F. Supp. 2d at 1288 (quotations omitted). State Farm has adduced abundant evidence indicating that all four Muse Defendants were direct participants in the "improper dealings."

The Muse Defendants, like they did in response to State Farm's motion for summary judgment, again argue State Farm's FDUTPA claims fail because State Farm is not a "consumer." For the same reasons as were set out above, in section 3.C.(2), the Muse Defendants miss the mark. State Farm need not be a "consumer," as that term is defined by the statute, in order to prevail on a FDUTPA claim.

Similarly, the Muse Defendants' contention that State Farm's claim fails because they did not participate in "trade or commerce" with State Farm is without merit. FDUTPA's definition of "trade or commerce" encompasses the provision of healthcare services. On its face, the definition of "trade or commerce" includes the "providing . . . of any good or service . . . whether tangible or intangible." Fla. Stat. § 501.203(8). The definition of "trade or commerce" is considered to be "quite broad." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008) (Lenard, J.). Further, the Act itself requires its provisions to be "construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). And, to be sure, courts have not hesitated to allow insurers to pursue FDUTPA claims under similar circumstances. *See, e.g.*, *Physicians Injury Care Ctr.*, 427 Fed. App'x at 723 (affirming jury verdict in favor of insurer on its FDUTPA claims against a clinic, its medical director, and office manager); *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017) (Gayles, J.) (granting summary judgment in insurer's favor against clinic owner where the court found "[f]raudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA"). In short, the Muse Defendants' attempt to show that they are entitled to summary judgment on this basis falls flat.

## C. The Muse Defendants fail to carry their burden of establishing their entitlement to summary judgment on State Farm's request for declaratory relief.

The Muse Defendants contend State Farm has failed to show that they are "owed nothing for services even accepting all of the allegations in the amended complaint as true." (Muse Defs.' Mot. at 8.) To the extent the Muse Defendants mean to argue that there is no genuine issue of material fact with respect to State Farm's request for declaratory relief, their position is unfounded. As set forth above, the record evidence clearly reveals that the Clinics billed State Farm for services unlawfully rendered. Florida law is clear that, where bills are submitted to an insurer for services unlawfully rendered, and therefore non-compensable, the insurer is entitled to a declaration that it is not obligated to pay the outstanding invoices. *Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d at 1356 (granting declaratory relief on insurer's motion for summary judgment where insurer established the defendant clinics submitted bills for services that were not lawfully provided) (Moore, C.J.). The Muse Defendants are not entitled to summary judgment on State Farm's request for declaratory relief.

## D. The Muse Defendants are not entitled to summary judgment "as to certain undisputed matters."

The Muse Defendants also list eleven "points" on which they seek summary judgment. Many of the issues they raise have no bearing on whether any of the Defendants are entitled to summary judgment on State Farm's claims. More importantly, the Muse Defendants do not supply even a hint of legal authority for their position that summary judgment should be granted in their favor on each of these "issues." This alone is fatal to the Muse Defendants' claims. *See Brown*, 2016 WL 8716482, at *5 ("Motions devoid of any legal authority or a supporting memorandum of law are due to be denied or stricken."); *c.f. N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") If the Defendants, represented by counsel, cannot be bothered to cite to legal authority to support their own position, the Court will not endeavor to piece together their argument for them.

## 5. The Court denies Dr. Lorites's motion for summary judgment.

As set forth above, in section 3.D., the Court denies Dr. Lorites's motion to the extent it is based on the expiration of the applicable statute of limitations period. Dr. Lorites also seeks summary judgment in his favor based on his

contention that State Farm "failed to establish that [he] acted contrary to [the] requirements of ACHA or the Administrative Code in the administration of his duties and responsibilities." (Dr. Lorites's Mot. at 6.) He does not elaborate on this in any way except to recite a list of medical director responsibilities as set forth by Florida Statutes. Dr. Lorites's cursory submission in no way entitles him to summary judgment.

6. **State Farm's motion to strike the exhibits Pain Relief has submitted in opposition to State Farm's motion for summary judgment is moot.**

The Court has granted State Farm's motion for summary judgment against Pain Relief. In doing so, in section 3.A., above, the Court disregarded the three affidavits and discovery responses at issue in State Farm's motion to strike. (Pls.' Mot. to Strike, ECF No. 239.) This renders State Farm's motion to strike, at least as it relates to the Court's evaluation of State Farm's motion for summary judgment, moot. To the extent Pain Relief intends to rely on any of these same documents during the trial of the remaining counts in this case, State Farm's motion to strike is denied without prejudice to State Farm's raising the issue anew should that be necessary.

7. **Conclusion**

As set forth above, the Court orders as follows:

A. State Farm's motion for partial summary judgment (**ECF No. 184**) is **granted in part and denied in part**;

B. The Muse Defendants' motion for summary judgment is **denied (ECF No. 172)**;

C. Dr. Lorites's motion for summary judgment is **denied (ECF No. 205)**; and

D. State Farm's motion is denied in part as moot and denied in part without prejudice (**ECF No. 239**).

The remaining claims of common-law fraud against the Clinics, the Muse Family, and Drs. Lorites and Goldstraj will proceed to trial as scheduled. Once those claims have been resolved, State Farm can move for default judgments against the defaulted medical directors.

The Clerk is directed to **mail** a copy of this order to the pro se

Defendants identified below.

   **Done and ordered**, in Miami, Florida, on March 4, 2020.

                                        Robert N. Scola, Jr.
                                        United States District Judge

*Copy via U.S. mail to*:

**Dr. Hugo Goldstraj**
3029 NE 188th Street, Apt. 305
Aventura, Florida 33180

**Dr. Manuel Franco**
13400 SW 83rd Avenue
Miami, FL 33156

**Dr. Angel Carrasco**
29224 SW 142 Place
Homestead, FL 33033

**Dr. Jose Gomez-Cortes**
3400 SW 130th Avenue
Miami, FL 33175