**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-CV-23125-RNS**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE and CASUALTY COMPANY,

Plaintiffs,

v.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE, HUGO
GOLDSTRAJ, MANUEL FRANCO, MEDICAL
WELLNESS SERVICES, INC., NOEL SANTOS,
ANGEL CARRASCO, PAIN RELIEF CLINIC OF
HOMESTEAD, CORP., JESUS LORITES, AND
JOSE GOMEZ-CORTES,

Defendants.

_____/

**PLAINTIFFS' AMENDED MOTION IN LIMINE AND**
**INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and
Casualty Company (collectively the "State Farm Plaintiffs"), hereby file this Amended Motion in
Limine and Incorporated Memorandum of Law ("Motion") and state as follows:

**I.        INTRODUCTION AND BACKGROUND**

This action arises out of claims for auto insurance benefits submitted by three licensed
health care clinics, Health and Wellness Services, Inc. ("Health & Wellness"), Medical Wellness
Services, Inc. ("Medical Wellness"), and Pain Relief Clinic of Homestead, Corp. ("Pain Relief")
(collectively, the "Muse Clinics").   Defendants Lazaro Muse, Beatriz Muse, and Noel Santos
(collectively the "Muse Family") used the Muse Clinics to implement a scheme to obtain payment
from the State Farm Plaintiffs for fraudulent and unlawfully-rendered services.  The Muse Clinics'
respective medical directors were critical to the success of the scheme because they were legally
responsible to—but did not—supervise the Muse Clinics and ensure the services rendered there
were lawfully rendered and not fraudulent.   *See* Fla. Stat. § 400.9935.  The State Farm Plaintiffs
asserted claims against the Defendants for common law fraud, violations of the Florida Deceptive

and Unfair Trade Practices Act ("FDUTPA"), unjust enrichment, and declaratory relief.  On March 5, 2020, this Court entered summary judgment in favor of the State Farm Plaintiffs on their counts for violations of FDUTPA, unjust enrichment and declaratory relief.  (ECF No. 321).  Accordingly, the only remaining counts remaining and currently set to be tried are those alleging common law fraud.

## II.    ARGUMENT

A district court has broad discretion to determine the admissibility of evidence under the Federal Rules of Evidence.  *See United States v. Jernigan*, 341 F. 3d 1273, 1285 (11th Cir. 2003).  "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *State Farm Mut. Auto. Ins. Co. v. John Romano, D.C.*, No. 12-20438-Civ, 2013 WL 12061865, *1 (S.D. Fla. Oct. 30, 2013).  Even "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2011 WL 2295269, at *1 (S.D. Fla. June 8, 2011) (citations and internal quotations omitted).  Accordingly, this Court should preclude Defendants from introducing evidence relating to any of the following matters, or from making references to any of the following:

1.    The State Farm Plaintiffs' size, financial resources, or market influence;

2.    Independent medical examinations ("IMEs") and peer reviews prepared by doctors retained by the State Farm Plaintiffs to opine on the reasonableness and necessity of Defendants' treatment in underlying claims;

3.    Late-disclosed or improperly disclosed evidence or witnesses, including witnesses Yaquelin Reyes and Diana Hernandez, who were never properly disclosed yet submitted affidavits in response to the State Farm  Plaintiffs' Motion for Summary Judgment;

4.    Testimony from defaulted defendant Jose Gomez-Cortes;

5.    Whether the State Farm Plaintiffs are involved in other investigations or litigation or have pursued this type of affirmative litigation against other individuals or entities;

6.    Terms of any settlement agreements reached between the State Farm Plaintiffs and Jorge Rafael Coll, M.D. ("Dr. Coll");

7.  Purported accreditation or certification by The Joint Commission when any such accreditation or certification is not relevant, hearsay, would be confusing to a jury and cannot be authenticated;

8.  Audits purportedly performed for defendant Pain Relief by a third party - Doctor's First Choice Billing;

9.  Communications between the Agency for Health Care Administration ("AHCA") and any Defendant regarding duties as medical director during AHCA's inspection of the defendant clinics;

10. Any suggestion that State Farm Plaintiffs targeted the Defendants because of race or ethnicity; and

11. Documents, testimony, or other information obtained through discovery in state court actions[1] filed by Medical Wellness and Santos against Dr. Coll or Angel Carrasco, M.D. ("Dr. Carrasco") in December, 2019.

Therefore, the State Farm Plaintiffs ask this Court to enter an order excluding evidence relating to the issues described above.

**A.  This Court Should Preclude Defendants From Introducing Evidence or Argument Concerning the State Farm Plaintiffs' Financial Resources, Size, or Market Influence Because Those Issues Are Irrelevant and Unfairly Prejudicial.**

Statements, testimony, and evidence concerning the financial resources, market power and relative size of the State Farm Plaintiffs are not relevant to the claims or defenses at issue in this case and any such evidence may unduly prejudice the jury.

Courts have recognized references to a party's wealth or resources may improperly sway a jury such that such information should be excluded unless it is necessary to prove a claim or defense. *See, e.g., Illano v. H & R Block E. Enter.*, No. 09-22531-CIV, 2011 WL 1897431, at *1 (S.D. Fla. May 18, 2011) (precluding any reference to defendant's wealth or power and any relative disparity between the parties); *Rollins v. State Farm Fire & Cas. Co.*, No. 4:10-cv-40, 2011 WL 13234788, at *4 (N.D. Ga. July 5, 2011) (granting motion in *limine* where "any relevance of

---

[1] *See Medical Wellness Servs., Inc. v. Coll*, No. 2019-036968-CA-01 (Fla. 11th Jud. Cir. Ct.) (the "Coll Action"); *Medical Wellness Servs., Inc. v. Carrasco*, No. 2019-036967-CA-01 (Fla. 11th Jud. Cir. Ct.) (the "Carrasco Action" and collectively the "State Court Actions"). On February 28, 2020, Judge Echarte granted the State Farm Plaintiffs Motion to Intervene and to Stay Proceedings in the Carrasco Action and stayed the case for 45 days. *See* Order attached as Exhibit "8". Judge Cynamon took the identical motion under advisement in the Coll Action pending further briefing.

3

evidence about Defendant's size and revenue is substantially outweighed by the risk of prejudice"); *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13, 2007 WL 2696791, at *2 (M.D. Fla. Sept. 12, 2007) (granting motion in *limine* because "it would be inappropriate and unfairly prejudicial to Defendant to allow the Plaintiffs to refer to Defendant's net worth, revenues, profits, and financial condition" where punitive damages were not at issue); *Kapral v. GEICO Indem. Co.,* 8:13-CV-2967-T-36EAJ, 2016 WL 7238909, at *2 (M.D. Fla. June 17, 2016) (granting GEICO's motion in limine to prevent references to status as "billion-dollar company" or a "profit center"); *Advanced Cartridge Techs., LLC. v. Lexmark Intern., Inc*., 8:10-CV-486-T-23TGW, 2012 WL 12096443, at *2 (M.D. Fla. Mar. 26, 2012) (granting request for relief from disparaging and suggestive characterization directed to party's corporate size).  For example, in *Alimenta (U.S.A.), Inc. v. Cargill Inc.*, 861 F. 2d 650, 652 (11th Cir. 1988), the Eleventh Circuit affirmed an order granting motion in *limine* to exclude irrelevant and prejudicial references to defendant's size and resources, and explained "net sales or net worth" of the large corporate defendant had no bearing on the issues to be determined at trial.  *Id.*

Here, the State Farm Plaintiffs' allegations center upon the services rendered by the Defendants to the State Farm Plaintiffs' insureds being unlawful and fraudulent.  Defendants have not asserted, nor could they, that their conduct was lawful and not fraudulent or deceptive as a result of the size or resources of the State Farm Plaintiffs.  Accordingly, given the potential for pre-existing prejudice against large corporations and insurance companies, evidence concerning and/or argument referencing the State Farm Plaintiffs' size or financial resources should be excluded at trial.

### B. Defendants Should Be Precluded From Introducing Evidence Relating to IMEs and Peer Reviews Prepared By Doctors Retained By State Farm.

Plaintiffs anticipate Defendants will seek to admit IMEs and peer reviews prepared by doctors in connection with the handling of underlying claims.  These documents should be excluded because: (1) the IMEs and peer reviews constitute inadmissible hearsay; and (2) the IMEs and peer reviews are not relevant and would be unduly prejudicial.

An "IME" is an independent medical examination and a peer review is a similar type review of medical records.  These documents are prepared by health care practitioners retained by the State Farm Plaintiffs to assess a patient's treatment in the litigation of an individual claim for PIP benefits.  Both IMEs and peer reviews reflect the opinion of a health care practitioner as to

whether the treatment performed on a *single* patient in a *single* claim was reasonable, related and medically necessary.  Medical Wellness produced two IMEs/peer reviews.  The State Farm Plaintiffs anticipate the Defendants will seek to admit these IMEs/peer reviews —and potentially others[2]—where the health care practitioner found, in the context of a single review without an analysis of pattern treatment protocols, that a particular patient's treatment at one of the clinic defendants was reasonable, related and necessary as proof the more global treatment at the clinic was medically necessary.

First, these documents are impermissible hearsay.  The IMEs and peer reviews are the reports of other health care practitioners who are neither parties nor witnesses in this case. Defendants presumably will rely, at least in part, on the IMEs and peer reviews for the truth of the matter asserted – that is, that Defendants' treatment of patients was reasonable, necessary, and related to the patients' respective auto accidents making such documents classic hearsay.  As a result, they are not admissible.

Further, no hearsay exception applies.  The IMEs and peer reviews are not admissions by a party opponent, nor are they business records of any party. *See* Fed. R. Evid. 801(2), 803(6) (requiring the elements of the business records exception be "shown by the testimony of the custodian or other qualified witness."); *see also, McElroy v. Perry*, 753 So. 2d 121, 126 (Fla. 2d DCA 2000) (concluding that an IME report prepared for the purpose of litigation lacks the trustworthiness that business records are presumed to have, and therefore, is not admissible under the business records exception); *Cooper v. Marten Transp*., No. 1:10-CV-3044, 2014 WL 115617830, at *10 (N.D. Ga. May 23, 2014) (excluding an IME because it did not fall under the business record exception to hearsay).

The IMEs and peer reviews are also not statements made for and reasonably pertinent to a patient's "medical diagnosis or treatment."  Fed. R. Evid. 803(4); *Field v. Trigg Cnty. Hosp., Inc*., 386 F. 3d 729, 735-36 (6th Cir. 2004) ("The rationale behind this exception is that statements made by an individual to physicians for purposes of diagnosis or treatment are considered exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper

---

[2] The clinic defendants produced only a portion of the files for the patients at issue in this lawsuit in discovery.  The few IMEs/peer reviews identified thus far were identified in the clinic defendants' productions.  The State Farm Plaintiffs believe others may exist and that the clinic defendants may seek to obtain them in advance of the trial.

#73002329_v4

care; *White v. Illinois*, 502 U.S. 346, 355–56 (1992).  As such, courts have interpreted the exception to be limited to statements made by the one actually seeking medical treatment or care.").  In short, Federal Rule of Evidence 803(4) protects only *patients'* statements made for purposes of medical diagnosis or treatment.  *See, e.g. Rangel v. Anderson*, No. 2:15-cv-81, 2016 WL 6595600, at * (S.D. Ga. Nov. 7, 2016) (noting that hearsay exception relating to medical records excepts only statements made by a patient to a physician).  The IMEs and peer reviews are not statements of patients, but rather opinions from medical professionals assessing the treatment performed by the actual treating provider.  In fact, the IME and/or peer review reports are not even borne out of the treating provider's examination.  The IME and peer review doctors did not diagnose or treat the patients; rather, they were reviewing and evaluating the diagnosis and treatment of *another* medical provider. As a result, these IMEs and peer reviews constitute inadmissible hearsay and should be excluded.

Further, neither the IMEs/peer reviews, nor the names of the physicians, were included in *any* of the defendants' Rule 26 disclosures.  As a result, the defendants cannot now claim that such documents support any of their defenses.  *Mitchell v. Ford*, 318 F. App'x 821, 824-25 (11th Cir. 2009) (affirming the exclusion of an expert witness and his report where neither was timely listed under the Rule 26 disclosures); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394, 2019 WL 1974833, at *2, 4-5 (M.D. Fla. Mar. 13, 2019) (failure to disclose employee violated Rule 26 and was not substantially justified; party precluded from using the employee to provide evidence on a motion or at trial).  As such, neither the documents, nor any testimony from such physicians, is admissible at trial.  *Ford,* 318 F. App'x at 824-25.

Additionally, there is a significant risk that the jury may place undue weight to such IMEs/peer reviews and believe the opinions contained within same are the equivalent of the properly disclosed experts in this case.  It would be nearly impossible, for example, for the State Farm Plaintiffs to convince a jury the opinion of State Farm Plaintiffs' expert, Dr. Rubinstein, should be favored over the written contents of an IME or peer review.  The jury will not have the ability to understand the circumstances which lead to the IME or peer review including the issues that were present in the litigation of the underlying PIP case.  Should those documents be shown to the jury, the State Farm Plaintiffs will be forced to explain all such circumstances which may include the introduction of other documentary evidence and testimony so the jury has the ability to fully understand the significance of such an IME/peer review.  This will likely lead to multiple

#73002329_v4

mini-trials which will be very confusing and potentially time consuming.  Such inquiries should be avoided when doing so will confuse the jury.  *See, e.g., Bui v. Minority Mobile System, Inc.*, No. 15-21317-CIV, 2016 WL 6518804, at *1 (S.D. Fla. Jan. 28, 2016) (granting motion in limine for evidence whose prejudicial effect outweighed its probative value because it created a mini-trial on collateral issues).  Further, this would have the prejudicial effect of permitting Defendants to introduce the "opinions" of multiple experts, while not permitting the State Farm Plaintiffs an opportunity to cross-examine the IME or peer review doctors to test the bases of their opinions, their process in reaching those opinions, and whether their opinions would remain the same if they had all of the relevant facts.  For these reasons, the effect of admitting the IME and peer review reports would be more prejudicial and probative and they should be excluded.  *See Diamond Resorts Intl., Inc. v. Aaaronson*, 378 F. Supp. 3d 1143, 1145 (M.D. Fla. May 2, 2019) (holding that an expert report was inadmissible because the expert would not be available to testify at trial).

### C.     Defendants Should Be Precluded From Using Late-Disclosed or Improperly Disclosed Evidence or Witnesses, Including Evidence From Yaquelin Reyes and Diana Hernandez.

As described in Plaintiffs' Motion to Strike Defendant Pain Relief's Improper Summary Judgment Evidence [ECF No. 239] ("Motion to Strike"), Defendants never disclosed Pain Relief employees Yaquelin Reyes ("Ms. Reyes") or Diana Hernandez ("Ms. Hernandez") under Rule 26 as individuals with knowledge of facts in this case, yet attached affidavits from Ms. Reyes and Ms. Hernandez in response to the State Farm Plaintiffs' Motion for Summary Judgment, and intend to call them—and possibly other undisclosed individuals—as trial witnesses. Mot. to Strike [ECF No. 239] at 3, 6-8. Under Rule 26, a party is prohibited from using testimony from a witness who was not disclosed pursuant to the party's continuing and affirmative Rule 26 obligations, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 26(a); Fed. R. Civ. P. 37(c)(1); *Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, No. 12-cv-20744, 2013 WL 4777170, at *1 (S.D. Fla. Sept. 5, 2013); *Caldentey v. Pace Enters. of S. Fla., Inc*., No. 06-cv-80383, 2007 WL 9706957, at *3 (S.D. Fla. Oct. 18, 2007).   Striking or excluding untimely disclosed evidence is consistent with the purpose of the discovery process, and "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Coach, Inc. v. Visitors Flea Mkt., LLC*, 6:11-cv-1905, 2014 WL 631694, at *2 (M.D. Fla. Feb. 18, 2014) (quoting *Dyett v. N. Broward Hosp. Dist*., No. 03–60804–CIV, 2004 WL 5320630, at *2 (S.D. Fla. Jan. 21, 2004)); *Alimenta (U.S.A.), Inc. v.*

*Anheuser-Busch Cos.*, 803 F.2d 1160, 1163 (11th Cir. 1986) (affirming the exclusion of a late-disclosed witness because the party failed to comply with Fed. R. Civ. P. 26(e)(1)(B)).

Pain Relief's failure to disclose Ms. Reyes and Ms. Hernandez is not substantially justified. Both Ms. Reyes and Ms. Hernandez have been employed by Pain Relief for several years, were involved in treating patients and billing, and cannot be considered unforeseen witnesses. *See Roberta L. Marcus*, 2013 WL 4777170, at *2-3. (failure to disclose its employee was not justified); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394, 2019 WL 1974833, at *2, 4-5 (M.D. Fla. Mar. 13, 2019) (failure to disclose employee violated Rule 26 and was not substantially justified; party precluded from using the employee to provide evidence on a motion or at trial). Further, if any undisclosed or improperly disclosed witnesses are permitted to testify, the State Farm Plaintiffs would be severely prejudiced, as the State Farm Plaintiffs would have no opportunity to perform discovery and take depositions relating to these witnesses. *See Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (quoting *Berryman–Dages v. City of Gainesville Fla*., No. 1:10 –cv-177–MP–GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012)); Diamond, 2019 WL 1974833, at *4. Because there is no justification for Pain Relief's failure to disclose Ms. Reyes and Ms. Hernandez, and because the State Farm Plaintiffs would be unduly prejudiced if they testify, this Court should exclude them as witnesses in this case.

### D.   Defendants Should Be Precluded From Calling Dr. Gomez-Cortes As a Witness.

As described in Plaintiffs' Motion to Strike Defendant Pain Relief's Improper Summary Judgment Evidence [ECF No. 239] ("Motion to Strike"), Dr. Jose Gomez-Cortes is employed as the current medical director at Pain Relief. However, Dr. Gomez-Cortes is also defaulted as a result of his failure to comply with discovery procedures and ultimately this Court's order for him to both provide discovery responses and production as well as to appear for his deposition. [ECF No. 114], Or. Granting Pls.' Mot. to Compel. To allow Defendants to call Dr. Gomez-Cortes as a witness to present evidence the State Farm Plaintiffs attempted to obtain from him but were precluded from obtaining is the height of unfair prejudice. *See* Fed. R. Civ. P. 37(b)(2)(ii) ("If a party or a party's officer, director … fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders. They may include … prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence."); *Kartagener v. Carnival Corp*., 380 F. Supp. 3d

1290, 1298-1299 (S.D. Fla. 2019) (precluding the defense from offering evidence or testimony on a key issue after the defendant failed to produce witnesses with knowledge as to those issues despite service of proper deposition notices and noting "[i]t would be fundamentally unfair, if Defendant were permitted to surprise Plaintiff at trial with facts or evidence it previously failed to disclose.")  As a result, Dr. Gomez-Cortes should be precluded from testifying at trial.

E.   **Defendants Should Be Precluded From Offering Argument or Evidence as to Whether Plaintiffs Have Pursued These Types of Affirmative Claims Against Other Individuals or Entities.**

Throughout this case, Defendants have made unsupported and inaccurate statements that the State Farm Plaintiffs regularly pursue investigations, and then litigate claims similar to those in this case against medical providers without a justifiable basis to save the State Farm Plaintiffs money.  The Defendants claim that the State Farm Plaintiffs' efforts to do so are aimed at forcing health care providers out of business.  First, the State Farm Plaintiffs' participation in other investigations and/or litigation is completely irrelevant to the facts and circumstances of this lawsuit, and should not be admitted.  *State Farm Mutual Automobile Insurance Company v. Physician's Injury Care Center, Inc*. ("PICC"), No. 606-CV-1757-ORL-GJK, 2009 WL 6357792, at *2 (M.D. Fla. Oct. 29, 2009) is instructive here.  In *PICC*, State Farm sued a health care clinic, its owner, and its medical director for submitting claims for services which arose from a sham treatment scheme.  *See State Farm Mut. Auto. Ins. Co. v. PICC*, 427 Fed. App'x 714, 719-20 (11th Cir. 2011) ("PICC") *rev'd in part on other grounds sub nom State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F. 3d 1311 (11th Cir. 2014).  State Farm filed a motion in limine seeking to exclude references to other State Farm litigation because it did not involve the same parties or the same allegations.  *See* **Exhibit 1**, State Farm's Motion in Limine in *State Farm v. PICC*.  The Court in *PICC* granted State Farm's motion precluding references to any evidence of State Farm's conduct in other litigation not involving the patients whose treatment was at issue in *PICC*.  *State Farm Mutual Automobile Insurance Company v. Physician's Injury Care Center, Inc*. ("PICC"), No. 606-CV-1757-ORL-GJK, 2009 WL 6357792, at *2 (M.D. Fla. Oct. 29, 2009).  The same principle applies here.  Other investigations and suits which involve different parties and facts are simply irrelevant to the instant litigation and therefore have no bearing on the issues present here.[3]

---

[3] In particular, counsel for Dr. Lorites has made repeated comments that the State Farm Plaintiffs, along with the undersigned counsel, engage in a practice of suing health care providers to "put them out of business."  This is patently untrue.  Such comments reveal a failure to appreciate the

In fact, it is well-settled that "evidence of other lawsuits is not normally . . . permitted" in jury trials. *Affiliati Network, Inc. v. Wanamaker*, No. 1:16-cv-24097, 2017 WL 8784853, at *5 (S.D. Fla. Aug. 23, 2017) (granting motion in limine to exclude evidence regarding other litigation and citing additional cases); *Energy Smart Industry, LLC v. Morning View Hotels-Beverly Hills, LLC*, No. 14-cv-23284-UU, 2015 WL 11233085, at *1 (S.D. Fla. June 4, 2015) (evidence of plaintiffs asserting similar claims in other lawsuits is irrelevant under Rule 402 and inadmissible); *Rushing v. Wells Fargo Bank, N.A.*, No. 8:10-cv-1572, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) (explaining that evidence of other lawsuits is typically irrelevant and inadmissible unless specifically for impeachment purposes); *Ward v. Estaleiro Itajai S/A*, No. 05-cv-61821, 2008 WL 1749475, at *2 (S.D. Fla. Apr. 10, 2008) (granting motion in limine to exclude evidence of prior litigation); *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 606-CV-1757-ORL-GJK, 2009 WL 6357792, at *2 (M.D. Fla. Oct. 29, 2009) (granting motion in limine to preclude reference to or any evidence of State Farm's conduct in other litigation not involving the patients whose treatment is at issue in the case).

In addition to being irrelevant, such untrue and unfounded statements are also unfairly prejudicial to the remaining claims and defenses before the Court. *See, e.g., In re RFC & ResCap Liquidating Tr. Action*, 13-CV-3451 (SRN/HB), 2018 WL 4863597, at *19 (D. Minn. Oct. 8, 2018) ("The Court agrees with HLC that it would be unfairly prejudicial for ResCap to argue or present evidence that HLC 'drove RFC out of business' or 'contributed to RFC's demise,' and it will not be allowed to do so."); *Nat'l Bankers Tr. Corp. v. Peak Logistics, LLC*, 12-2268, 2014 WL 11514926, at *2 (W.D. Tenn. Nov. 10, 2014) (excluding evidence at trial that contracting parties' actions and financial implications of a judgment "would put [defendant] out of business or that [defendant] has been driven out of business"); *Southland Metals, Inc. v. Am. Castings, LLC*, 5:13-CV-05049, 2014 WL 12461376, at *1 (W.D. Ark. July 20, 2014) (excluding as prejudicial, irrelevant and inadmissible "evidence that a negative jury verdict could put [defendant] out of

---

State Farm Plaintiffs' obligation to investigate fraud under Florida law.  *See* Fla. Stat. § 626.9891(1)(a)1.  Any comments by defense counsel would irreparably tarnish the State Farm Plaintiffs' reputation in the eyes of the jury and thus subject the State Farm Plaintiffs to undue prejudice.  It would further cause the State Farm Plaintiffs to be allowed to address such allegations and disprove same which will cause the introduction of additional, and otherwise irrelevant, evidence surrounding other, and unrelated, State Farm investigations and litigation.  This too will cause potentially many mini-trials necessitated by such prejudicial and irrelevant suggestions.

#73002329_v4

business or force it to file for bankruptcy"); *Miller ex rel. Miller v. Ford Motor Co.*, 2:01CV545FTM-29DNF, 2004 WL 4054843, at *5 (M.D. Fla. July 22, 2004) (granting motion in limine to exclude "evidence and argument that damage awards drive up the price of products, put manufacturers out of business, or cause jobs to be lost" as prejudicial and inadmissible). Defendants should be thus precluded from making similar statements or arguments during trial.

Accordingly, the State Farm Plaintiffs ask this Court to preclude Defendants from introducing such evidence or making such arguments.

F.     **Defendants Should Be Precluded From Referencing the Terms of the State Farm Plaintiffs' Settlement With Dr. Coll.**

The State Farm Plaintiffs anticipate Defendants and their counsel intend to make arguments regarding the terms of the settlement between the State Farm Plaintiffs and Dr. Coll. As the Court is aware, the State Farm Plaintiffs and Dr. Coll reached a resolution in this case and the State Farm Plaintiffs do not seek to prevent the Defendants from making references to the existence of a settlement at trial. However, the terms of the settlement between the State Farm Plaintiffs and Dr. Coll are confidential and have never been disclosed. In fact, this Court has already denied Defendants' motion to obtain information about the settlement agreement and its terms. *See* [ECF No. 252], December 19, 2019 Omnibus Or. at 2, 6-7 (denying motion to "reveal the deal" between the State Farm Plaintiffs and Dr. Coll). As a result, there is no evidence of the terms of the settlement and the Defendants should not be allowed to speculate as to the terms in front of a jury, or suggest such terms that are not based on admissible evidence nor ask any witness, Dr. Coll or a representative of the State Farm Plaintiffs, regarding such terms at trial.

Moreover, the terms of the settlement and the considerations leading up to the settlement have no bearing on the State Farm Plaintiffs' claims against the Defendants and thus, such evidence is properly excluded under Federal Rule of Evidence 402 because they are irrelevant. *See* Fed R. Evid. 408 advisory committee's note ("The evidence [of a compromise] is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."). In addition to being irrelevant, the Settlement is also inadmissible under Federal Rule of Evidence 408, under which "conduct or a statement made during compromise negotiations" is inadmissible except for specified purposes not present here. *See* Fed. R. Evid. 408. Courts have held that terms of settlement agreements are inadmissible because the probative value is outweighed by prejudice and because of "the policy favoring non-disclosure of settlement

11

negotiations embodied by Fed. R. Evid. 408." *Groom v. Fresenius Med. Care N. Am., Inc.*, No. 1:04-cv-408, 2008 WL 11343409, at *2 (N.D. Fla. May 12, 2008); *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Ia. 2003) ("Although it may be appropriate to inform the jury that the plaintiff has settled with other defendants, to explain their absence from proceedings against the remaining defendant, the details of any settlement with other defendants is not ordinarily admissible, and the jury should ordinarily be cautioned that they should not consider the settlement with other defendants in considering the claim against a remaining defendant") (citing *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069-72 (5th Cir. 1986)).  "The 'critical inquiry' in considering whether a settlement agreement is admissible under [Rule 408] is the purpose for which it is being presented." *Ares-Perez v. Caribe Physicians Plaza Corp.*, 261 F. Supp. 3d 265, 271 (D. P.R. 2017) (*citing McInnis v. A.M.F., Inc.*, 765 F. 2d 240, 248 (1st Cir. 1985)).

**G.    Defendants Should Be Precluded From Offering Argument or Evidence Relating to Any Findings By the Joint Commission in Issuing Certifications.**

The State Farm Plaintiffs anticipate some of the Defendants will seek to introduce evidence of a particular clinic Defendant's purported–but unverified—certification or accreditation by the Joint Commission.  Any such evidence should be excluded because it is irrelevant, hearsay, cannot be authenticated, and would be confusing to a jury.

The Joint Commission is an "independent, not-for-profit organization offering unbiased assessment of … patient care and safety."  https://www.jointcommission.org/accreditation-and-certification/why-the-joint-commission/  The Joint Commission certifies or accredits health care providers, but its criteria and methodology for doing so are entirely unclear.  Based on third-party production of bank records, each of the clinic defendants made payments to The Joint Commission. In addition, Defendant Medical Wellness produced some records reflecting what purports to be an application for accreditation by Medical Wellness but it is unclear whether those records are comprehensive.  Therefore the State Farm Plaintiffs issued a subpoena to The Joint Commission seeking all documents reflecting applications made by the Muse Clinics and the assessment of those applications by the Joint Commission in deciding whether to issue certification.  *See* **Exhibit 2**, Joint Commission subpoena.  The Joint Commission refused to produce documents and none have been produced by the defendants.  *See* **Exhibit 3**, The Joint Commission Objection.

When asked during depositions, the corporate representatives and owners of the clinics had minimal, if any, knowledge pertaining to such accreditation.  For example, Health & Wellness's corporate representative testified he was unaware of any accreditations or certifications through the Joint Commission or any other accrediting body. *See* [ECF No. 158], A. Perez Dep. at 97:10-20. Other witnesses similarly had no knowledge of the Joint Commission or simply provided basic information. *See, e.g.* [ECF No. 161], B. Muse Dep. at 150:18 - 151:13 (aware generally of Joint Commission and that Medical Wellness had applied for Joint Commission accreditation, but no further information including whether such an accreditation was ever obtained); [ECF No. 171], N. Santos Dep. 124:3 - 125:15 (states he had a certification from the Joint Commission, but that he relied on someone whose name he did not recall to help him with the application).

The State Farm Plaintiffs are thus unable to verify any details surrounding the apparent The Joint Commission accreditation of Medical Wellness nor is there any evidence surrounding the criteria which may have been used in such a process.  If evidence is not relevant, it is not admissible.  Fed. R. Evid. 401.  Here, it cannot be determined whether The Joint Commission's accreditation takes into consideration things like whether co-payments and deductibles are collected, whether practitioners performed treatment within the scope of their license and whether the Medical Director provided the required day-to day supervision.  However, review of the limited materials produced by Medical Wellness does not suggest that the purported application for accreditation takes into account such criteria.  In contrast, the purported applications appear to focus on Medical Wellness' plan for preventing infection and overall office cleanliness.  Without clarity on the criteria used, any resulting accreditation or certification by The Joint Commission cannot be relevant, and therefore should be excluded. *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266 (E.D. Mich. 2009)(holding that evidence of accreditation by a community health program was not relevant as to whether plaintiff was entitled to receive no-fault insurance benefits).

Even if the criteria used by The Joint Commission were relevant, which it does not appear to be, the accreditation or certification would be hearsay and thus still subject to exclusion.  *See e.g., Osterback v. McDonough*, 549 F. Supp. 2d 1337, 1344 (M.D. Fla. 2008) (excluding accreditation reports as inadmissible hearsay).  Indeed, any certification or accreditation would necessarily be an out of court statement.  Moreover, if the criteria used to issue a certification were relevant—as it would have to be—then the certification itself would have to be offered to prove

that the clinic was either operating lawfully or providing medically necessary treatment.  This is inadmissible hearsay.  *See* Fed. R. Evid. 801.

Further, these documents were not identified on Medical Wellness' Rule 26 disclosures. No witness from The Joint Commission was identified on the Muse Defendants' Rule 26 disclosures either and thus the Muse Defendants cannot rely on the testimony of anyone from The Joint Commission at trial.  *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos*., 803 F.2d 1160, 1163 (11th Cir. 1986) (affirming the exclusion of a late-disclosed witness because the party failed to comply with Fed. R. Civ. P. 26(e)(1)(B)); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394, 2019 WL 1974833, at *2, 4-5 (M.D. Fla. Mar. 13, 2019) (failure to disclose employee violated Rule 26 and was not substantially justified; party precluded from using the employee to provide evidence on a motion or at trial).

These documents are not and cannot be authenticated.  Rule 901 requires that a party that seeks to offer an item at trial must produce sufficient evidence to support a finding the item is what the proponent claims it to be.  Fed. R. Evid. 901(a); *United States v. Lebowitz*, 676 F. 3d 1000, 1009 (11th Cir. 2012) (To properly authenticate a document prior to its admission, "a proponent [must] present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be."). There is no witness who can authenticate these records as no individual from The Joint Commission was ever disclosed on the Muse Defendants' Rule 26 disclosures.

Moreover, admitting this evidence would be confusing to the jury.  If reference to The Joint Commission's apparent accreditation were permitted, the jury would very likely give inappropriate weight to such information.  Moreover, the State Farm Plaintiffs would not be able to defend against a reference to the accreditation because the State Farm Plaintiffs do not have access to any documents or other information which might provide insight into the actual criteria used by The Joint Commission to make a determination as to accreditation.

For the foregoing reasons, any evidence regarding the accreditation or certification by The Joint Commission should be excluded.

#73002329_v4

**H.** **Defendants Should Be Precluded From Introducing Evidence Regarding Purported Audits Performed For Defendant Pain Relief By Doctor's First Choice Billing.**

In his response to the State Farm Plaintiffs' written discovery requests, Dr. Lorites produced two different "audits" purportedly performed by an entity called Doctor's First Choice Billing Services ("Doctor's First") in 2011 and 2012. A copy of Doctor's First audits are attached hereto as **Exhibits 4** and **5**. The State Farm Plaintiffs anticipate Dr. Lorites and Pain Relief will seek to introduce these two "audits" in an attempt to convince the jury that Dr. Lorites complied with his medical director duties. Such an attempt to use these documents and any reference to Doctor's First must be rejected because: (1) any "audit" performed by Doctor's First and information purportedly relayed by someone at Doctor's First to Dr. Lorites is classic, inadmissible hearsay; (2) the documents have not been authenticated and there is no available witness to do so at trial; (3) the contents of the audits are irrelevant as they do not address the disputed issues in this case; and (4) any introduction or reference to such audits would only confuse the jury.

Hearsay is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(a). There can be no question both (1) the written statements made by Anna Stephenson, the person that purportedly completed the Doctor's First audit, and (2) the "audits" produced by Dr. Lorites are out of court statements. Fed. R. Evid. 801(c). There is also no question that Dr. Lorites intends to use such "audits" to prove the truth of the matter asserted – that Dr. Lorites complied with his medical director duties as in his affidavit offered for summary judgment purposes, he stated, "In furtherance of my responsibilities as Medical Director, I hired a third-party auditing company, Doctor's Choice Billing Services [sic], to conduct random audits of patient files." [ECF No. 196], Lorites Aff. at ¶ 31. One cannot imagine a more classic example of written hearsay than the very "audits" Dr. Lorites now claims show compliance with his Medical Director duties. Obviously, any verbal accounting of what is contained within the "audits" would be equally inadmissible hearsay.

In addition to the "audits" being hearsay, the documents are also not authenticated. As discussed *infra*., Rule 901 requires that a party that seeks to offer an item at trial must produce sufficient evidence to support a finding the item is what the proponent claims it to be. Fed. R. Evid. 901(a); *United States v. Lebowitz*, 676 F. 3d 1000, 1009 (11th Cir. 2012) (To properly

#73002329_v4

authenticate a document prior to its admission, "a proponent [must] present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be."). Thus, it must be proven that the "audits" are authentic. Because these "audits" were created by a third party, only a person who has knowledge surrounding its creation could possibly satisfy this burden. As can be seen from the "audits," they were purportedly emailed and faxed to Dr. Lorites' office by someone named Anna Stephenson. No party, including Dr. Lorites, has identified Ms. Stephenson nor any other person associated with Doctor's First on any required Rule 26 disclosures. Further, no such person was identified in response to the State Farm Plaintiffs Interrogatories. Further, the State Farm Plaintiffs explicitly asked Dr. Lorites in Interrogatory No. 2 to identify "[a]ll contracts and agreements [Dr. Lorites] and/or Pain Relief have entered into regarding services [Dr. Lorites] performed for or on behalf of any Defendant." *See* **Exhibit 6**, The State Farm Plaintiffs' Interrogatories to Dr. Lorites & Related Answers. In response, Dr. Lorites identified only the medical director contract he had with Pain Relief. *Id*. At no point did Dr. Lorites advise he "hired" anyone to assist him with his duties – directly contrary to the position he has now taken in his affidavit for summary judgment purposes. Without the identification of same pursuant to Rule 26 and during the discovery period, any such person is prohibited from testifying. As a result, Dr. Lorites must be precluded from now, for the first time at trial, securing a witness who might be able to authenticate these documents.[4]

Further supporting any last minute effort by Dr. Lorites to secure someone at Doctor's First who could show up at trial and authenticate these documents is the fact that the State Farm Plaintiffs attempted to serve Doctor's First with a subpoena in this case. As seen from the attached correspondence from the process server, service was repeatedly attempted but could not be accomplished because the residents at the address for Doctor's First avoided service. *See* **Exhibit 7**, email from process server. Because these documents cannot be authenticated pursuant to Rule 901, they must be excluded.

---

[4] To the extent Dr. Lorites claims that the "audits" qualify for a business record exception to the hearsay rule, he would be mistaken. Rule 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedures used to create the alleged business records. *See Allen v. Safeco Ins. Co. of Am.*, 782 F. 2d 1517, 1519 (11th Cir. 1986) (Either the person who created the document or a witness who can provide a proper foundation of trustworthiness for the document is necessary for the hearsay exception in Rule 803(6) to apply). Because these "audits" were not created by Dr. Lorites, and he was presumably not present when they were created at Doctor's First, he cannot lay the foundation for such a hearsay exception.

Next, the "audits" are further not admissible because a review of them reveals that they do not touch on the issues a jury will have to decide – they are irrelevant. Specifically, the "audits" only examine whether the CPT codes were appropriately selected and whether disclosures were obtained in the records. [5] Such issues have not been raised in this case. Rather, here, the State Farm Plaintiffs have alleged the treatment performed at the Muse Clinics, including Pain Relief while Dr. Lorites was the Medical Director, was unlawful and fraudulent because of three main issues: 1) the medical treatment performed was unnecessary and the bills submitted were fraudulent; 2) the services rendered were unlawful because they violated Florida record keeping laws, were performed pursuant to invalid prescriptions, and were performed by practitioners who were insufficiently licensed; and 3) the services were separately unlawful because the medical directors failed to properly supervise the treatment and allowed the foregoing issues to occur including the failure to ensure the billings were lawful and not fraudulent which encompasses the requirement to engage in a good faith effort to collect co-pays and deductibles. Notably, nowhere in the Complaint do the State Farm Plaintiffs take issue with the coding used in the subject bills. The State Farm Plaintiffs have not, and will not, raise the issue of whether the specific CPT codes were appropriate.

However, a review of the "audits" shows that they do not pertain to any of the issues which will be tried. Rather, the "audits" purportedly show the third party reviewed the "CPT CODE BILLED" to the therapy notes in determining whether the correct code was utilized. *See* Exs. 5 and 6, Doctor's First Audits. Simply, the "auditor" didn't examine a single issue which is the subject of this lawsuit. There is no possible way these "audits" could lead a reasonable jury to determine whether Dr. Lorites violated his medical director duties which are the subject of this litigation.

Finally, if Defendants are permitted to introduce the handful of audit documents they chose to produce while withholding additional documents relating to such audits, the jury will receive a biased and incomplete picture of the audits Doctor's First purportedly performed, turning the proceedings into a guessing game of what has—or has not—been produced. *See Rozier v. Ford Motor Co.*, 573 F. 2d 1332, 1346 (5th Cir. 1978) (explaining that disclosure requirements preserve the Federal Rules' critical role in "mak[ing] a trial less a game of blind man' bluff and more a fair

---

[5] The irony is that the same two "audits" state that often the patient charts had services billed with either no supporting notes or the wrong code was used. *See Id*.

contest with the basic issues and facts disclosed to the fullest practicable extent") (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 682 (1958)); *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd*., No. 07 C 4023, 2008 WL 1883435, at *7 (N.D. Ill. Apr. 28, 2008) (granting motion to exclude late disclosed evidence); *see also ATD Corp. v. Lydall, Inc*., 159 F. 3d 534, 551 (Fed. Cir. 1998) (holding the exclusion of evidence was warranted, especially when the party "offered no reason to justify its submission long after the close of discovery"). To the extent Defendants seek to introduce evidence or argument audits were performed consistently, but lack evidence to support such a statement, Defendants should be precluded from such actions.

I. **Defendants Should Be Precluded From Introducing Evidence Relating to Purported Statements Made By AHCA Inspectors During Clinic Inspections About a Medical Director's Duties.**

The State Farm Plaintiffs anticipate Defendants will attempt to offer argument and testimony regarding conversations with AHCA inspectors during inspections of the Muse Clinics, for the purpose of arguing the Clinics' medical directors complied with what they understood their statutory duties to be. For example, in the deposition of Dr. Hugo Goldstraj ("Dr. Goldstraj"), Dr. Goldstraj recounted AHCA inspectors' statements regarding medical director responsibilities while discussing the inspections, and testified that his only knowledge regarding those responsibilities came from oral conversations with unidentified AHCA inspectors. *See* [ECF No. 159], Goldstraj Dep. Tr. 29:24 - 32:9, 35:16 - 37:7. Such references are inadmissible hearsay, particularly as Defendants are seeking to use these statements for the truth of the matter asserted— that the Clinics complied with medical director responsibilities to defend against Plaintiffs' contentions to the contrary. *See* Fed. R. Evid. 801(c), 802. Oral statements from conversations between any of the Defendants and unnamed AHCA inspectors are classic examples of inadmissible hearsay, and this Court should preclude Defendants from presenting argument or testimony regarding these conversations. *Id.*; *Robertson v. Interactive College of Tech./Interactive Learning Sys., Inc.*, 743 F. App'x 269, 273-74 (11th Cir. 2018) (affirming district court's exclusion of testimony of oral conversations); *Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1293-94 (11th Cir. 2012) (testimony on statements from unknown witnesses were inadmissible hearsay).

**J.    Defendants Should Be Precluded From Referencing Bad Faith, Racial Discrimination, or Other Defensive Theories That Have No Evidence to Support Them.**

The State Farm Plaintiffs anticipate Defendants will attempt to introduce evidence that the State Farm Plaintiffs are targeting Defendants because of their racial or ethnic status, and Defendants may attempt to make prejudicial and inappropriate statements referencing Plaintiffs' purported discrimination to distract from the substantive issues and elicit sympathy from the jury. First, there is no evidence whatsoever to support these kinds of defamatory and improper statements.  Second, such statements are completely irrelevant to the facts and issues in this case and, therefore, are inadmissible.  *See* Fed. R. Evid. 401-403.  Further, such statements are highly inflammatory and would only serve to mislead the jury, confuse the issues, and cause undue prejudice to Plaintiffs.  Thus, this Court should prohibit Defendants from speculating that Plaintiffs asserted claims against them or otherwise targeted them because they are Hispanic or for similarly inaccurate reasons.

**K.    Defendants Should Be Precluded from Using or Referring to State Court Discovery Materials at Trial**

Medical Wellness and Mr. Santos filed the State Court Actions[6] to obtain certain discovery from Dr. Coll and Dr. Carrasco in contravention of an unambiguous Order of this Court.  In the Coll Action, which was filed on December 19, 2019 in Miami-Dade County Circuit Court, Medical Wellness and Mr. Santos sued Dr. Coll for fraud in the inducement, negligent misrepresentation, breach of contract, negligence, and outrage based upon Dr. Coll's actions as Medical Director at Medical Wellness which he memorialized in an Affidavit in this case. In the State Court case, Medical Wellness and Santos recently served discovery on Dr. Coll and noticed him for deposition on February 27, 2020, seeking documents, testimony and other information pertaining to the settlement agreement between Dr. Coll and the State Farm Plaintiffs.[7] This same information was

---

[6] The Complaints in the State Court Actions are identical to the proposed cross complaint against Dr. Carrasco and proposed third party complaint against Dr. Coll which this Court denied Defendants leave to pursue in this action.  *See* [ECF No. 230], Defs. Mot. for Leave to Amend at Exs. B & C.

[7] The February 27, 2020 deposition of Dr. Coll in the Coll Action did not proceed.  Dr. Coll filed a Motion for Protective Order to halt the deposition, but it wasn't heard until March 5, 2020 and Judge Cynamon denied same as moot.  Thereafter, also on March 5,2020, Medical Wellness and Mr. Santos filed a Motion to Compel and for Sanctions which seeks "an order compelling

the subject of several motions seeking to reopen discovery filed by the Muse Family and Medical Wellness and denied by this Court on December 19, 2019.  *See* [ECF No. 252], Omnibus Order ("Order").

Medical Wellness and Mr. Santos' First Request for Production to Dr. Coll seeks only the following categories of documents: (i) the settlement agreement between Dr. Coll and the State Farm Plaintiffs; (ii) communications pertaining to the settlement between Dr. Coll and the State Farm Plaintiffs; and (iii) documents reflecting proof of any payment from the State Farm Plaintiffs to Dr. Coll "resulting from the settlement agreement" between Dr. Coll and the State Farm Plaintiffs.  *See* **Exhibit 10**, Req. for Prod. to Coll.  Likewise, Mr. Santos and Medical Wellness propounded a single interrogatory on Dr. Coll:

> Were you required to pay any money as a result of settlement agreement by and between State Farm and Jorge Rafael Coll in the matter of State Farm v. Jorge Rafael Coll, et al., currently in federal court under case No. 18-cv-23125? If so, **what are the terms and conditions of your settlement**?

*See* **Exhibit 11**, Interrog. to Coll (emphasis added).  Medical Wellness and Mr. Santos also noticed Dr. Coll for deposition for February 27, 2020, even though Defendants made no effort to depose Dr. Coll in the instant case until after the close of discovery (which was denied).  *See* **Exhibit 12**, Dep. Ntc. to Coll.  Although Medical Wellness and Mr. Santos have not yet served Dr. Carrasco with any discovery, the State Farm Plaintiffs anticipate that such discovery is imminent given the parity between the Coll Action and the Carrasco Action and this Court's denial of the Muse Defendants' attempts to obtain discovery from Dr. Coll and Dr. Carrasco in this suit.

Medical Wellness and Mr. Santos should not be permitted to circumvent this Court's unambiguous order precluding discovery relating to Drs. Coll and Carrasco after the discovery cutoff and use any evidence obtained as a result of their actions.  It would be patently unfair to allow Medical Wellness and Mr. Santos to be rewarded with the opportunity to use evidence they obtained as a result of flouting this Court's Order.  Moreover, it would be unduly prejudicial to allow Medical Wellness and Mr. Santos to surprise the State Farm Plaintiffs with evidence at trial which was not obtained, disclosed, or produced in this action, particularly where this Court specifically ruled against such discovery.  Thus the State Farm Plaintiffs request that this Court

---

Defendant to immediately provide a date certain for his deposition to take place in March, 2020." *See* Motion, par. 9, attached as Exhibit "9" Such actions by Medical Wellness and Mr. Santos reaffirm their clear desire to obtain Dr. Coll's deposition prior to the trial before this Court.

exclude all evidence obtained from either the Coll Action or the Carrasco Action, should discovery be sought therein, from use for any purpose.

## III.   CONCLUSION

Based on the foregoing reasons, the State Farm Plaintiffs respectfully ask the Court to grant their Amended Motion in Limine, and for such other and further relief to which the State Farm Plaintiffs may be entitled.

**CERTIFICATE OF GOOD FAITH CONFERENCE**
**PURSUANT TO LOCAL RULE 7.1(A)(3)**

Pursuant to Local Rule 7.1(a)(3), the State Farm Plaintiffs certify that on February 12, 2020, counsel for the State Farm Plaintiffs conferred in good faith with all counsel for Medical Wellness Services, Inc., Lazaro Muse, Beatriz Muse, and Noel Santos, i.e., the parties impacted by the relief sought herein, regarding the amended portion of this motion set forth in Section II(K) and those parties objected.  On February 12, 2020, the State Farm Plaintiffs' advised all other counsel of record of the intended filing in an email and counsel for Dr. Lorites also objected. No other defense counsel responded.  On February 25, 2020, counsel for Medical Wellness Services, Inc. Lazaro Muse, Beatriz Muse and Noel Santos withdrew their objection to the filing of this motion resulting in the Court granting Plaintiff's unopposed motion to file an amended motion in limine.  (ECF No. 323).

DATED: March 6, 2020

By /s/  *David Spector, Esq.*

DAVID SPECTOR (FBN: 086540)
david.spector@hklaw.com
CAITLIN SALADRIGAS (FBN: 095728)
caitlin.saladrigas@hklaw.com
**HOLLAND & KNIGHT LLP**
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL 33401
Telephone:  (561) 833-2000
Facsimile:   (561) 650-8399
*Attorneys for the State Farm Plaintiffs*

#73002329_v4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified in the list below via transmission of Notices of Electronic Filing generated by CM/ECF and served on all other parties via U.S. Mail.

*/s/ David Spector, Esq.*
David Spector, Esq. (FBN: 086540)

#73002329_v4

## SERVICE LIST

| | |
|---|---|
| Christian Carrazana, Esq.<br>**CHRISTIAN CARRAZANA, P.A.**<br>P.O. Box 900520<br>Homestead, FL 33030<br>Telephone: (786) 226-8205<br>Email: christian@carrazana-legal.com<br>*Attorney for Defendant Pain Relief Clinic of*<br>*Homestead, Corp.*<br>**Served via email** | Louis V. Martinez, Esq.<br>**DIAZ, REUS & TARG LLP**<br>3400 Miami Tower<br>100 SE 2nd Street<br>Miami, FL 33131<br>Telephone: (305) 375-9220<br>Facsimile:  (305) 375-8050<br>Email: lvmartinez@aol.com<br>*Attorneys for Defendant Health & Wellness*<br>*Services Inc.*<br>**Served via email** |
| Karen B. Parker, Esq.<br>**KAREN B. PARKER, P.A**<br>2550 S. Bayshore Drive, Suite 102<br>Coconut Grove, FL 33133<br>Telephone: (305) 343-8339<br>Email: kparker@kbparkerlaw.com<br>    kbparkerlaw@gmail.com<br>    parkerlawasst@gmail.com<br>*Attorneys for Defendant Jesus Lorites*<br>**Served via email** | Jose Gomez-Cortes, MD<br>1840 West 49th Street, Suite 305<br>Hialeah, FL  33012<br><br>   - AND -<br><br>3400 SW 130th Avenue<br>Miami, FL  33175<br>*In Pro Se*<br>**Served via U.S. Mail** |
| Richard J. Diaz, Esq.<br>Attorney at Law<br>3127 Ponce De Leon Boulevard<br>Coral Gables, FL 33134<br>Telephone: (305) 444-7181<br>Facsimile:  (305) 444-8178<br>Email: rick@rjdpa.com<br>*Attorneys for Defendants Medical Wellness*<br>*Services, Inc., Beatriz Muse, Lazaro Muse,*<br>*and Noel Santos*<br>**Served via email** | Hugo Goldstraj<br>3029 NE 188th Street, Apt. 305<br>Aventura, FL   33180<br>*In Pro Se*<br>**Served via U.S. Mail** |