**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

CASE NO. 1:18-cv-23125-RNS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE and CASUALTY
COMPANY
                Plaintiff,

      vs.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE,
HUGO GOLDSTRAJ, MANUEL FRANCO,
MEDICAL WELLNESS SERVICES, INC.,
NOEL SANTOS, ANGEL CARRASO, PAIN
RELIEF CLINIC OF HOMESTEAD, CORP.,
JESUS LORITES and JOSE GOMEZ-CORTES,

      Defendants.
_____/

## DEFENDANTS, LAZARO MUSE, BEATRIZ MUSE, NOEL SANTOS AND MEDICAL WELLNESS SERVICES, INC.'S MOTION FOR RECONSIDERATION OF THE OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGEMENT [D.E. 321]

For this Motion, the Defendants, LAZARO MUSE, BEATRIZ MUSE, NOEL SANTOS and MEDICAL WELLNESS SERVICES, INC. ("Muse Defendants"), state:

Pursuant to Federal Rules of Civil Procedure 59(e) and 60, the Muse Defendants seek reconsideration of this Court's omnibus order of March 5, 2020 [D.E. 321]. In part of that order and relevant to this motion, the Court granted State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company's ("SF") motion for summary judgment [D.E. 184] against Defendants, Medical Wellness Services, Inc. ("MW"), Lazaro Muse ("Lazaro"), Beatriz Muse ("Beatriz") and Noel Santos ("Noel") ("Muse Defendants" when referred to jointly), as to the following counts: Florida Deceptive and Unfair Trade Practices Act

1

("FDUTPA")(Count IV against Beatriz and Lazaro, Count V against all Muse Defendants, and Count VI against Beatriz and Lazaro); Unjust Enrichment (Count VII against Beatriz and Lazaro, Count VIII against the Muse Defendants, and Count VIX against Beatriz and Lazaro).

## STANDARD FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration, but district courts generally treat them as being filed under Rule 59 or 60. Still, reconsideration of a judgment is considered an extraordinary remedy which will be granted only sparingly. Rule 60(b) allows for "relief from a final judgment, order, or proceeding" in certain circumstances. Those circumstances include mistake, excusable neglect, newly discovered evidence, fraud by an opposing party, and "*any other reason that justifies relief*." Here, reconsideration as an extraordinary remedy is justified because there has been clear error resulting in manifest injustice – resulting in a multimillion dollar order on summary judgment against parties who demonstrate issues of material fact in dispute. .

Rule 59(e), which allows an aggrieved party to move to "alter or amend a judgment," is another Rule sometimes employed as a basis for seeking reconsideration. A motion for reconsideration brought under Rule 59(e), may only be granted in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. As with Rule 60 motions, Rule 59 motions are not justified by a party's mere disagreement with the court's ruling as the Rule is not intended to give the losing party's attorney a second bite at the apple. We do not re-argue anything for the mere sake of arguing. Rather, we point to specific errors in the conclusions arrived at by the Court in its omnibus order.

## LAW/STANDARD REGARDING SUMMARY JUDGMENT

Respectfully, a district court cannot substitute its judgment – as if it were sitting as a fact finder – for, within, or under an order granting summary judgment. There must be a total absence of a factual dispute for summary judgment to be entered. *Alabama v. North Carolina*, 130 S.Ct. 2295, 2308 (2010), such as a total silence from the non-moving party or an admission to the alleged facts, because without that, the moving party's factual allegations are viewed favorable to the non-movant. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-159 (1970). In that context, the court simply may not weigh conflicting evidence or make credibility decisions on witness testimony in determining summary judgment. *Skip v. City of Atlanta, GA.,* 485 F.3d 1130 (11th Cir. 2007).

Moreover, in cases involving intent, such as fraud (or even FDUPTA), the intent to defraud (or deceive) is generally inappropriate for summary disposition. *Glance v. Cohan*, 364 So.2d 54 (Fla. 3d DCA 1978)(Generally, the issue of fraud is not a proper subject on summary judgment. Fraud is a subtle thing requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively establish a fraud); *Amazon v. Davidson*, 390 So.2d 383 (Fla. 5th DCA 1980) (Since the whole context is necessary for the determination, it is seldom that one can determine the presence or absence of fraud without trial; *Robinson v. Kamalson*, 882 So.2d 1086 (Fla. 5th DCA 2004); *Bock v. Marchese Servs*., 42 So.3d 325 (Fla. 4th DCA 2010); and *Grimes v. Lottes,* 241 So.3d 892 (Fla. 2nd DCA 2018).

## ARGUMENT

**Part I** argues that the Court erred in its four critical findings against the Muse Defendants. (Omnibus Order at pp. 15-20). **Part II** argues that the Court ignored (or misread) Local Rule 56.1(a)(2) and over-harshly applied Rule 56(c)(1)(A) of the Federal Rules of Civil

Procedure in functionally striking the evidence presented by the Muse Defendants to oppose SF's motion for summary judgment.   **Part III** argues that the Court overlooked cited record evidence. **Part IV** argues that the Court erred when it cited evidence under a prosecution theory never pled by SF, (namely, the alleged failure to collect co-payments and deductibles) as a variance or constructive amendment. **Part V** argues that the Court erred in finding FDUPTA (and unjust enrichment) liability against Beatriz, Lazaro and Santos, individually. **Part VI** argues that the Court erred in finding damages with regards to Lazaro (as to all three medical clinics) when he denied any liability under oath and regarding Beatriz (as to HW) for billings HW presented to SF up to eight years after she sold it to a bona fide third party, a fact never in dispute in this case.

**PART I**: The Court erroneously made the following findings *as a matter of law*:

- **that licensed medical therapists ("LMT") rendered unlawful and non-compensable services (Order pp. 15-17).**

- **that the medical clinics had non-compliant record keeping (Order p. 17).**

- **that there were invalid and unlawful prescriptions for treatment (Order p. 18).**

- **that there was non-compliance with collection or collection efforts regarding co-payments and deductibles (Order pp. 18-20).**

Even if all of these points *were* true as a matter of law, they *might* entitle SF to a claim for charge-back and/or subject the *medical clinics* to administrative action regarding their licenses with AHCA. But they do not equate *to fraud, deception (FDUPTA) or unjust enrichment against any of the individual Muse Defendants on summary judgment.*

**(i) A fact question exists on whether the licensed medical therapists ("LMT") rendered unlawful and non-compensable services.**

A fact dispute exists on whether the medical clinics unlawfully render non-compensable services.  First, to conclude that the use of a physical device is outside the scope of a licensed massage therapist practice under F.S. §480.033(3), it must be shown that the massage was not performed at all. There is no proof of that in this record. Indeed, *SF does not even make that allegation*. The massage statute authorizes the use of a mechanical device or any physical agent (i.e., modalities) in aid of massage. Thus, if a patient uses a treadmill for gait training as part of the therapy visit in tandem with the massage, then the therapist was not practicing outside the scope of 480.033(3).

Second, prior to 2013, the therapists need not be supervised directly by a medical doctor. So, the pre-2013 services were lawful and compensable medical care not subject to the massage payment exclusion under F.S. §627.736(1)(a)5 which became effective in 2013 and allows a doctor to supervise another licensed health care professional pursuant to Rule 64B8.2001(1) FAC unless provided otherwise by a rule or statute.[1] In this case, Rule 64B8.20011 authorized a medical doctor to supervise an LMT whether directly or indirectly because there is no other rule or statue that provides otherwise. See Rule 64B8.200(1)(d).

Third, even assuming the Court found as a matter of law that the LMTs exceeded the scope of the modalities they could perform, a jury could have found that the Muse Defendants - at least the individuals – were operating under mistake or misapprehension of the law, and while that would not establish *some* type of liability, it sure isn't intent to defraud or deceive as a matter of law, much less *on this record*.

Last, the Court overlooked that the law on the scope of modalities that could be performed by LMTs changed in 2013 while clearly, before then, they were permitted.  After

---

[1] Respectfully, the Court glossed over the pre-2013 statute which *clearly* permitted LMTs to perform such modalities without "direct" supervision by a medical doctor.

2013, the modalities required direct supervision from a doctor but without the word "direct" having been fully defined until the Third District Court of Appeals interpreted the amended statute a few months ago. *Geico Gen Ins. Co., v. Beacon Healthcare Ctr. Inc*., 3D18-2030,2020 WL 912938 (Fla. 3ʳᵈ DCA, February 26, 2020). *But that was not the law before 2013.* Yet, the Court applied it retroactively in an ex post facto fashion to grant summary judgment.

**(ii) A fact question exists on whether the medical clinics had compliant record keeping and whether, if not, the individual Muse Defendants are liable by osmosis.**

The Court correctly cited that under Florida law, medical records must be in English, be legible and explain why the course of treatment was undertaken. Additionally, the records must identify the patient, support the diagnosis and document the course of treatment to include patient history, examination and test results, and other similar information. The Court found that MW's and HW's medical records did not meet these criteria with no citation, as to *where, in the record*, it shows that *any* of the medical clinics' medical records were not in English, illegible or did not justify the plan of treatment. The Court also completely ignored the testimony of the defense expert, Nicholas Suite ("Dr. Suite"). The Court also overlooked that these responsibilities do not fall *on the medical clinics, their owners or consultants*, but rather upon the shoulders of the medical directors - Dr. Goldstraj said his responsibilities *were met*, though not at a higher than (his perceived) minimum standard. Yet, the Court found –as a matter of law – that his self-rated "C" for him, meant an "F" for the Muse Defendants. Last, the record does not reveal that *any* of the Muses - *knew at the time* - that the medical directors at MW and HW were not meeting their own duties in ensuring compliance with record-keeping requirements under applicable law. Now hearing Dr. Goldstraj say "I could have done a better job" and Drs. Jorge Rafael Coll and Angel Carrasco now saying, "looking back now, we think we missed the mark in

meeting our statutory duties", cannot translate it in to some kind of vicarious, retroactive, telepathic knowledge and intent by osmosis to the Muse Defendants, 10 years ago.

Even if HW had poor record keeping, the Court still erred in holding Beatriz (and Lazaro) responsible for such deficiencies that occurred at HW *after* Beatriz sold it in 2010. The Court further erred in finding that *Lazaro* had osmotic responsibility for recordkeeping deficiencies at the other two clinics though he was never their owner; he was not responsible for their record keeping; he never hired their medical directors; he was not an employee of the clinics; he did not prepare plans of treatment and he did not perform billing at any of the clinics either. Indeed, Lazaro had ZERO connection to Pain Relief. Lazaro denied liability for any shortcomings of all of the clinics' medical directors in his affidavit. The same applies to MW's owner (Noel Santos). Just like Beatriz, he testified that he relied on the medical directors to their jobs. Last, Dr. Suite's deposition testimony and report raises an issue of fact on this point as well.[2]

### (iii) A fact question exists on whether the clinics had valid and lawful prescriptions for treatment.

The sole responsibility for the prescriptions for treatment lies exclusively with the treating physicians and not on clinic owner (or its consultant). There is no record evidence from *any* treating physician(s) at MW and HW that he/she prepared a fraudulent (or non-medically necessary) plan of treatment, for a *single* patient.  Rather and respectfully, the Court completely believed the SF's medical expert and completely disbelieved Dr. Suite and found that as a matter of law, the plans of treatment were all fraudulent.  Dr. Suite essentially explained that injuries from motor vehicle accidents will fall within a common category of "soft tissue injuries" generally focusing on the neck, back and shoulders but that such injuries can radiate to other parts of the body as well.  He explained that because of this, the modalities of treatment are very

---

[2] See pp. 18-19, infra.

similar across the spectrum of patients seeking relief from their pain and limitations resulting from such motor vehicle accident injuries. **(Exhibit A).** Had his deposition and report not been discarded and disregarded, a fact question would exist.

**(iv) A fact question exists on whether there was compliance with collection or collection efforts regarding co-payments and deductibles.**

This issue should not have been considered by the Court as it was not pled.  Nevertheless, Beatriz and Noel testified in deposition about their efforts to collect co-payments and deductibles.  Citations to the *specific pages in their deposition testimony* were incorporated in their response to SF's motion for summary judgment. (See Response at p. 5). Their said they made efforts to notify patients of their obligation and to pursue collection thereof. If a jury were to decide at trial that such actions were "not enough", then so be it. But their testimony should not have been totally disregarded by this Court – on summary judgment - in order to determine this issue as a matter of law.  On summary judgment, a judge should not be ruling on the credibility of the declarants.

**PART II**: The Muse Defendants followed the plain, textual requirements of Local Rule 56.1(a)(2) and Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure.  Yet, the Court held them to a higher standard of requiring pinpoint citations without advance notice.

Local Rule 56.1(a)(2) states as follows:

> "An Opponent's Statement of Material Facts shall clearly challenge any purportedly material act asserted by the movant that the opponent contends is genuinely in dispute. An opponent's Statement of Material Facts also may thereafter assert addition material facts that the opponent contends serve to defeat the motion for summary judgment".

Nowhere does the local rule require citations to anywhere in the record, (general, specific or pinpointed). Indeed *all* it requires is that the opposition "clearly challenge any purportedly material act asserted by the movant…". This means that merely a general denial is sufficient and

clearly, the Muse Defendants- at the very least – made general denials of facts asserted against them relevant to the essential elements of the various causes of action against them.

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure reads as follows:

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;"

In citing to *Lugo v. Carnival Corp*., 154 F. Supp. 3d 1341, 1343 S.D. Fla. (2015), the Court effectively struck and essentially ignored the Muse Defendants' cited record evidence to oppose the motion, respectfully, ignoring its obligation to review all of the evidentiary materials submitted in opposition to such a motion. *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave, Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).   Moreover, Lugo utterly failed to file his own statement of material facts in response to the paragraph and numbering scheme used by carnival in its statement of facts. Here, however and quite differently, the Muse Defendants filed a specific response to SF's SOF corresponding identically to the order and paragraph number schemes used by SF in its motion.

The local rule is clearly more liberal and general than the federal rule and the Muse Defendants complied with both. But even the federal rule does not say that the citations must be "pinpoint" citations. Indeed, there is no Eleventh Circuit decision that says that either. Respectfully, the Court used an unfair, microscopic and higher standard than called for by these rules resulting in functionally striking the Muse Defendants' opposition to SF's motion for summary judgment and if the Court wanted "pinpoint precision citations" to the record –

something more than what the rules require as written on their face – it simply could have said so and ordered the parties to do so within say, five (5) days, rather than not afford them that opportunity during the four months that SF's motion, the defense responses and replies were being considered.  Five more days would not have made a difference. If, after such warning and opportunity any defendant failed to comply, then that would fall on them.  In short, the Muse Defendants should not have been held to a standard higher than what the plain reading of both rules calls for.  Florida courts prefer deciding cases on the merits of the claim rather than on a technicality. *Sun Trust Mortgage v. Torrenga*, 153 So.3d 952 (Fla. 4th DCA 2014).  There, on reconsideration, the court treated counsel's failure to act due to an incorrect assumption and clerical error and treated it as excusable neglect sufficiently to protect the affected party from a technical "gotcha".  See also, *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993); *Darby v. Flight Options, LLC*, 2008 U.S. Dist. Lexis 40090 (MDFL 2008).

**PART III**: The central basis for the Court's granting of summary judgment against the Muse Defendants was that they failed to cite record references in opposition to SF's SOF. We respectfully disagree and cite below to *specific* record references, all of which sufficiently meet the requirements of the local and federal rules.[3] For reconsideration, we identify *all* record citations in their response.

**LAZARO MUSE**

While SF "connected many dots" attempting to paint Lazaro as a de facto owner and/or "aider and abettor" in fraud allegedly committed by one or more of the Defendants in this case, and while the connecting of those dots at closing argument could lead a jury to find him culpable under Counts III-VIX of the Amended Complaint, summary judgment was improper as to Lazaro

---

[3] We recognize that with regards to Dr. Suite, references were made (generically) to his deposition and report. But in the conclusion of his report one can easily find it on the last page under a clear heading.

because he denied any fraud on his part.  His affidavit was totally ignored, even though its one

page of averments was not only a general denial of knowledge and intent, but also contained

specific denials to specific fact allegations attempting to establish his liability on those points.

## AFFIDAVIT OF LAZARO MUSE

STATE OF FLORIDA            )
                            )ss:
COUNTY OF MIAMI DADE        )

1. My name is Lazaro Muse. I am over the age of 18 and am competent to testify to the matters and facts set forth herein, known to my personal knowledge to be true and correct.

2. I am a Defendant in this case.

3. During the relevant time period, I provided consulting services to the three defendant clinics- Medical Wellness Services, Inc., Health & Wellness Services, Inc. and Pain Relief.

4. I declare that I was never an owner, part owner or silent owner of the three defendant clinics- Medical Wellness Services, Inc., Health & Wellness Services, Inc. and Pain Relief.

5. Likewise, I did not hire any of the medical directors for any of those three clinics.

6. I declare that I was never an owner or part owner or silent owner of Confidence Billing.

7. With regards to the allegations that I served as a "business consultant" to MW and did not have a legally required business associate agreement, the Plaintiffs have never shown me a law, rule or statue that required such an agreement. In any event, I had full consent of MW to perform my consulting duties for MW which I faithfully performed.


_____
                                    LAZARO MUSE

SWORN TO AND SUBSCRIBED before me this 13 day of November 2019.


_____
                                    NOTARY PUBLIC, State of Florida
                                    Elizabeth Zahara
                                    Printed, typed or stamped
___ Personally Known to me          commissioned name of Notary Public
        or
___ Produced Identification
Type of Identification produced:
_____

ELIZABETH ZAHARAS
Notary Public-State of Florida
Commission # GG 307792
My Commission Expires
March 05, 2023

12

In SF's SOF ¶4, they alleged that "Lazaro Muse hired Dr. Goldstraj to work at HW". Lazaro however, denied that under oath in his five (5) point two paged affidavit in this matter.[4] Specifically, ¶5 said, "Likewise, I did not hire any of the medical directors for any of those three clinics". That raises a genuine issue of material fact as to Lazaro's ownership of any clinic. The failure to specifically reference ¶5 of the affidavit is patently unfair and does not erase Lazaro's words under oath. Citing to an affidavit that is so easy to follow does not run afoul of the Local Rule or the Federal Rule of Civil Procedure. Neither rule delineates the specificity with which the record needs to be cited; simply the rule requires that there be a record citation and that is what Lazaro's two-page, single-spaced affidavit is- a record citation.

In ¶19 of SF's SOF, and in an attempt to tie Lazaro's "guilty knowledge" to any alleged fraud at HW, SF alleged that Lazaro worked as a consultant at HW which was not denied, but did deny a following averment in that paragraph claiming that "Mr. Muse hired HW medical director Dr. Goldstraj" and referenced the same Lazaro affidavit described above.

In ¶29 of SF's SOF, in another attempt to tie Lazaro's "guilty knowledge" to any alleged fraud at PR, SF alleged that PR made $1000 monthly payments for Lazaro's vehicle.  Although that fact alone could not possibly equate to Lazaro's guilty knowledge of any fraud at PR, Lazaro nevertheless cited to specific page of his deposition testimony (pp. 269-271) wherein he explained that this was not a gift, but rather, compensation for his legitimate consulting services to PR.  If a jury chooses to disbelieve him, so be it.

In ¶30 of SF's SOF, and in an attempt to tie Lazaro to Confidence Billing, SF alleged that Lazaro owned such business. In response, Lazaro specifically denied that allegation and alleged that it was an inactive corporation and specifically cited to Sunbiz.org – a public record- but ore

---

[4] The affidavit has 7 points, but points 3-7 are the under oath denials and are on a single page.

importantly to his own affidavit as well.  Particularly, ¶6 of his 7 paragraph affidavit says, "I declare that I was never an owner, part owner or silent owner of Confidence Billing".

In ¶48 of SF's SOF, SF alleged that Lazaro was a consultant for PR.  In opposition to this allegation, which, notably, does not make Lazaro guilty of fraud, FDUPTA or unjust enrichment, Lazaro cited to his affidavit and his general deposition testimony. In ¶s 3 and 4 of his affidavit, Lazaro admitted that he provided consulting services to the three clinics but that he was never an owner, part owner or silent owner of any of them.

Lazaro's testimony that he did not own any of the clinics;  that he did not hire their medical directors; that he had nothing to do with the plans of treatment used by the clinics; and last, that he was not involved in any of the billing submitted by the medical clinics to SF. His denials raise genuine issues of material fact for a jury.

**NOEL SANTOS AND MEDICAL WELLNESS:**

In ¶40 of SF's SOF, SF alleged that the MW directors were unfamiliar with the statutory keeping requirements that they were obligated to satisfy.  Contrarily, the Muse Defendants cited to Dr. Suite's deposition testimony and report. Even though the Court took the affidavits of Drs. Coll and Carrasco as true, neither one of them said that at the time they were medical directors for MW, they knew – or told any Muse Defendant – that they were deficient in meeting their statutory duties at MW. Their affidavits merely show that today, and on reflection, they now believe that they did not perform to par during the relevant time period.  (ECF 178 and 179].

In ¶41 of SF's SOF, SF alleged particular deficiencies of MW's former medical directors. Again, the Muse Defendants cited to Dr. Suite's deposition testimony and written report in contravention of those factual allegations.

In ¶42 of SF's SOF, SF alleged that MW did not have copies of patients' files five years before it closed. We first note that MW's failure to produce the records does not make MW guilty of fraud. It may be subject to a statutory fine by AHCA, but it does not establish fraud. More importantly, and creating a genuine issue of material fact as to the implication of SF's allegation is the cited to deposition testimony of Noel Santos at p. 71.

In ¶43 of SF's SOF, SF alleged that as a consultant to MW, Lazaro reviewed patients' medical records without legal authorization to do so. In direct and specific contravention to that allegation, ¶7 of Lazaro's' affidavit – specifically cited to in the Muse Defendants' response to SF's SOF, says "*with regards to the allegations that I served as a 'business consultant' to MW and did not have a legally required business associate agreement, the Plaintiffs have never showed me a law, rule or statute that required such an agreement. In any event, I had full consent of MW to perform my consulting duties for MW which I faithfully performed*".

In ¶44 of SF's SOF, SF alleged that MW's medical records did not justify the plans of treatment for the patients. That averment was directly disputed by record citation to Dr. Nicholas Suite's deposition and report.

In ¶45 of SF's SOF, SF alleged that x-ray results were not documented for use in patients'' treatment at MW. That averment was directly disputed by record citation to Dr. Nicholas Suite's deposition and report.

In ¶46 of SF's SOF, SF alleged that MW's plans of treatment did not have time stamps on duration of treatments. However, the response cited to Dr. Nicholas Suite's deposition and report in contravention and/or explanation thereto.

In ¶s 63 through 67 of SF's SOF, SF alleged that MW did not accept copayments or deductibles from patients; did not make efforts to collect co-payments either. First, there is no

dispute as to what the law is regarding the collection of copayments and deductibles. Indeed, medical clinics were only required to make efforts to collect such payments. Stated differently, a failure to do so is certainly not fraud. But to be certain, the Muse Defendants particularly contradicted and/or satisfactorily explained sufficient efforts to comply this obligation (citing to the specific deposition testimony of Noel at pp. 42 and 71).   Notably, the Court held MW's and Noel's sworn testimony here to a standard of credibility beyond a reasonable doubt, meaning, that because the Court had some doubt as to their truthfulness in their deposition testimony, that they lose on summary judgment on this point. (Order at p. 19). Credibility determinations are to be handled by a jury, not by a court on summary judgment.   Indeed, the order cites to their specific testimony that front-desk personnel *were required to inform patients about this obligation and that some patients paid in cash in installments based upon their ability*. Those citations themselves - specifically pulled by the Court – create an issue of fact as to whether MW and Santos were in compliance with Florida law regarding attempts to collect co-payments and deductibles.

Noel swore he relied on the treaters to make treatment plans and the medical director to meet their responsibilities and that HW did tried to collect co-payments and deductibles.

**BEATRIZ MUSE AND HEALTH AND WELLNESS**

In ¶51 of SF's SOF, SF alleged that Drs. Franco and Goldstraj were not familiar with the statutes governing record keeping that applied to HW. They said that now, looking back, not that they knew and communicated that to anyone at the time. The record is undisputed that Dr. Franco was hired by HW *well after* Beatriz no longer owned it.  With regards to Dr. Goldstraj, the Muse Defendants cited the specific deposition testimony of Dr. Goldstraj (who was HW's medical director when owned by Beatriz), specifically, p. 269. Paraphrasing that testimony, Dr.

Goldstraj said that while he could have been a "better" medical director at HW, he still met his standard of care and was compliant with the statutes governing record keeping requirements and moreover, that patient care at HW was never compromised.  (Id.).

In ¶54 of SF's SOF, SF alleged that Lazaro was a business consultant at HW and reviewed its patients' medical records without legal authorization to do so. In direct response thereto, Lazaro cited to his deposition testimony and also to his affidavit.

In ¶56 of SF's SOF, SF alleged that Dr. Goldstraj was unaware of the record keeping requirements as HW's director. Repeating to the citation of his deposition testimony, the Muse Defendants illustrated that in his deposition, he did not say that he violated the record keeping requirements of the clinic and while he did so in a satisfactory manner, he could have and should have done so to a higher standard.

In ¶57 of SF's SOF, SF alleged that the x-rays were not documented regarding patients' treatment. In contravention, the Muse Defendants cited to Dr. Suite's testimony and report.

In ¶s58 through 62 of SF's SOF, SF alleged that HW did not accept copayments or deductibles from patients; and did not make efforts to collect co-payments either. First, medical clinics were only required to make efforts to collect such payments. So, failure to be successful in doing so is certainly not fraud. Last, the Muse Defendants particularly contradicted and/or satisfactorily explained the efforts by HW (before 2010) and MW to comply this obligation citing to the specific deposition testimony of Beatriz at p. 102 and Noel's deposition testimony at p. 71.   In sum, just like Noel, Beatriz relied on the professional to do their jobs honestly and appropriately. Last, she has no involvement with HW after 2010.

**DR. NICHOLAS SUITE**

Respectfully, the Court *totally* disregarded Dr. Suite's entire deposition testimony and report – of record - claiming that they were not sufficiently and microscopically cited to. Considering that his report (adopted in deposition) is only 14 pages long and that his opinions appear – as they often do - at the very end of the report under a heading in bold block letters as "COMMENT" and state as follows:

"Based on my review…taken from the record of Medical Wellness, it appears that all these patients …reviewed were involved in motor vehicle accidents…This in and of itself ought not to raise suspicion on the part of the responsible carrier. .. it is no secret among physicians who evaluate patients in car accidents that the complaints are quite similar from patient to patient. This is evident throughout the records.  The evaluations are also quite similar…the data would also likely reveal that most patients involved in a car accident and present to an emergency room would be evaluated in a similar fashion and have x-rays and probably CT scans immediately. Furthermore, the diagnosis sheets that they would be given to take home would also reflect the same diagnosis as those of the Medical Wellness Clinic. These are just the plain facts regarding the care and treatment of this population of patients. There are exceptions within this population of Medical Wellness patients and among them there are individuals who required MRI studies of the cervical and lumbar spine. There are also individuals who needed to have different types of treatment for involved body parts. The average accident patient however is reflected in these records and in my opinion, within a reasonable degree of medical probability, there is no cause for concern as far as the way in which these patients were evaluated and subsequently treated… the medical doctor evaluating these types of patients is in the best positon to make diagnoses on these patients…the use of templates is widespread and well accepted at every level of healthcare delivery including hospitals, clinics and outpatient surgery centers. The criticism of Dr. Rubenstein regarding templates is difficult to validate because of the Federal requirements regarding electronic health records (EHR)…

… To summarize, it is my opinion within a reasonable degree of medical probability that the care and treatment received by the majority of the patients at the medical wellness Clinic …were reasonable, related and necessary as they pertain to the respective accidents that prompted such evaluation and treatment",

it is just patently unfair for the Court to disregard the opposing evidence just because the response did not pinpoint his opinion. The citations to Dr. Suite's deposition and report clearly meet the requirements of the local and at worst, the minimum requirements of the federal rule. His testimony and report defeat SF's motion for summary judgment.

**PART IV**:  The Court erroneously considered evidence on a matter not pled by SF.  SF failed to plead the most poignant claim – the failure of medical clinics to collect co-payments and deductibles, or, to having made honest, diligent efforts to do so, as required by law.  Indeed,

when SF realized their oversight, and moved this Court for leave to amend they were denied such relief. But it mattered naught.  On summary judgment, the Court let them slide in the back door while it prohibited them from doing through the front door.  This was tantamount to a Fifth Amendment denial of due process as a prohibited variance or constructive amendment to the amended complaint. *United States v. Narog*, 372 F.3d 1243, 1247 (11th Cir. 2004).

**PART V**: The Court erred in finding that as a matter of law, Beatriz, Lazaro and Noel were *direct participants* in dealings with SF. Despite the clear statutory language of the FDUPTA statute limiting liability to a buyer and a seller (or a consumer to a supplier), the case law has developed to extend liability to individuals not necessarily in that direct link or chain. However, that case law clearly and steadfastly requires that the individual be "*a direct participant in the dealings*". *Nationwide Mut. Co. v. Ft. Meyers Total Rehab Ctr. Inc*., 657 F. Supp. 2d 1279, 1288 (M.D. FL, 2009); *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1074 (Fla. 5th DCA 2008).

Nowhere in the amended complaint, in SF's summary judgment motion in the record evidence, is there an iota support that Lazaro was ever a *direct participant* with SF.  Thus, to have found *him* individually liable under FDUPTA is clear error.  The argument also holds true for Noel and Beatriz. Nowhere did SF claim, much less present evidence that *they* had *direct dealings* with SF. The Court merely found that they did because of their positions as business owners of two of the three clinics – ignoring, of course, that Beatriz was no longer the owner of HW as of 2010. Thus, at the very least, there was a genuine issue of material fact as to Lazaro, Noel and Beatriz on the FDUPTA count.

**PART VI:** The computation of damages as to Lazaro and Beatriz was erroneous because legally, they could not have been held responsible for any alleged fraudulent billing from HW after

Beatriz sold it in 2010. There was no record evidence to show that either had any involvement with HW after the 2010 sale.

## CONCLUSION

The factual record is to be viewed against the moving party, here, SF. The Court did not do that. As demonstrated above, the Muse Defendants gave specific record citations – repeated herein - to the salient factual allegations supporting SF's motion. Those fact denials were overlooked or ignored by the Court, *Lugo* does not apply because there, the pro se plaintiff's response did not contain a statement of facts corresponding with the order and paragraph numbering scheme used by Carnival in its Statement of Material Facts, whereas here, the Muse Defendants filed a response that mirrored SF's SOF, following SF's order and paragraph numbering scheme.  If this Court is willing to recognize that *Lugo* does not apply, and that the simple and plain reading of the local and federal rules do not call for pinpoint citations, then, the Court should reverse itself and deny the motion as to the Muse Defendants.

Witness credibility cannot be determined on summary judgment either. The Court made credibility findings against all of the Muse Defendants, but this was not a bench trial.  The Court had to take as true the deposition testimony of the Muse Defendants and Lazaro's affidavit.

The deposition and "COMMENT" section to Dr. Suite's report raised a factual question regarding medical necessity, compliance with record keeping requirements and the propriety of the provision of the medical services and treatment.

Based on the foregoing, the Muse Defendants' Motion for Reconsideration should be granted as to the FDUTPA, unjust enrichment and declaratory judgment counts against the Muse Defendants.

**LOCAL RULE**: Undersigned counsel conferred with counsel for the Plaintiffs regarding this motion who advised that they oppose the granting of the relief requested herein.

Respectfully submitted,

s/ Richard Diaz

_____

Richard J. Diaz, Esq.
F.B.N. 0767697
3127 Ponce de Leon Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served electronically on all parties of record this 24th day of March, 2020.

s/ Richard Diaz

_____

Richard J. Diaz, Esq.