# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
## Miami Division

### CASE NO.  1:18-cv-23125-Scola/Torres

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

      Plaintiff,

v.

HEALTH AND WELLNESS SERVICES, INC.,
BEATRIZ MUSE, LAZARO MUSE, HUGO
GOLDSTRAJ, MANUEL FRANCO,
MEDICAL WELLNESS SERVICES, INC.,
NOEL SANTOS, ANGEL CARRASCO, PAIN
RELIEF CLINIC OF HOMESTEAD, CORP.,
JESUS LORITES, and JOSE GOMEZ-CORTES

      Defendants.

_____/

## PLAINTIFFS' VERIFIED AGREED MOTION FOR ATTORNEYS' FEES

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively the "State Farm Plaintiffs"), pursuant to section 501.2105, Florida Statutes, Federal Rule of Civil Procedure 54, and Local Rule 7.3, move the Court for an Order awarding attorneys' fees incurred by the State Farm Plaintiffs in pursuing this action (the "Verified Motion for Fees").

In accordance with Local Rule 7.3(b), the State Farm Plaintiffs served a draft of this motion on all represented Defendants on April 6, 2020 seeking the total amount of attorneys' fees expended: $2,072,585.88.  Extensive meet and confer efforts occurred prior to and continued following the service of the Verified Motion for Fees.  As a result of these efforts, the State Farm Plaintiffs and defendant Lazaro Muse, Beatriz Muse, Noel Santos (the "Muse Family"), Medical Wellness Services, Inc., ("Medical Wellness"), Health and Wellness Services, Inc. ("Health & Wellness"), Pain Relief Clinic of Homestead, Corp. ("Pain Relief"), and Dr. Jesus Lorites ("Lorites")[1] agree to the State Farm Plaintiffs' award of fees in the amount of $1,000,000.00.  Thus, this Verified Motion for Fees is based on the following memorandum of fact and law and seeks an order from this Court awarding fees to the State Farm Plaintiffs in the agreed amount of $1,000,000.00.

## I.   INTRODUCTION

The State Farm Plaintiffs brought the instant lawsuit against three licensed health care clinics, Health & Wellness, Medical Wellness, and Pain Relief (collectively the "Clinic Defendants"), their respective medical directors, Hugo Goldstraj, Manuel Franco, Angel Carrasco, Jorge Coll, Jesus Lorites and Jose Gomez-Cortes[2] (collectively the "Medical Director Defendants"), and the individuals who orchestrated the scheme to defraud the State Farm Plaintiffs, the Muse Family.  The State Farm Plaintiffs alleged each of these Defendants played an essential role in causing bills to be submitted to the State Farm Plaintiffs for services which

---

[1] The State Farm Plaintiffs have been unable to reach defendant Hugo Goldstraj in the months since his attorney withdrew and as a result he did not participate in the discussions related to this Verified Motion for Fees.  The State Farm Plaintiffs also did not confer with defendants Manuel Franco, Angel Carrasco, and Jose Gomez-Cortes who were defaulted pursuant to entry of a clerk's default. *See* [ECF Nos. 73 and 146].

[2] The State Farm Plaintiffs and defendant Jorge Coll reached a settlement and Dr. Coll was dismissed from this action.  *See* [ECF No. 142].

Defendants knew were rendered unlawfully in violation of Florida's Health Care Clinic Act,[3] Florida's Insurance Fraud Statute,[4] and Florida's Motor Vehicle No-Fault Law.[5] The State Farm Plaintiffs filed a motion for summary judgment against these Defendants because the services rendered at these clinics were unlawful and the continuous submission of the invoices for these services violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and entitled the State Farm Plaintiffs to relief on their claims for unjust enrichment and declaratory judgment.[6] [ECF No. 184], at 16-20. On March 5, 2020, this Court entered an order granting the State Farm Plaintiffs' Motion for Partial Summary Judgment against all Defendants except for Drs. Franco, Carrasco, and Gomez-Cortes, who were defaulted, and Dr. Coll, who is no longer a party to this action. [ECF No. 321], March 5, 2020, Omnibus Or. on Mots. for Summ. J.

Section 501.2105 of FDUTPA provides that "[i]n any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. §501.2105(1). The statute directs an award of fees and costs may be obtained "after . . . exhaustion of all appeals," but no timely appeal of the adverse judgment has been advanced by Defendants under Rule 4 of the Federal Rules of Appellate Procedure as of the date of this Verified Motion for Fees as such motion would be premature at this time. Nevertheless, the State Farm Plaintiffs are required by Local Rule 7.3 and by this Court's Order [ECF No. 321] to file their Verified Motion for Fees within sixty (60) days of the entry of the Omnibus Order on Motions for Summary Judgment ("Summary Judgment Order"). S.D. L.R. 7.3(a)(1).

As set forth below, the work of the State Farm Plaintiffs' attorneys was essential to the successful prosecution of this case, including the FDUTPA claim. David I. Spector of Holland & Knight, LLP[7] ("Holland & Knight") served as lead counsel for the State Farm Plaintiffs in this litigation. He has extensive experience representing the State Farm Plaintiffs in similar litigation

---

[3] Fla. Stat. § 400.990 *et seq.*,
[4] Fla. Stat. § 817.234,
[5] Fla. Stat. § 627.730 *et seq.*
[6] Fla. Stat. § 501.201 *et seq.*
[7] Attorneys David Spector was a partner at Akerman LLP at the time the Complaint was filed on August 1, 2018. In February 2019, Mr. Spector, as well as several others who assisted with this litigation, moved to Holland & Knight LLP.

to combat insurance fraud, which is borne out by the fact the Court cited to a number of cases litigated by Mr. Spector in its Order granting the State Farm Plaintiffs' Motion for Partial Summary Judgment.[8]  [ECF No. 321].  The amount and substance of the work performed by the lawyers for the State Farm Plaintiffs in this case, both at their current firm of Holland & Knight and while employed at Akerman LLP, was reasonable and necessary in light of the complexity and number of factual and legal issues litigated by the parties in this case.  Consequently, the award of the fees sought by the State Farm Plaintiffs is appropriate.

## II.   ARGUMENT

### A.   The State Farm Plaintiffs are entitled to a fee award under FDUTPA against the Defendants.

The State Farm Plaintiffs seek an award of attorneys' fees as the prevailing party under section 501.2105, Florida Statutes.  In diversity cases such as here, federal courts apply the substantive law of the forum state, unless federal constitutional or statutory law is contrary. *Ins. Co. of N. Am. v. Lexow,* 937 F.2d 569, 571 (11th Cir. 1991).  Statutes allowing for recovery of attorneys' fees are typically substantive in nature.  *See Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *3 (S.D. Fla. Apr. 14, 2009).  Florida substantive law governing the award of attorneys' fees under FDUTPA thus applies to the State Farm Plaintiffs' request for fees. *See Millennium Indus. Network, Inc. v. Hitti*, 2014 WL 2042321, at *3 (S.D. Fla. May 19, 2014) (applying Florida law in diversity case to motion for attorney's fees under FDUTPA).

Section 501.2105 of FDUTPA provides for the discretionary award of reasonable attorney's fees and costs to the prevailing party.  *Chastain v. N.S.S. Acquisition Corp.*, 2010 WL 5463859, at *2 (S.D. Fla. Dec. 29, 2012) (citing *Hubbel v. Aetna Cas. & Sur. Co.*, 758 So.2d 94, 101 n. 10 (Fla. 2000)).  In pertinent part, § 501.2105 provides:

> (1) In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

---

[8] *See, e.g., State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995 (S.D. Fla. Mar. 30, 2017); *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc.*, 145 F. Supp. 3d 1154 (S.D. Fla. 2015); *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015) (Moore, C.J.); *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017).

(2) The attorney for the prevailing party shall submit a sworn affidavit of his or her time spent on the case and his or her costs incurred for all the motions, hearings, and appeals to the trial judge who presided over the civil case.

(3) The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit.

(4) Any award of attorney's fees or costs shall become a part of the judgment and subject to execution as the law allows.

Fla. Stat. § 501.2105.  As the foregoing section requires, the State Farm Plaintiffs' prevailed on their Motion for Partial Summary Judgment and have attached hereto the sworn declaration of the State Farm Plaintiffs' attorney, David Spector, as **Exhibit 1**.

Courts have wide discretion to award attorneys' fees, to apportion them among claims and parties, and to determine "*how* to divide liability for fees" to achieve a fair and sensible solution. *Council for Periodical Distrib. Ass'ns v. Evans*, 827 F.2d 1483, 1487-88 (11th Cir. 1987) (emphasis in original).  Courts may "apportion fees equally among defendants, joint and severally, or by some other method." *United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006) (citing *Evans*, 827 F.2d at 1487).  Further, courts may divide fees according to the "relative culpability" of the defendants, amount of time spent by the plaintiff in preparing the case against each defendant, or a defendant's participation in the case, among other methods.  *Evans*, 827 F.2d at 1487-88 (citing various cases).  When the trial court makes a finding of joint and several liability, awarding attorneys' fees jointly and severally is appropriate.  *Flagstar Bank, FSB v. Hochstadt*, No. 08-80795-CIV, 2010 WL 1226112, at *2 (S.D. Fla. Mar. 4, 2010) (holding that the defendants who were jointly and severally liable for the plaintiff's damages were also jointly and severally liable for the plaintiff's attorney's fees).

Here, each of the Defendants played an essential role in effectuating the scheme.  The Muse Family orchestrated the scheme and exercised control of each clinic.  *See* [ECF No. 321], at 1. The Clinic Defendants themselves were the conduit for the unlawful services to be rendered and for the resulting invoices to be submitted to the State Farm Plaintiffs.  *Id*. at 15.  And the Medical Director Defendants were responsible for ensuring the services were lawful but failed to do so.  *Id*. at 3.  As such, this Court assigned joint and several liability against the Defendants when it granted Plaintiffs' Motion for Partial Summary Judgment. *Id*. at 28.  Thus, it is appropriate for fees to be awarded jointly and severally as well.  *Hochstadt*, 2010 WL 1226112, at *2.

In addition, a prevailing party may recover attorneys' fees for time spent on FDUTPA and non-FDUTPA claims when all claims are based on the same set of facts. *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla.*, No. 14-cv-20625-MOORE/MCALILEY, [ECF No. 139] at *3-4 (S.D. Fla. Nov. 13, 2015) (citing *Covington v. Ariz. Beverage Co., LLC*, 2011 WL 11796786, at *1, *3 (S.D. Fla. Aug. 25, 2011)), *adopted*, [ECF No. 140]. In *Medical Service*, State Farm prevailed on its FDUTPA, unjust enrichment, and declaratory judgment claims at summary judgment in a case nearly identical to this case, involving another clinic operating unlawfully under a fraudulently obtained exemption. *Med. Serv.*, [ECF No. 139] at *2-4. The Court determined the FDUTPA and non-FDUTPA claims arose from the same set of facts, apportionment among claims was not required, and the plaintiffs were entitled to their reasonable attorneys' fees. *Id.* at *4. The same is true in this matter, as the State Farm Plaintiffs prevailed against defendants Health & Wellness, Medical Wellness, Pain Relief, Lazaro Muse, Beatriz Muse, Noel Santos, Jesus Lorites and Hugo Goldstraj on FDUTPA and unjust enrichment claims based on the same set of facts: each of the Clinic Defendants operated and/or controlled by the Muse Family engaged in the same deceptive practice of submitting bills to the State Farm Plaintiffs for unlawful services. The Clinic Medical Directors were charged with the responsibility of ensuring the services at the Clinic Defendants were lawful, and they failed to do so.

A party remains a prevailing party under FDUTPA, and thus entitled to attorneys' fees and costs, even when the party has not prevailed on all claims. For example, in *Mukamal v. Swire Pacific Holdings, Inc*., No. 08-23444, 2011 WL 13173589, *3-4 (S.D. Fla. Jul. 29, 2011), Judge Altonaga addressed a motion for attorney's fees brought by the plaintiff after the plaintiff succeeded against the defendants on a portion of the claims brought. Critically, the *Mukamal* Court focused on the fact plaintiff obtained **complete relief** through its success on a portion of the claims. *Id*. As a result, the Court awarded complete fees to the plaintiff. The same is true here. The State Farm Plaintiffs brought claims for fraud, violations of FDUTPA, unjust enrichment and declaratory relief in their initial complaint, but only moved for summary judgment on the non-fraud claims. That said, the State Farm Plaintiffs obtained complete relief, i.e., were awarded the total amount of damages sought in their complaint, through their claims for violations of FDUTPA and unjust enrichment. Thus, the State Farm Plaintiffs are entitled to attorneys' fees for time spent on all claims in this matter.

In exercising discretion to award fees and costs under FDUTPA, courts consider various factors, including:

(1) the scope and history of the litigation;

(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) the merits of the respective positions-including the degree of the opposing party's culpability or bad faith;

(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

(6) whether the defenses raised were mainly to frustrate or stall the litigation; and

(7) whether the claim asserted was to resolve a significant legal question under FDUTPA law.

*Sodikart USA v. Geodis Wilson USA, Inc.*, 2014 WL 6968073, at \*3 (S.D. Fla. Dec. 9, 2014) (citing *Humane Soc. of Broward Cnty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 971–72 (Fla. 4th DCA 2007)).  As set forth below, analysis of these factors this weighs in favor of awarding the State Farm Plaintiffs reasonable attorneys' fees.  Moreover, the Defendants do not contest the State Farm Plaintiffs' award of fees.

### 1.      Scope and History of the Litigation.

In light of the complex fraud scheme at issue and the numerous defendants involved, the prosecution of the State Farm Plaintiffs' claims for relief involved considerable attorney time and effort directed to motion practice, discovery, and trial preparation.  Those efforts began from the inception of this suit.  To start, the State Farm Plaintiffs addressed three separate motions to dismiss from defendants Dr. Coll [ECF No. 42], Dr. Lorites [ECF No. 34], and Health & Wellness [ECF No. 65] which this Court denied in an Omnibus Order on Motions to Dismiss, *see* [ECF No. 113].

While the motions to dismiss were pending, attorneys for the State Farm Plaintiffs engaged in significant discovery efforts to gather the evidence which ultimately enabled the State Farm Plaintiffs to later prevail on summary judgment.  For example, the State Farm Plaintiffs served written discovery on each of the twelve Defendants in this suit.  In order to obtain proper responses and a complete production, the State Farm Plaintiffs were required to engage in numerous meet

and confer conferences with opposing counsel and, in certain instances, attend hearings to obtain relief. *See* [ECF No. 114]. Virtually every Defendant in this suit propounded insufficient discovery responses which resulted in the submission of repeated amended responses and several defendants made multiple productions after information learned during depositions revealed that prior productions were insufficient. The State Farm Plaintiffs also issued subpoenas to fifty (50) non-parties to obtain bank records, tax returns, and other documents from individuals and companies connected to the Defendants; and reviewed, for example, approximately 40,000 pages of bank records obtained through these sources. Counsel for the State Farm Plaintiffs deposed eleven fact witnesses[9] and the Muse Defendants' medical expert as well as defended the deposition of their corporate representative and their own medical expert. In short, the discovery in this case was complicated due to the nature of the claims, the number of parties, and the efforts which were required to unravel the complex web of persons and entities that received funds that flowed from the unlawful scheme and establish the connections between the parties which prove the organized effort by the Defendants. By way of example, the discovery obtained showed companies tied to the Muse Family received significant payments. For example, Health & Wellness paid $32,289.56 to Professional Maintenance and Janitorial, a company owned by Yasiel Gutierrez Muse, while Medical Wellness paid $488,252.74 and Pain Relief paid $96,284.51 to them. Similarly, companies owned by Daniel Collazo, Pain Relief's current owner, received $18,488.10 from Health & Wellness; $33,198.20 from Medical Wellness; and $115,101.43 from Pain Relief itself.

As the Court is well aware, the Defendants filed numerous motions, each of which necessitated substantial briefing and each of which the Court found meritless. These motions included but are not limited to: Dr. Lorites' Motion to Disqualify, [ECF No. 166]; the Muse Defendants' Motion to "Reveal the Deal," [ECF No. 188]; the Muse Defendants' Omnibus Notice of Filing, [ECF No. 176], the Muse Defendants' Motion to Re-Open Discovery, [ECF No. 143]; the Muse Defendants' Motion to Strike Late Disclosed Witness, Anet Perez, [ECF No. 254] and the Muse Defendants' Motion to Limit Testimony of [the State Farm Plaintiffs' medical expert] Dr. Rubenstein, [ECF No. 269]. Ultimately, this Court denied each of these motions in its December 19, 2020 Omnibus Order.

---

[9] The State Farm Plaintiffs began the deposition of Dr. Lorites, but it was terminated by his counsel, and after denying Dr. Lorites' disqualification motion, the State Farm Plaintiffs were not permitted to complete his deposition.

On October 30, 2019, the State Farm Plaintiffs moved for summary judgment, *see* [ECF No. 184]. On that same day, the Muse Defendants filed their own Motion for Summary Judgment. [ECF No. 172]. Thereafter, on November 13, 2019, Dr. Lorites also filed a Motion for Summary Judgment. Thus, in addition to filing the appropriate supporting documentation, i.e, the State Farm Plaintiffs' Statement of Facts and the extensive record evidence to which it cited, the State Farm Plaintiffs also engaged in defensive motion practice against the Muse Defendants' and Dr. Lorites' Motions for Summary Judgment.

The State Farm Plaintiffs actively prosecuted this case for a year and a half, from its August 1, 2018 inception through the March 5, 2020 Omnibus Order on Summary Judgment, and were diligently preparing for trial when this Court granted the State Farm Plaintiffs' Motion for Partial Summary Judgment. In preparation for trial, counsel for the State Farm Plaintiffs also prepared significant pre-trial motions, including motions in limine and a motion to strike the expert retained by the Muse Defendants. The State Farm Plaintiffs' Motion in Limine [ECF No. 271] detailed 10 categories of evidence which are properly excludable. The State Farm Plaintiffs also responded to the Muse Defendants' scatter-shot Motion in Limine. Similarly, the State Farm Plaintiffs filed an extensive Motion to Strike Dr. Suite and defended against the Muse Defendants own Motion to Strike Dr. Rubenstein, the latter of which was denied as a result of those efforts. *See* [ECF No. 299], February 12, 2020 Or. The State Farm Plaintiffs also expended significant resources in preparing a Pre-Trial Stipulation which encompassed not only the identification of all fact and legal issues which would be presented at trial, but also the State Farm Plaintiffs' expected witness and exhibit lists. Each of the foregoing required substantial legal and factual research and development.

Finally, the efforts dedicated to actual trial preparation were robust before the Court's entry of its Omnibus Order on Summary Judgment. For example, significant efforts to prepare witness outlines for more than ten witnesses expected to testify had already been undertaken. Exhibits identified as part of the pre-trial stipulation were redacted to be used at trial. Vendors intended to be used to prepare trial graphics were consulted and draft trial graphics had been prepared. Efforts to plan a mock trial had also begun. All of these efforts were necessary and appropriate considering the complex nature of this case and the State Farm Plaintiffs' obligation under Florida law to counter efforts to defraud the insurance industry.

Thus, the efforts of the State Farm Plaintiffs' counsel in this case were wide-ranging, extensive, and necessary when faced with significant and complex issues in unraveling, and then proving, the details of such a complex fraud scheme like the instant litigation over the course of nearly two years.

### 2. *Defendants' Ability to Satisfy an Award of Fees.*

As the factual materials filed by the State Farm Plaintiffs in support of their Motion for Partial Summary Judgment indicate, the Defendants obtained substantial payments from the State Farm Plaintiffs, and presumably other insurance companies while engaging in the conduct that gave rise to this litigation.  Indeed, tax returns from each of the Clinic Defendants reflect that each one annually receives over $1 million in revenue.  Further, very large sums of money were withdrawn from the Muse Clinic operating accounts in cash.  For example, from October 2010 through April 2019, $2,001,407.84 was withdrawn in cash from the Health & Wellness operating account; from July 2011 through March 2019, $1,239,794.32 was withdrawn in cash from the Medical Wellness operating account; and from July 2011 through March 2019, $1,693,824.44 was withdrawn in cash from the Pain Relief operating account.  As this Court noted in the March 5, 2020 Order, during the operation of the three Clinic Defendants, hundreds of thousands of dollars were paid to companies owned by defendant Lazaro Muse.  [ECF No. 321], at 11.  Specifically, Health & Wellness paid $99,540 to Advance Total; Medical Wellness paid $201,337.67 to Advance Total; and Pain Relief paid $203,381.46 to Advance Total.  *Id*. at 11-12.  As this Court also noted, Pain Relief also made payments in excess of $1,000.00 each month for Lazaro Muse's Porsche.  Similarly, large payments were made to entities related to the Muse Family.  For example, Health & Wellness paid $32,289.56 to Professional Maintenance and Janitorial, a company owned by Yasiel Gutierrez Muse.  Medical Wellness paid $488,252.74 to the same company and Pain Relief paid $96,284.51 to them.

Further, defendants Beatriz Muse and Lazaro Muse, who this Court found to be jointly and severally liable in the Omnibus Order on Summary Judgment, each own several businesses either together or separately including Healing Hands, Inc.  Moreover, defendant Lazaro Muse is believed to have considerable real estate holdings under his control.  Accordingly, this factor also weighs in favor of a fee award for the State Farm Plaintiffs.

### 3. *Whether an Award of Fees Against Defendants Would Deter Others from Acting in Similar Circumstances.*

An award of the State Farm Plaintiffs' attorneys' fees under FDUTPA would serve as a deterrent to other actors who would pursue a scheme similar to the one the Defendants perpetrated. The gravamen of litigation like the present case is to protect the safety of patients and the defense of insureds' limited Personal Injury Protection benefits. In addition, insurers require the reliability of medical professionals like the Muse Medical Directors to fully comply with their legal obligations and properly supervise the operations of facilities where they are employed to do so. Insurers' ability to rely on such compliance is indispensable to the proper functioning of the insurance system. If these Defendants are permitted to collectively flout these legal obligations and provide services which are both medically unnecessary and unlawful as well as hiring medical directors that are at best ignorant of their legal duties and at worst intentionally ignoring those obligations, the result would not only threaten the safety of patients receiving treatment pursuant to their PIP benefits but the entire infrastructure for PIP insurance. Instead, a sufficient deterrent must be enforced in order to emphasize the ramifications of such pervasive misconduct. As such, an award of fees to the State Farm Plaintiffs'—especially in this case where liability was found against "consultants" and billers involved in the underlying scheme—would unquestionably deter others from engaging in similar misconduct.

### 4. *Merits of the Respective Positions Including the Degree of Defendants' Culpability or Bad Faith.*

The Defendants' respective legal and factual positions in this case reflect, at a minimum, objective culpability. As set forth above, the State Farm Plaintiffs brought this suit against the named Defendants because these Defendants worked together to effectuate a scheme to defraud premised on several key elements. First, the Defendants set up licensed health care clinics owned or controlled by either the Muse Family or their known associates. Second, the Clinic Defendants employed medical directors who were practicing outside of their fields, *e.g.,* Health & Wellness's two medical directors were a pediatrician and a cardiologist, respectively. The Muse Medical Directors performed the bare minimum in terms of supervision of the Muse Clinics. For example, Dr. Carrasco stated "[a]t the time that I was hired, I had not reviewed in detail nor received any education regarding the laws and/or regulations which apply to medical directors in the state of Florida such that I did not know the scope of my responsibilities as Medical Wellness's medical

director." [ECF No. 179], Carrasco Aff. at ¶ 9.  Similarly, Dr. Goldstraj admitted he "was not a very good medical director." [ECF No. 159], H. Goldstraj Dep. at 222:10-13.  They failed to create, review, or implement policies at the Muse Clinics.  They failed to train staff or ensure staff were properly performing the care prescribed and failed to ensure said treatment was properly prescribed.  They lacked any knowledge regarding whether the Muse Clinics collected co-payments or deductibles, had the means to do so, and some were unaware that such requirement even existed.  Critically, in part due to their lack of relevant qualifications, the Muse Medical Directors failed to ensure the care patients purportedly received was consistent with their subjective symptoms and objective diagnosis.  This leads to the final tenet of the underlying fraudulent scheme: the treatment at the Muse Clinics was performed in non-credible patterns and substantively failed to meet the standard of care.

Significantly, the Defendants provided very little – if any --exculpatory evidence to rebut the State Farm Plaintiffs' position as to these elements.  For example, none of the defendants denied the relationships between the Muse Clinics' owners and the Muse Family.  *See, e.g.,* [ECF No. 162], D. Collazo Dep. at 50:17-19 (admitting that he knew Lazaro Muse from Cuba). Similarly, the Muse Medical Directors admitted they lacked the experience necessary to treat patients at the Muse Clinics and, in certain instances, claimed it was not their responsibility to do so.  These medical directors admitted they were unfamiliar with many of the legal requirements governing the operation of the Muse Clinics including the requirement to collect co-payments and deductibles, recordkeeping requirements, and the scope of practice for licensed massage therapists. *See e.g.,* [ECF Nos. 179 and 178], Carrasco Aff. at ¶¶ 9-11; Coll Aff. at ¶¶ 11-13.

Moreover, the Defendants collectively made virtually no effort to rebut the allegations regarding the lack of medical necessity of the services performed by the Muse Clinics.  Only the Muse Defendants hired an expert and even so, he only reviewed sixteen of approximately 225 patient files at issue.  As set forth in the State Farm Plaintiffs' Motion to Strike, the Muse Defendants' medical expert conceded numerous components of the care rendered at the Muse Clinics met neither with his experience nor his training including the failure to use a 1-10 pain scale, diagnosing patients with injuries from auto accidents with tendonitis, and patients receiving treatment that was not prescribed.  [ECF No. 270].  All of these, viewed collectively, establishes an overwhelming theme of bad faith and culpability.

This Court stated "the Clinics, with the direct participation of the medical director Defendants and the Muse Family, operated in violation of numerous Florida laws, rules, and regulations promulgated specifically to protect the general welfare of their patients. These deficiencies include the most basic and fundamental aspects of rendering healthcare services: using appropriately licensed practitioners; maintaining adequate medical records; employing competent and legally compliant medical directors; and collecting patient payments." [ECF No. 321], March 5, 2020, Omnibus Or. on Mots. for Summ. J. at 21.

### 5. *Whether the Claim Brought Was Not in Subjective Bad Faith but Was Frivolous, Unreasonable, Groundless.*

As explained in the foregoing subsection, Defendants' claims and defenses were entirely without factual support or legal merit and essentially groundless. Thus, this factor favors the State Farm Plaintiffs' request for an award of fees.

### 6. *Whether Defenses Were Raised Mainly to Frustrate or Stall.*

As explained in response to the fourth and fifth factors, above, Defendant's claims and defenses were entirely without factual support or legal merit. This factor is relevant primarily when a plaintiff prevails in a FDUTPA case and is based on the reasonableness of the defendant's positions and the strategy underlying its tactics. *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 WL 3536917, at *19 (S.D. Fla. Aug. 17, 2017). The Defendants effectively only raised one affirmative defense, i.e., statute of limitations, as it was the only defense which formed the basis for any defensive motions for summary judgment.[10] Yet none of the Defendants served any written discovery on the State Farm Plaintiffs to support any defense, let alone the statute of limitations defense. Further, the State Farm Plaintiffs sought discovery of their own relating to the Defendants' defenses yet after the considerable efforts required to obtain production of any responsive documents, none were produced.

Similarly, although the Defendants denied the State Farm Plaintiffs' allegations the bills submitted by the Clinic Defendants were for services that were not medically necessary, as noted above, only Medical Wellness retained a medical expert in an attempt to refute this point. In addition to not retaining a medical expert, defendants Health & Wellness and Pain Relief made no

---

[10] The Defendants in fact did raise other affirmative defenses including voluntary payment and unclean hands, *see e.g.*, [ECF No. 115], Lorites' Answ., but these defenses were effectively abandoned as no discovery of any kind was pursued to support them.

efforts to dispute the opinion of State Farm Plaintiffs' medical expert. So while the Defendants were quick to deny the allegations raised by the State Farm Plaintiffs and file repeated baseless motions, after two years of litigation, these Defendants fell woefully short in providing any basis for a factual dispute and repeatedly took positions that were unsupported.

Accordingly, this factor favors the State Farm Plaintiffs' request for an award of fees.

> ### 7.    *Whether the Claim Brought Was to Resolve a Significant Legal Question under FDUTPA Law.*

The FDUTPA claims in this case were brought to provide the State Farm Plaintiffs with the remedy established by Florida law for such deceitful and unlawful conduct. In addition to the traditional violation of FDUTPA applicable here, this action was also important to establish the ability of insurers to use FDUTPA in conjunction with a violation of a predicate statute which prohibits unfair, deceptive or unconscionable acts which includes Florida's PIP Statute, Florida's Insurance Fraud Statute, as well as Florida's Deceptive Insurance Trade Practices Act to form the basis for both traditional and *per se* violations of FDUTPA. *See* Fla. Stat. § 627.736; Fla. Stat. § 817.234; Fla. Stat. § 626.9541.

Further, this action solidified whether a medical director's abdication of legal responsibilities to supervise and ensure a clinic's bills are not fraudulent or unlawful form the predicate for traditional application of FDUTPA. In addition, this action established a medical director's failure to supervise the treatment at a health care clinic and ensure said treatment was medically necessary violates Florida's PIP Statute, Florida's Insurance Fraud Statute, as well as Florida's Deceptive Insurance Trade Practices Act and serves as a predicate for *per se* relief under FDUTPA. *See* Fla. Stat. § 627.736; Fla. Stat. § 817.234; Fla. Stat. § 626.9541. Finally, this action established a failure to collect co-payments and deductibles, which separately violates Florida's Insurance Fraud Statute, violates Florida's Medical Director Statute and serves as a predicate for *per se* relief under FDUTPA. As such, this factor weighs in favor of the State Farm Plaintiffs' fee request as well.

### B.    The State Farm Plaintiffs' Attorneys' Fees Are Reasonable.

The starting point in determining the amount of reasonable attorney fees is the lodestar, which is calculated by multiplying hours reasonably expended by a reasonable hourly rate. *See Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); *Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 214 (Fla. 2003); *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d

1145, 1150 (Fla. 1985) (adopting the federal lodestar method).  This lodestar may then be adjusted for the results obtained. *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *3 (S.D. Fla. April 14, 2009).

### 1.    The State Farm Plaintiffs' Attorneys' Rates are Reasonable.

The Court must first determine the reasonable hourly rate.  A "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Duckworthy v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).  In determining a reasonable hourly rate, the Court also may consider any of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and the criteria set forth in Rule 4-1.5(b)(1) of the Rules Regulating The Florida Bar. *Rowe*, 472 So. 2d at 1150.  The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases.

*Eugene*, 2009 WL 996016 at *4 n. 2.  Notably, "the court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Eugene*, 2009 WL 996016 at *4.

The rates Holland & Knight attorneys, as well as the Akerman attorneys, charged the State Farm Plaintiffs are those they customarily charged for similar types of complex healthcare fraud litigation which includes many prior and concurrent engagements for the same client.  These rates are also representative of customary market rates in the South Florida legal community for firms with comparable skills, reputations, expertise, and qualifications; and for work of similar complexity.[11]  Federal affirmative litigation to combat wide-scale insurance fraud is a niche practice requiring specialized knowledge and skill.  Specifically, lead counsel and the lawyers representing the State Farm Plaintiffs in this litigation are part of a team of litigators that represent

---

[11] This is consistent with factors five and twelve of the *Johnson* factors.

the State Farm Plaintiffs, as well as other insurers, in investigating and litigating suits of this nature. The efforts of these lawyers have collectively contributed to numerous successful outcomes in similar cases, many of which were cited in this Court's Order on Summary Judgment. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995 (S.D. Fla. Mar. 30, 2017); *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc*., 145 F. Supp. 3d 1154 (S.D. Fla. 2015); *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015) (Moore, C.J.); *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017); *State Farm Mutual Automobile Insurance Company v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291 (S.D. Fla. 2018); *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, No. 14-20066-CIV, 2015 WL 4387946, at *1 (S.D. Fla. June 24, 2015). Further, the team of lawyers for the State Farm Plaintiffs litigate similar matters throughout the United States. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson*, *P.C.*, Case No. 16-CV-01085 (W.D. Wash.); *State Farm Mut. Auto. Ins. Co. v. A to Z Medical Care. P.C.*, No. 17-CIV-4443 (E.D.N.Y.); *State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, No. 18-1806-MN (D. Del.).

As set forth in the table below and the declaration attached as Exhibit 1, the rates for the State Farm Plaintiffs' lawyers range from $333.00 to $360.00 for partners generally with the rate of $500.00 per hour assigned to lead counsel, $230.00 to $275.00 for associates and $175.00 to $180.00 for paralegals which are customary fees that are consistent with awards in similar cases. In fact, Magistrate Judge Thomas Smith in the Middle District found similar rates to be reasonable for lawyers retained by one of the State Farm Plaintiffs in another matter of similar complexity. *See Ayers v. State Farm Mut. Auto. Ins. Co*., No. 17-cv-1265, 2018 WL 375719, at * 3-4 (M.D. Fla. Jan. 11, 2018) (finding that the rate of $550.00 per hour for the lead partner, $425.00 per hour for another partner who assisted on the matter, and $270.00 per hour for an associate, to be reasonable hourly rates). In addition, Defendants do not dispute the reasonableness of these rates.

Moreover, in this district, $500.00 is a reasonable hourly rate for the partner who is the lead trial lawyer on a case as are the rates of $330.00 - $360.00 for partners with twelve or more years of experience. *See Cap'l One N.A. v. Miami Motor Sports, LLC*, No. 18-61942, 2019 WL 2106106, *2 (S.D. Fla. Apr. 1, 2019) (finding the hourly rate of $500.00 for the lead lawyer with twenty years of experience representing Fortune 500 companies in federal court was reasonable);

*Golf Clubs Away LLC v. Hostway Corp.*, No. 11-62326, 2012 WL 2912709, *2-4 (S.D. Fla. Jul. 16, 2012) (Scola, J.) (finding partner rates at $500.00 per hour to be reasonable); *Denarii Systems, LLC v. Arab*, No. 12-24239, 2015 WL 328205, *2 (S.D. Fla. Jan. 23 2015) (finding hourly rate of $500.00 for lead partners to be reasonable); *BMC Business Overseas Corp. v. Incasa LLC, d/b/a PPD Financial*, No. 17-24046, 2019 WL 1897804, at *3 (S.D. Fla. Feb. 15, 2019) (finding the rate of $435.00 for partners who had been practicing law for 15 years to be reasonable).

Similarly, the range of $230.00 per hour (for more junior associates) to $280.00 (for more senior associates) per hour for associates is a reasonable hourly rate in this district. *See Cap'l One N.A. v. Miami Motor Sports, LLC*, No. 18-61942, 2019 WL 2106106, *2 (S.D. Fla. Apr. 1, 2019) (finding associate rate of $300.00 per hour was reasonable); *Golf Clubs Away LLC v. Hostway Corp.*, No. 11-62326, 2012 WL 2912709, *2-4 (S.D. Fla. Jul. 16, 2012) (Scola, J.) (finding associate rates at $375.00 per hour to be reasonable); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598, 2008 WL 276057, *2 (S.D. Fla. Jan. 31, 2008) (finding $400.00 per hour a reasonable rate for an eighth year associate).

Finally, $175.00 to $180.00 are reasonable hourly rates for paralegals in commercial litigation cases. *See Parrot Inc. v. Nicestuff Distribution Int'l, Inc.*, No. 06-61231, 2010 WL 680948, *8 (S.D. Fla. Feb. 24, 2010) (finding paralegal rate of $190.00 per hour as reasonable); *Global Finance, LLC v. Pay Pro Card Corp.,* 2008 WL 4663900, *2-3 (M.D. Fla. Oct. 20, 2008) (finding that hourly rate of $170 to $190 for paralegal work reasonable).

As set forth in the declaration of David Spector, in 2019 the State Farm Plaintiffs and its Holland & Knight lawyers who represented the State Farm Plaintiffs in this case moved to a blended rate agreement which governed the majority of the litigation. As part of the blended rate agreement, a single rate was applied to partners and associates. Courts have found similar rates to be reasonable.[12] *Johnsen v. Kirtz*, No. 18-CV-81019, 2019 WL 7899728, at *1 (S.D. Fla. Feb. 5, 2019) (holding that a blended hourly rate of $312.20 was not excessive); *Fid. Life Ass'n v. Cohen*, No. 15-81552-CIV, 2017 WL 11220364, at *3 (S.D. Fla. Oct. 11, 2017) (finding that the average hourly rate of $310 for attorneys practicing in Miami that was based on market studies and published in independent news articles "to be persuasive and consistent with this Court's own

---

[12] The State Farm Plaintiffs' blended rate with their lawyers at Holland & Knight is confidential but fees associated with same are outlined in detail below and in the declaration of David Spector attached as Exhibit 1.

knowledge of reasonable hourly rates for attorneys practicing in this District.")  The blended rate recognized an ongoing and comprehensive business relationship between the parties and was premised on the depth and experience of the professionals focused on this niche practice.

> **2.      The Hours Expended by the State Farm Plaintiffs' Attorneys were Reasonable.**

The second step in the process is determining the number of hours reasonably expended in the litigation.  *See Norman*, 836 F.2d at 1302.  Fee applicants are required to exercise "billing judgment . . . by excluding excessive, redundant, or otherwise unnecessary hours, [or] the court must exercise billing judgment for them."  *Eugene*, 2009 WL 996016 at *4 (citations and quotations omitted).  The statutory language of the FDUTPA contemplates recovery of attorneys' fees for hours devoted to the entire litigation and does not require allocation among various claims unless the attorneys' services were clearly not related in any way to the FDUTPA claim. *Citadel Commerce Corp. v. Cook Sys., LLC*, 2009 WL 2591158, at *3 (M.D. Fla. 2009); *Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So. 2d 311, 314 (Fla. 4th DCA 2007) (explaining that where Chapter 501 claims are based on the same transaction as alternative theories of recovery, no allocation of attorney's services need be made except for services totally unrelated to or beyond the scope of the FDUTPA claim).  Thus, no allocation of hours is required where the other claims in litigation arose from the same common core of facts as the FDUTPA claim.  *See Mandel*, 965 So. 2d at 315.

As set forth more fully in the declaration attached as Exhibit 1 hereto, attorneys representing the State Farm Plaintiffs expended the time detailed below:

| TIMEKEEPER | HOURLY RATE(S) | HOURS WORKED | FEE AMOUNT |
|---|---|---|---|
| **Attorneys** | | | |
| David Spector | $500.00 | 619.7 | $198,497.60 |
| Caitlin Saladrigas | $229.50 | 2,496.4 | $591,220.60 |
| David Newman | $240.00 | 905.6 | $242,804.65 |
| Alexander Dudley | N/A | 427.8 | $110,422.00 |
| Brad McPherson | $333.00 | 450.5 | $93,063.15 |
| Adam Hodges | N/A | 10.5 | $2,961.00 |
| Sandra Heller | N/A | 50.4 | $25,234.00 |
| Matthew Detzel | $274.50 | 270.1 | $72,606.48 |
| Matthew DiBlasi | N/A | 28.2 | $8,742.00 |
| Kayla Pragid | $240.00 | 142.1 | $37,760.00 |
| Darcie Thompson | N/A | 19.1 | $17,608.00 |
| Montaye Sigmon | $340.00 | 43.6 | $6,256.00 |

| TIMEKEEPER | HOURLY RATE(S) | HOURS WORKED | FEE AMOUNT |
|---|---|---|---|
| Joseph Valdivia | $225.00 | 129.3 | $18,595.00 |
| James Duffy | $270.00 | 51.5 | $10,908.00 |
| Elizabeth Hodge | $345.00 | .4 | $138.00 |
| Alison Brown | $310.00 | 28.2 | $8,525.00 |
| **Paralegals** | | | |
| Kirk Humphreys | 175.50 | 185.3 | $29,599.15 |
| Jenny O'Shaughnessy | 175.50 | 1,341.6 | $292,804.65 |
| Alexandra Amburgy | 100.00 | 104.6 | $18,595.00 |

| TOTALS | $1,850,523.03 |
|---|---|

In addition, the State Farm Plaintiffs utilized a Managed Review Team and associated personnel who expended a total of 1,026.9 hours for a total of $280,962.45 in additional fees. This Managed Review Team performed tasks such as coding bank records to create ledgers for defendants Health & Wellness and Pain Relief, who did not maintain them, and redact protected information from trial exhibits.

Applying the analysis above, the fees sought by the State Farm Plaintiffs' counsel are reasonable. *Johnson* factors (1)-(3), (8), (9), and (11), set forth *infra.* at 15, are particularly relevant to the Court's analysis of this Motion. Counsel for the State Farm Plaintiffs were required to spend a considerable amount of time and labor on this case against the twelve named defendants, briefing numerous substantive motions, gathering and analyzing evidence from a variety of sources, and preparing for trial. Due to the number of defendants and the timing of certain deadlines, multiple time keepers were involved in this litigation. However, these time keepers largely contributed on discrete tasks on an "as needed" basis rather than participating in depth throughout the course of the litigation. The time entries are not duplicative or excessive.

In sum, the State Farm Plaintiffs incurred $2,072,585.88 in attorneys' fees in this matter, however in an effort to minimize further litigation over this issue, the State Farm Plaintiffs agree to limit the fees being sought collectively to the $1,000,000.00 agreed upon by the Defendants.

### D.   Compliance with Local Rule 7.3

In response to Local Rule 7.3(a), the State Farm Plaintiffs have agreed to pay the hourly rates reflected in Holland & Knight's and Akerman's invoices of all incurred and claimed fees,

copies of which[13] are attached as Exhibit A to the declaration (Ex. 1).  The declaration attached hereto as Exhibit 1 provides detailed descriptions of, experience, and qualifications for each timekeeper identified in the table above for whom fees are sought.  General descriptions of the tasks done during the hours worked are also included in the attached declaration.

## III.   CONCLUSION

For the foregoing reasons, the Verified Motion for Fees should be granted.

### LOCAL RULE 7.3(b) CERTIFICATION

Pursuant to Local Rule 7.3(a)(8) and 7.3(b), the undersigned counsel certifies that on April 6, 2020, counsel for the State Farm Plaintiffs served a draft of their Verified Motion for Attorneys' Fees on counsel for Health and Wellness Services, Inc., Pain Relief Clinic of Homestead, Corp., Medical Wellness Services, Inc., Lazaro Muse, Beatriz Muse, Noel Santos, and Jesus Lorites and those Defendants advised Plaintiffs' counsel, through counsel for Medical Wellness, Lazaro Muse, Beatriz Muse, and Noel Santos, on April 23, 2020, that they agreed to entitlement to the fees sought.  The Defendants further agreed to the reasonableness of the $1,000,000.00 in fees sought by the State Farm Plaintiffs in this Verified Motion for Fees.


Dated:  May 4, 2020                                Respectfully submitted,

                                                             /s/ David I. Spector
                                                             David I. Spector (Florida Bar No. 086540)
                                                             E-mail: david.spector@hklaw.com
                                                             Caitlin Saladrigas (Florida Bar No. 095728)
                                                             E-mail: caitlin.saladrigas@hklaw.com
                                                             **HOLLAND & KNIGHT LLP**
                                                             222 Lakeview Avenue, Suite 1000
                                                             West Palm Beach, FL 33401
                                                             Telephone:  (561) 833-2000
                                                             Facsimile:   (561) 650-8399
                                                             *Attorneys for State Farm Plaintiffs*

---

[13] The attached invoices have been redacted as necessary to safeguard attorney-client privileged information and information protected by the work-product doctrine.

## **VERIFICATION**

I, David Spector, Esq., counsel for the State Farm Plaintiffs, affirm, under the penalties for perjury, that the representations set forth in this Verified Motion for Fees are true and correct.

_____
David I. Spector, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified in the list below via transmission of Notices of Electronic Filing generated by CM/ECF and served on all other parties via U.S. Mail.

/s/ *David Spector*
DAVID SPECTOR (FBN: 086540)

## SERVICE LIST

| | |
|---|---|
| Christian Carrazana, Esq.<br>**CHRISTIAN CARRAZANA, P.A.**<br>P.O. Box 900520<br>Homestead, FL 33030<br>Telephone: (786) 226-8205<br>Email: christian@carrazana-legal.com<br>*Attorney for Defendant Pain Relief Clinic of Homestead, Corp.*<br>**Served via email** | Louis V. Martinez, Esq.<br>**DIAZ, REUS & TARG LLP**<br>3400 Miami Tower<br>100 SE 2nd Street<br>Miami, FL 33131<br>Telephone: (305) 375-9220<br>Facsimile:  (305) 375-8050<br>Email: lvmartinez@aol.com<br>*Attorneys for Defendant Health & Wellness Services Inc.*<br>**Served via email** |
| Karen B. Parker, Esq.<br>**KAREN B. PARKER, P.A**<br>2550 S. Bayshore Drive, Suite 102<br>Coconut Grove, FL 33133<br>Telephone: (305) 343-8339<br>Email: kparker@kbparkerlaw.com<br>        kbparkerlaw@gmail.com<br>        parkerlawasst@gmail.com<br>*Attorneys for Defendant Jesus Lorites*<br>**Served via email** | Jose Gomez-Cortes, MD<br>1840 West 49th Street, Suite 305<br>Hialeah, FL  33012<br><br>   - AND -<br><br>3400 SW 130th Avenue<br>Miami, FL  33175<br>*In Pro Se*<br>**Served via U.S. Mail** |
| Richard J. Diaz, Esq.<br>Attorney at Law<br>3127 Ponce De Leon Boulevard<br>Coral Gables, FL 33134<br>Telephone: (305) 444-7181<br>Facsimile:  (305) 444-8178<br>Email: rick@rjdpa.com<br>*Attorneys for Defendants Medical Wellness Services, Inc., Beatriz Muse, Lazaro Muse, and Noel Santos*<br>**Served via email** | Hugo Goldstraj<br>3029 NE 188th Street, Apt. 305<br>Aventura, FL   33180<br>*In Pro Se*<br>**Served via U.S. Mail** |