United States District Court
for the
Southern District of Florida

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, Plaintiff,<br><br>v.<br><br>Health and Wellness Services, Inc. and others, Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 18-23125-Civ-Scola<br>)<br>)<br>)<br>) |

### Omnibus Order

On March 5, 2020, the Court (1) granted, in part, Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company's (together, "State Farm") partial motion for summary judgment (ECF No. 184); (2) denied Defendants Beatriz Muse, Lazaro Muse, and Noel Santos (collectively the "Muse Family") and Medical Wellness Services, Inc.'s (together with the Muse Family, the "Muse Defendants") joint motion for summary judgment (ECF No. 172); and (3) denied Dr. Jesus Lorites's motion for summary judgment (ECF No. 205). (Order, ECF No. 321.) In response, the Muse Defendants and Dr. Lorites, separately, ask the Court to reconsider that part of the order that granted State Farm's motion for summary judgment. Dr. Lorites additionally asks the Court to reconsider that part of the order that denied his motion for summary judgment. After careful review, the Court **denies** both motions for reconsideration (**ECF Nos. 330, 331**).

1. **Legal Standard**

"[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15,

2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563 (citation omitted). Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, however, a motion to reconsider is not ordinarily warranted.

**2. The Muse Defendants' Motion for Reconsideration**

The Muse Defendants complain, generally, that the Court's order resulted in manifest injustice because the Court failed to appreciate various factual disputes presented by the record and misapprehended various standards and legal concepts. They group their grievances into six categories: (1) the Court made errors in its four critical findings "as a matter of law"; (2) the Court ignored or misapprehended Local Rule 56.1(a)(2) and improperly applied Federal Rule of Civil Procedure 56(c)(1)(A); (3) the Court failed to take into account record evidence cited by the Muse Defendants; (4) the Court improperly considered evidence supporting a theory that State Farm never pleaded; (5) the Court erred in finding Beatriz, Lazaro, and Santos liable individually; and (6) the Court improperly found Lazaro and Beatriz liable when Lazaro denied any liability and Beatriz sold Defendant Clinic Health and Wellness Services, Inc., eight years before the complained of billings. For the reasons that follow, the Muse Defendants' arguments are unavailing.

**A. The Muse Defendants have failed to set forth support for their contention the Court erred in concluding the Defendant Clinics provided services that were unlawfully rendered and non-compensable.**

First, the Muse Defendants complain the Court erred in finding the Clinics' licensed massage therapists performed non-compensable services. In support, they argue (1) there is no proof in the record that the Clinics' licensed massage therapists did not perform any massage; (2) prior to 2013, massage therapists did not need to be supervised by a medical doctor; (3) after 2013, medical doctors could either directly or indirectly supervise a massage therapist; (4) based on the record, a factfinder could conclude the Muse Family members were operating, at worst, under a misapprehension of the law but not with the intent to defraud or deceive; and (5) "the Court overlooked that the law on the scope of modalities that court be performed by LMTs changed in 2013." (Muse Defs.' Mot. at 5.)

The bulk of the Muse Defendants' presentation regarding the Clinics' massage therapists lacks sufficient legal support or analysis to allow the Court to fully discern, never mind evaluate, their position. Nor are their contentions

sufficiently linked to errors that were outcome determinative. For example, as to their fourth point, the Muse Defendants complain: "[A] jury could have found that the Muse Defendants . . . were operating under mistake or misapprehension of the law, and while that would not [*sic*] establish *some* type of liability, it sure isn't intent to defraud or deceive as a matter of law, much less *on this record*." (Muse Defs.' Mot. at 5 (emphasis in original).) The Court is not entirely sure what the Muse Defendants' point here is; but to the extent their focus is on intent, it is irrelevant. Neither claims under the Florida Deceptive and Unfair Trade Practices Act nor claims sounding in unjust enrichment require a showing of intent. *See, e.g., In re Schurtenberger*, 12-17246-BKC-AJC, 2014 WL 92828, at *5 (Bankr. S.D. Fla. Jan. 9, 2014) (holding an action "[u]nder FDUTPA, . . . does not depend on . . . the seller's intent to deceive"); *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. 1st DCA 2009) (noting that, where a claim is based on unjust enrichment, a plaintiff need not establish the defendant's fraud or misconduct). Further, the Muse Defendants' argument that the Clinics' massage therapists performed authorized massage services misses the point: the Court found the Defendants "submitted bills to State Farm seeking reimbursement for non-compensable physical therapy services . . . being performed by massage workers unlicensed to do so." (Order at 17.) Nothing the Muse Defendants have presented shows that finding was in error.

Next, the Muse Defendants object "[a] fact question exists on whether the medical clinics had compliant record keeping and whether, if not, the individual Muse Defendants are liable by osmosis." (Muse Defs.' Mot. at 6.) In finding that the Defendant Clinics failed to comply with their recordkeeping requirements the Court, in granting summary judgment in State Farm's favor, found as follows:

> Lazaro was permitted to review patient medical records at all the Clinics despite any evidence or indication from the record that he was in any way authorized to do so: he is not a healthcare practitioner or involved in the patients' care or treatment; there is no evidence any patient authorized Lazaro's inspection of the records; and there is no evidence Lazaro satisfied any of the statutory exceptions that would allow him access to the records. (*See* Pls.' Stmt. of Facts at ¶¶ 43, 48, 54.) Additionally, none of the Clinics' records documented the results of patient x-rays or, accordingly, whether the results of the x-rays were ever used in prescribing or developing the patient's treatments. (*Id.* at ¶¶ 45, 49, 57.) Moreover, the treatment plans for the patients at Medical Wellness and Pain Relief were deficient: they did not indicate the amount of time or units any particular treatment should be

> performed. (*Id.* at ¶¶ 46, 50.) Lastly, Medical Wellness did not maintain its patients' records for five years as required. (*Id.* at ¶ 42.)
>
> Drs. Goldstraj and Lorites both served as medical directors, at Health & Wellness and Pain Relief, respectively, when these record-keeping requirements were not met. Indeed, Dr. Goldstraj testified he was unaware of any record-keeping policies and procedures Health & Wellness had in place and admitted he was unfamiliar with any of Florida's record-keeping laws. (*Id.* at ¶¶ 55–56.) And neither doctor, during their tenures, properly safeguarded the records as they were required to do as medical directors.

(Order at 18.) The Muse Defendants complain the Court failed to identify any evidence in the record that shows "*any* of the medical clinics' medical records were not English, illegible or did not justify the plan of treatment." (Muse Defs.' Mot. at 6 (emphasis in original).) None of the Court's findings, however, relied on a finding that the records were not in English or were illegible. Further, the Muse Defendants' sweeping claim that there is no record evidence showing the "medical records . . . did not justify the plan of treatment" is insufficient to establish any error. Nothing the Muse Defendants present in their motion undercuts the Court's findings that their record keeping was noncompliant.[1]

Continuing, the Muse Defendants argue "[t]here is no record evidence from *any* treating physician(s) at Medical Wellness or Health & Wellness that he/she prepared a fraudulent (or non-medically necessary) plan of treatment for a *single* patient." (Defs.' Mot. at 7 (emphasis in original).) The Muse Defendants' point is unclear. To the extent they argue a dearth of self-incriminating statements from the physicians themselves equates to a showing that all patient treatment plans were medically necessary, they miss the mark. State Farm provided a detailed chart along with affidavit testimony, detailing "numerous instances . . . of treatment performed that was not prescribed and treatment allegedly provided that was not performed." (S. Bright Decl. ¶ 12, ECF No. 181-1, 4.) The Muse Defendants fail to even mention this record evidence, never mind explain why the Court erred in relying on it. Instead, the Muse Defendants point to testimony from their expert whom they say

---

[1] The Muse Defendants' argument that the Muse Family members were unaware of any alleged recordkeeping issues and therefore, should not be held liable by "osmosis" also fails. This issue was raised and fully dispensed with in the Court's summary-judgment order: all three family members were direct participants in the complained of improper dealings and are therefore liable for the Clinics' wrongdoing. With respect to their arguments that they were not direct participants in the State Farm scheme, the Muse Defendants either raise arguments they should have already raised or simply reargue issues the Court has already decided. The Court's order details the Muse Defendants' direct involvement and they have presented nothing here that warrants the Court's revisiting that issue now.

"essentially explained that injuries from motor vehicle accidents will fall within a common category of 'soft tissue injuries' generally focusing on the neck, back and shoulders but that such injuries can radiate to other parts of the body as well." (Must Defs.' Mot. at 7.) Accordingly, say the Muse Defendants, their expert explained "the modalities of treatment are very similar across the spectrum of patients seeking relief from their pain and limitations resulting from such motor vehicle accident injuries." (*Id.*) Assuming the Muse Defendants properly summarized the expert's testimony, they have still failed to explain how this testimony would, in any event, undermine the Court's findings and conclusions.

Finally, the Muse Defendants maintain the Court erred in (1) considering State Farm's contention that the Defendants failed to ensure copayments and deductibles were collected; and (2) finding the record showed no genuine issue of material fact that the Defendants failed to ensure collection. (Muse Defs.' Mot. at 8.) The Muse Defendants' first point was already presented, evaluated, and ruled upon when it was argued by Pain Relief in response to State Farm's motion for summary judgment. With respect to that argument, the Court found, "State Farm's complaint clearly alleges [Co-Defendant] Pain Relie[f] failed to properly submit its claims and abide by Florida law in running its clinic. The facts State Farm submits in support of its motion merely substantiate the complaint's allegations. There are not . . . new theories." (Order at 23.) The Muse Defendants add nothing new to this argument and present nothing that would otherwise warrant the Court's reconsideration. Further, it is improper for the Muse Defendants to raise an argument, in full, for the first time in a motion for reconsideration when nothing prevented the parties from effectively litigating the issue during summary-judgment briefing. *See McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) ("A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration.").

In support of their second argument about copayments and deductibles, the Muse Defendants complain the Court "totally disregarded" Beatriz and Santos's testimony that "they made efforts to notify patients of their obligation and to pursue collection thereof." (Muse Defs.' Mot. at 8.) This issue was fully addressed by the Court in ruling on the motions for summary judgment and the Muse Defendants add nothing new, now, that would warrant the Court's reconsideration. Furthermore, in its order, the Court discussed Santos's testimony in depth, concluding that no matter how favorably the Court viewed it, the testimony "still does not raise a *reasonable* doubt as to Medical Wellness's noncompliance with the statute requiring it to establish a general

business practice of collecting deductibles and copayment." (Order at 19 (emphasis in original).) The Muse Defendants' rehashing of Beatriz's testimony is even more meritless. When asked whether Health & Wellness took any actions to collect deductibles, Beatriz answered, "No, not that I can remember." (B. Muse Dep. 105:5, ECF No. 161-1, 105.) When asked about copayments she replied, "Possibly; I'm not sure." (*Id.* at 105:8.) She also testified she did not recall a single patient ever tendering either a copayment or a deductible. (*Id.* at 105:9–11.) The Muse Defendants' argument that this testimony somehow raises a genuine issue of material fact that the Court erred in recognizing, resulting in a manifest injustice to the Defendants, is wholly meritless.

**B. The Court did not err in applying the Local Rules to find that portions of the Muse Defendants' statement of material facts was noncompliant.**

As noted by the Court in its order, "[M]any of the [Muse Defendants'] attempts to dispute State Farm's allegations either failed to cite to the record at all or cited to lengthy documents in their entirety." (Order at 8–9.) As a result, to the extent State Farm's allegations were properly supported by its citations to the evidentiary materials submitted in moving for summary judgment, the Court deemed a number of its allegations admitted. (*Id.* at 9.) At the same time, the Court recognized that in some instances the Muse Defendants indeed managed to cite to a specific part of the record (or, at least, only one page of it). (*Id.*) Regardless, upon scrutiny, the Court found the cited evidence, in many instances, failed to actually rebut State Farm's allegations. (*Id.*) Despite these shortcomings, the Court recognized that a handful of State Farm's allegations were nonetheless disputed. (*Id.*) In their motion, the Muse Defendants maintain the Court's evaluation of the parties' statements of facts was in error, insisting they "followed the plain, textual requirements of Local Rule 56.1(a)(2) and Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure." (Muse Defs.' Mot. at 8.) They are incorrect.

First, the Muse Defendants quote portions of the wrong version of the Local Rule, referencing the current version of Local Rule 56.1 which did not take effect until December 2019, after summary-judgment briefing had already concluded. Further, the Muse Defendants, even in citing to the new rule, neglect to cite the portion that would, in any event, defeat their position: "each fact [must be] supported by specific, pinpoint references to particular parts of record material, including depositions, documents, electronically stored information, affidavits, stipulations . . . , admissions, and interrogatory answers (*e.g.,* Exhibit D, Smith Affidavit, ¶2; Exhibit 3, Jones deposition, p. 12/lines 4-9)." L.R. 56.1(b)(1)(B). The Rule specifically warns: "When a material

fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (*e.g.,* "Smith Affidavit" or "Jones Deposition" or "Exhibit A") is *non-compliant*." (*Id.* (emphasis added).) In no way does the Muse Defendants' statement of facts, as they contend, meet the standard of the new version of the rule.

Nor does the Muse Defendants' statement of facts meet the standard of the version of the rule that is actually applicable here. The applicable version of Local Rule 56.1 states a party's statement of material facts must "[b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." L.R. 56.1(a)(2), 2015 version. Similarly, Federal Rule of Civil Procedure 56(c)(1) states "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). As set forth in the Court's order, the vast majority of the Muse Defendants' allegations of disputed facts failed to cite to any record evidence at all or cited to lengthy documents, spanning many pages without specifying where in that document the relevant evidence resided. Every single one of these paragraphs was noncompliant with both the Federal Rules of Civil Procedure as well as the Local Rules.

The Muse Defendants also argue that, even if much of their statement of facts was noncompliant, the Court should have either cut them some slack or given them another bite at the apple. They provide no support, however, for either course of action. The Defendants are sophisticated business operators, running multiple healthcare clinics and other businesses, involving many millions of dollars, and are represented by experienced counsel who has practiced for more than three decades. The Court expects parties to, and assumes parties will, put forth their best shot from the get-go and, barring extenuating circumstances or excusable neglect, does not ordinarily afford multiple do-overs as a matter of course: doing so would greatly tax the Court's limited resources. The Muse Defendants have not presented any support, legal or factual, that shows the Court erred in finding they failed to properly controvert the vast majority of State Farm's allegations as set forth in its statement of material facts. Accordingly, the Court declines to revisit those portions of the record the Muse Defendants now identify in their motion for reconsideration.

### C. The cited portions of the Muse Defendants' expert's deposition and report do nothing to bolster their position.

The Muse Defendants repeatedly refer the Court's attention to their expert, Dr. Nicholas Suite's, deposition and report. (Muse Defs.' Mot. at 6–8, 14–15, 17–18, 20; Muse Defs.' Reply, ECF No. 345, 5–6, 9–10.) Surprisingly, despite being alerted to the issue in the Court's order, the Muse Defendants, in their motion, cited once again to the entirety of the deposition, spanning over 400 pages, and the entirety of the report, spanning thirteen pages of single-spaced text. Finally, though, in their reply to State Farm's opposition, the Muse Defendants provide some direction to the Court, steering it, at least five times, to four specific pages in Dr. Suite's deposition and one particular page in his report. (Muse Defs.' Reply at 5–6, 9–10 (citing Dr. Suite's Dep. 92, 217, 219, 316, ECF No. 180-1, 180-2 and Dr. Suite's Rep. 13, ECF No. 194-2).) Without explanation or analysis, the Muse Defendants insist Dr. Suite's "testimony and report defeat [State Farm's] motion for summary judgment." (Muse Defs.' Mot. at 18.)

The Court has carefully reviewed the cited portions of the record. Dr. Suite reviewed a limited number of patient records. He opined in his report that, based on the sixteen patient charts he reviewed in detail, "the care and treatment received by the majority of patients at the Medical Wellness Clinic . . . were reasonable, related and necessary as they pertained to the respective accidents that prompted such evaluation and treatment." (Dr. Suite's Rep. at 13.) He also testified, in his deposition, that it's "acceptable" for "people who have the same injuries [to] get the same treatment and [have] the same outcome" (Dr. Suite's Dep. at 217:22–24); based on the sixteen files he reviewed, the care the patients received was "appropriate," "reasonable and medically related," and "necessary," (*id.* at 219:12–16); based on those same files, he did not think the care reflected in the records was "fraudulent or below the standard" or that it "r[o]se to the level of negligent care" (*id.* at 316:19–23). At the same time, the portions of the record the Muse Defendants focus on also reflect that (1) Dr. Suite was unaware that Dr. Goldstraj, Health & Wellness's medical director, was charged criminally with healthcare fraud and lost his license (*id.* at 92:10–19); and (2) "certain elements in the charting . . . are terrible" (*id.* at 316:14–15). No matter how generously the Court construes the record, in the Muse Defendants' favor, nothing in Dr. Suite's report or deposition testimony raises a genuine issue as to any material fact with respect to any of the bases upon which the Court grounded its order: licensed massage therapists unlawfully performed physical-therapy treatments; the clinics' recordkeeping was non-compliant; unlawful prescriptions for treatment were

issued; and no good-faith effort to collect deductibles and copayments was made.

### 3. Dr. Lorites's Motion for Reconsideration

Dr. Lorites and Pain Relief both moved for summary judgment based on the statute of limitations, which they claimed barred State Farm's claims as they relate to amounts paid to Pain Relief from June 15, 2010 to April 1, 2013. (Pain Relief's Resp. to Mot. for Summ. J., ECF No. 202, 11.)[2] The Court denied Pain Relief and Dr. Lorites relief based on their statute-of-limitations arguments. The Court now revisits that portion of its order because, upon reflection, its analysis was unclear. The end result, however, remains the same.

To begin with, Dr. Lorites previously filed a motion to dismiss, arguing State Farm's claims against him were time barred. (ECF No. 34.) In denying Dr. Lorites's motion, the Court found State Farm had sufficiently alleged facts, in its complaint, supporting delayed discovery, fraudulent concealment, and equitable tolling, pointing out, in particular, that "[w]hether or not fraudulent concealment is sufficient to toll the statute of limitations is a question of fact." (Order on Mots. To Dismiss, ECF No. 113, 14 (quoting *Razor Capital, LLC v. CMAX Fin. LLC*, 17-80388-CIV, 2017 WL 3481761, at *5 (S.D. Fla. Aug. 14, 2017) (Marra, J.).) Thus, in order to prevail in moving for summary judgment, Dr. Lorites and Pain Relief would have had to demonstrate there is no genuine issue of material fact as to the applicability or tolling of the statute of limitations with respect to State Farm's claims.

Neither party, however, succeeded in carrying this initial burden. The sum total of Pain Relief's argument was (1) State Farm's claims regarding payments it made from June 15, 2010 to April 1, 2013 were time barred; and (2) Pain Relief's submissions to State Farm put it "on notice of the alleged illegalities from the onset." (Pain Relief's Resp. at 11.) Dr. Lorites, in his motion

---

[2] Pain Relief also argued, in response to State Farm's motion for summary judgment, that State Farm's motion should be denied because it did not, in the first instance, proactively address the statute of limitations. The Court rejected Pain Relief's contention, noting that a defendant must establish an initial entitlement to an affirmative defense before a plaintiff must rebut that showing. *See United States v. Tubbs*, 19-CV-80553-CIV, 2019 WL 7376706, at *2 (S.D. Fla. Nov. 22, 2019) (Ungaro, U.) (noting that "on a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable"). Simply stating the bare conclusion that "[s]ummary judgment is improper where the plaintiff fails to address a defendant's affirmative defenses," is not enough to defeat a motion for summary judgment. The Court does not revisit that conclusion here. At the same time, also in its response, Pain Relief moved for summary judgment, on the basis of the statute of limitations. Although it was improper for Pain Relief to do so, the Court nonetheless addressed the merits of Pain Relief's claim, lumping it in with the Court's analysis of Dr. Lorites's arguments. To clarify, the Court now also, *sua sponte*, denies Pain Relief's motion because it was both untimely and procedurally improper.

for summary judgment, raised these same points, almost verbatim, but also added that "the dates as may be applicable to [him] are 9/2/2010 to 6/30/2011." (Dr. Lorites's Mot. for Summ. J., ECF No. 205, 5.) Dr. Lorites further explained, "Clearly, State Farm had possession of the medical records and Form 1500 and knew or should have known of any allegations of fraud or misconduct well prior to the expiration of any statute of limitations." (*Id.*) Putting aside both parties' failures to cite to any record evidence in support of their motions, neither presentation, in any event, was enough to show there was no genuine issue of material fact with respect to the tolling of the statute of limitations. Furthermore, even if either Dr. Lorites or Pain Relief *had* managed to meet its initial burden, State Farm's response presented abundant evidence establishing genuine issues of fact as to its allegations of the tolling of the statute of limitations based on fraudulent concealment. As set forth in the Court's summary-judgment order, State Farm presented a multitude of facts that properly invoked fraudulent concealment. (Order at 26.)

Based on the foregoing, the Court does not reconsider its conclusion that Pain Relief and Dr. Lorites failed to prevail in either their attempt to ward off State Farm's motion for summary judgment or to affirmatively seek summary judgment in their favor. There is abundant record evidence that, at a minimum, raises a genuine issue of material fact regarding the delayed accrual or tolling of State Farm's claims based on fraudulent concealment. The Court erred, however, in the way it framed its conclusion. In finding in State Farm's favor, the Court said, "Pain Relief and Dr. Lorites have failed to establish any genuine issue of material fact with respect to their statute-of-limitations defenses." (Order at 25, 26.) While this might have been the case had State Farm moved for summary judgment with respect to the Defendants' statute-of-limitations affirmative defenses, this was not the procedural posture in which the issue was presented to the Court. Instead the issues, as brought before the Court, were only (1) should the Court deny State Farm's motion for summary judgment because State Farm neglected to address Dr. Lorites's and Pain Relief's affirmative defenses; and (2) did either Dr. Lorites or Pain Relief succeed in showing there was no genuine of material fact with respect to the statute of limitations. The answer to both questions was, simply, as set forth above, no.

Accordingly, all the record evidence that Dr. Lorites now points to, in his motion for reconsideration, that he says shows a lack of fraudulent concealment, misses the point. Even if this record evidence was sufficient to show Dr. Lorites was entitled to judgment in his favor based on the statute of limitations—and the Court certainly does not find that it does—the time for Dr. Lorites to have raised those points was in his motion for summary judgment—

not now, in his motion for reconsideration. It is not the Court's job to scour the record for a moving party to see if the record supports his motion for summary judgment.³

### 4. State Farm's Motion for Leave to Amend the Complaint

In light of the Court's granting of summary judgment in State Farm's favor on its FDUTPA and unjust enrichment claims, State Farm seeks to amend its complaint in order to drop its fraud claims. State Farm's motion is unopposed and otherwise supported good cause. Accordingly, the Court **grants** the motion to amend (**ECF No. 350**). In granting the motion, the Court deems counts one through three, as set forth in the amended complaint (ECF No. 6), to be dropped, without prejudice, from this case.

On the other hand, in its motion to amend, State Farm also advises, in light of the amendment, that "the Court can, and should, enter Final Judgment as to all remaining counts and parties." (Pls.' Mot. at 6.) State Farm also maintains the dropping of the fraud counts "will, for all intents and purposes, mark the end of the litigation." (*Id.* at 7.) As the Court has previously pointed out, this is incorrect. Again, the claims against Drs. Manuel Franco, Angel Carrasco, and Jose Gomez-Cortes *remain unresolved*. (Court's Order on Mots. for Summ. J. at 5.) The Court cannot enter final judgment until these claims are resolved, either through further amendment of the complaint or through motions for default judgment.

Clerk's defaults have been entered against these three Defendants (ECF Nos. 73, 146). Accordingly, if State Farm does not further amend its complaint, on or before **August 17, 2020**, State Farm must file a motion for default judgment in order to resolve these claims. The motion for default judgment must include affidavits of any sum certain due from the defaulting Defendants, and any other supporting documentation necessary to determine State Farm's measure of damages. The motion must also be accompanied by (1) the necessary affidavit under the Servicemembers Civil Relief Act, 50 U.S.C. app. § 521(b), if applicable; and (2) a proposed order granting the motion for default judgment, incorporating legal and factual support; and entering final judgment. Pursuant to the CM/ECF Administrative Procedures, the proposed orders must be submitted to the Court by e-mail in Word (.doc) format at scola@flsd.uscourts.gov. State Farm must send a copy of the motion to the defaulting Defendants' counsel or to the Defendants directly if they do not have

---

³ Dr. Lorites also seeks reconsideration regarding the Court's finding that the Defendants failed to make a good faith effort to collect copayments and deductibles from their patients. The Court denies Dr. Lorites's request for the same reasons it denied the Muse Defendants' motion on the same basis, as explained in Section 2.A., above.

counsel. In the certificate of service, State Farm shall indicate that notice was sent and the addresses where the notice was sent. State Farm's failure to timely file its motion for default judgment will result in a **dismissal without prejudice** as to these Defendants.

### 5. Conclusion

For the foregoing reasons, the Court **denies** the Muse Defendants and Dr. Lorites's motions for reconsideration (**ECF Nos. 330, 331**). The Court also **grants** State Farm's unopposed **motion for leave to amend** (**ECF No. 350**). In light of the Court's order granting, in large part, State Farm's motion for summary judgment and order granting State Farm's motion to amend, the Court **denies as moot** the following: State Farm's amended motion in limine (**ECF No. 328**), motion to strike (**ECF No. 318**), motion in limine (**ECF No. 217**), and motion to exclude expert opinion and testimony (**ECF No. 270**); and the Defendants' omnibus motion in limine (**ECF No. 272**). Lastly, State Farm must either amend its complaint, once more, to drop the defaulted Defendants or file a motion for default judgment as to the defaulted Defendants **on or before August 17, 2020**. State Farm's failure to do so will result in a dismissal of these Defendants.

**Done and ordered**, at Miami, Florida, on August 10, 2020.

_____
Robert N. Scola, Jr.
United States District Judge